IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

PINTEREST INC.,

    Plaintiff,

  v.

PINTRIPS INC.,

    Defendant.
_____/

No. 13-4608 RS

**ORDER DENYING MOTION TO DISMISS**

## I. INTRODUCTION

In this dispute between two entities offering online bookmarking services, plaintiff Pinterest Inc. asserts claims for relief under federal and state law for trademark infringement, false designation of origin, trademark dilution, and unfair competition. Defendant Pintrips Inc. moves to dismiss the complaint in its entirety, arguing Pinterest has failed to state a claim upon which relief can be granted. The central thrust of Pintrips' motion is the contention that Pinterest cannot, as a matter of law, seek to exclude others from using the term "pin." In particular, Pintrips argues that "pin" is generic and therefore not entitled to protection under federal or state trademark law. Because deciding whether a mark is generic requires a fact-specific inquiry that generally is premature at the pleading stage, Pintrips' motion must be denied.

## II. BACKGROUND[1]

A. <u>Pinterest</u>

Pinterest, an entity founded in early 2010, provides online services through its website, www.pinterest.com.[2] Pinterest's web-based platform allows users to accumulate images and other content, which the user organizes into themed "boards." In addition to posting content to their own boards, Pinterest users can browse other users' boards to seek out content that interests them. By enabling users to post, share, and browse content, Pinterest "provides a way for people to express themselves, discover new things, and engage with the people who create them." (Compl. ¶ 8).

A "pin," according to Pinterest, is the platform's "foundational element." (Compl. ¶ 9). Each piece of content posted on Pinterest is known as a "pin." Users, in turn, are referred to as "pinners." According to Pinterest, the "Pin It" button has played an important role in the site's success. In addition to appearing on Pinterest's website, the "Pin It" button can be found on hundreds of thousands of other websites across the Internet. More specifically, the button appears alongside content – e.g., photographs, articles, for-sale items – displayed on various websites. By clicking the "Pin It" button when browsing other websites, Pinterest users can add content directly to their own Pinterest boards. Therefore, in addition to "pinning" content found on other users' boards, Pinterest users employ the "Pin It" button to "pin" items found elsewhere on the internet.

Although its users post and share a wide variety of content, Pinterest claims to have made a "particularly big splash" when it comes to travel-based content. (Compl. ¶ 13). The complaint avers that, to date, Pinterest users have posted more than 660 million "pins" in Pinterest's "Travel" category. *Id.* "Many people use Pinterest as a travel-planning tool – for example, to collect inspiration for upcoming trips[.]" *Id.* Allegedly due to the platform's popularity in the "area of travel," numerous airlines, hotels, resorts, travel planning companies, and travel media outlets promote their services on Pinterest. (Compl. ¶ 14).

---

[1] The factual background is based on the averments in the complaint, which must be taken as true for purposes of a motion to dismiss.

[2] Pinterest's services are also available via applications designed for Apple and Android mobile devices. For the sake of simplicity, this order will refer to Pinterest as a "website" or "site."

Pinterest claims it pioneered the use of "pin-formative" terms in the context of social media and online bookmarking. It further avers that the public associates these terms with Pinterest, and that the terms have "become famous in relation to Pinterest's goods and services." (Compl. ¶ 9). In support of this averment, Pinterest claims its site is one of the twenty most popular websites in the United States and the third most popular such social networking site.

B. Pintrips

Pintrips Inc., founded in August 2011, provides online services through its website, www.pintrips.com. Pintrips describes itself as a "personal travel planning dashboard" where users collect, compare, and share information about airline travel. (Compl. ¶ 20). Pintrips employs a "pin" button to enable its users to bookmark content pertaining to flights and travel.

C. Pinterest's Asserted Rights

Pinterest claims to have used the "Pinterest" trademark in commerce since March 10, 2010. It has also allegedly used the Pinterest logotype trademark in commerce since May 3, 2011. In addition, Pinterest holds a registered federal trademark for the mark "Pinterest" in connection with certain goods and services.[3] While it has also filed applications to register the "pin" mark and the Pinterest logotype with the USPTO, these applications are still being processed. Finally, Pinterest avers common-law rights in the terms "Pinterest," "pin," "pin it," and in the "pin-" prefix "as applied to social media bookmarking services." (Compl. ¶ 18). The complaint contends that these common-law rights precede Pintrips' first use of "Pintrips," "pin," or any other "pin-formative" mark.

D. Procedural Background

Pinterest filed this action on October 4, 2013. Its complaint asserts five claims for relief: (1) trademark infringement in violation of 15 U.S.C. § 1114; (2) false designation of origin in violation of 15 U.S.C. § 1125(a); (3) trademark dilution in violation of 15 U.S.C. § 1125(c); (4) unfair

---

[3] In particular, Pinterest holds U.S. Registration No. 4,145,087 for the mark "Pinterest" in connection with "providing a web site featuring technology that enables internet users to create, bookmark, annotate, and publicly share data" in class 42 and "internet based social networking services" in class 45. In addition, it has filed an application to register the mark in connection with additional classes of goods and services.

1  competition in violation of Cal. Bus. & Prof. Code § 17200, and (5) trademark infringement in
2  violation of Cal. Bus. & Prof. Code § 14257.  Each claim is premised on the allegation that Pintrips
3  engaged in authorized use of "Pintrips," "pin," and/or other "pin-formative" marks.[4]

### III.  LEGAL STANDARD

5  A complaint must contain "a short and plain statement of the claim showing that the pleader
6  is entitled to relief." Fed. R. Civ. P. 8(a)(2).  While "detailed factual allegations are not required," a
7  complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its
8  face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544,
9  570 (2007)).  A claim is facially plausible "when the pleaded factual content allows the court to
10 draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  This
11 standard asks for "more than a sheer possibility that a defendant acted unlawfully." *Id.*  The
12 determination is a context-specific task requiring the court "to draw on its judicial experience and
13 common sense." *Id*. at 679.

14 A motion to dismiss a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure
15 tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v.*
16 *Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  Dismissal under Rule 12(b)(6) may be based on
17 either the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a
18 cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).
19 When evaluating such a motion, the court must accept all material allegations in the complaint as
20 true, even if doubtful, and construe them in the light most favorable to the non-moving party.
21 *Twombly*, 550 U.S. at 570.  "[C]onclusory allegations of law and unwarranted inferences," however,
22 "are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy*
23 *Co.,* 83 F.3d 1136, 1140 (9th Cir. 1996); *see also Twombly*, 550 U.S. at 555 ("threadbare recitals of
24 the elements of the claim for relief, supported by mere conclusory statements," are not taken as
25 true).

---

[4] While the complaint repeatedly contends that Pintrips used other "pin-formative" marks, it does not specify the marks to which it refers.

## IV. DISCUSSION

Defendant's motion fails for two reasons. First, a motion to dismiss is not the appropriate vehicle by which to determine the fact-specific issue of whether "pin" is a generic, and therefore unprotectable, mark. Second, even if "pin" could be deemed unprotectable at the pleading stage, defendant's motion largely ignores that each of plaintiff's five claims proceeds on an additional theory unrelated to Pinterest's alleged ownership of the "pin" mark.

### A. Pintrips' Request for Judicial Notice

Pintrips' motion is accompanied by a raft of documentary exhibits.[5] The motion also contains several embedded images purporting to show third parties' use of the "pin" mark. Pinterest objects, claiming the documents and images are inadmissible for purposes of resolving the pending motion. "As a general rule, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (citation and quotation marks omitted). A court is, however, entitled to consider (1) documents incorporated into the complaint by reference and (2) matters subject to judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Here, defendant requests judicial notice of all thirty-three exhibits submitted in support of its motion to dismiss. These documents fall into two categories: (1) official records of the United States Patent and Trademark Office ("USPTO") and (2) print-outs and screenshots of, in defendant's words, "publicly available websites, apps, software applications, and operating systems." (Request for Judicial Notice, ECF No. 28).

A court only may take judicial notice of facts that are "not subject to reasonable dispute." Fed. R. Evid. 201(b). Here, defendant offers extrinsic documents for one purpose only: to demonstrate that the mark "pin"—as used by plaintiff, defendant, and numerous third parties—is generic. *Id.* This is, of course, entirely improper. First, while "undisputed matters of public record" are judicially noticeable, a court may not take notice of *disputed* facts in public records. *Lee*, 250 F.3d at 689; Fed. R. Evid. 201(b). As such, while the USPTO records may be subject to judicial

---

[5] The exhibits were first submitted alongside a declaration from Pintrips attorney Scott Tolchinsky. (ECF No. 16). Several weeks later, defendant lodged a formal request for judicial notice. (ECF No. 28).

1  notice, they are noticeable only for the limited purpose of demonstrating that the filings and actions
2  described therein occurred on certain dates.  To the extent defendant claims the USPTO records bear
3  on whether the "pin" mark is generic, this hotly contested question cannot be answered solely by
4  reference to information gleaned from judicially noticeable documents.  *See Caveman Foods, LLC*
5  *v. Lester*, 12-1587 RS, ECF No. 64, *4 (N.D. Cal. Feb. 14, 2013) ("The strength of the [challenged]
6  mark is the central disputed question of this litigation and an inappropriate subject for judicial
7  notice.").  The other exhibits are improper for the same reason.  Even assuming these miscellaneous
8  documents are accurate and reliable in the first instance, *see Estate of Fuller v. Maxfield & Oberton*
9  *Holdings, LLC*, 906 F. Supp. 2d 997, 1004 (N.D. Cal. 2012) (holding that it is inappropriate for a
10 court to take judicial notice of facts on a webpage whose source and reliability are unknown), it is
11 entirely improper for defendant to offer such exhibits to demonstrate that plaintiff's mark is generic.
12       Accordingly, to the extent defendant seeks judicial notice to demonstrate that the "pin" mark
13 is generic, the request is denied.[6]  *See Solid 21, Inc. v. Breitling USA, Inc.*, 512 F. App'x 685, 686-87
14 (9th Cir. 2013) ("Breitling's contention that the mark is, in fact, generic is an attempt to introduce
15 evidence to rebut the complaint, which is impermissible at the motion to dismiss stage.").  To the
16 extent the USPTO records are nonetheless noticeable for the limited purposes discussed above, they
17 are irrelevant for resolving defendant's motion to dismiss.
18     B.  <u>Is "Pin" a Protectable Mark?</u>
19       To state a claim for trademark infringement, false designation of origin, or unfair
20 competition under the Lanham Act, Pinterest must, among other things, "plausibly allege" that it
21 owns a valid trademark.  *See Intel Corp. v. Americas News Intel Pub., LLC*, C 09-05085 CRB, 2010
22 WL 2740063, *2, *5 (N.D. Cal. July 12, 2010).  A trademark is a "word, name, symbol, or device"
23 that is intended "to identify and distinguish [the mark holder's] goods, including a unique product,

---

[6] Plaintiff, too, filed a request for judicial notice. (Request for Judicial Notice in Support of Pinterest, Inc.'s Opposition to Defendant's Motion to Dismiss, ECF No. 24).  Like defendant, plaintiff requests judicial notice of various USPTO filings.  It also requests notice of documents showing it registered the "pin" mark in various foreign countries.  As with the official documents submitted by defendant, plaintiff's documents are noticeable only for the limited purpose of demonstrating that certain filings and actions occurred on certain dates.  They are not, however, noticeable to show that plaintiff's mark is distinctive or not generic.

from those manufactured or sold by others and to indicate the source of the goods." 15 U.S.C § 1127.  Marks generally are classified in one of five categories of increasing distinctiveness: (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, or (5) fanciful.  *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992).  Suggestive, arbitrary, and fanciful marks are inherently distinctive and thereby are entitled to federal trademark protection because "their intrinsic nature serves to identify a particular source of a product."  *Id.*  While a descriptive mark is not automatically entitled to trademark protection, the mark may become protectable if it has acquired distinctiveness through secondary meaning.  *Zobmondo Entmt., LLC v. Falls Media, LLC*, 602 F.3d 1108, 1113 (9th Cir. 2010).  Generic marks, however, are not eligible for trademark protection.  *Id.*

Plaintiff avers that "pin," as used by Pinterest, is a suggestive mark automatically entitled to trademark protection.  In the alternative, it contends "pin" is a descriptive mark that has acquired distinctiveness through secondary meaning.  Defendant disagrees, arguing "pin" is a generic and functional term that merely describes what users *do*, like "*pin* a location on a map, *pin* a contact on a taskbar in Windows, or *pin* a flight."  (Motion to Dismiss, ECF No. 16, 6:15-16) (emphasis in original).  Analogizing to other circumstances where users engage with an interface by employing certain task-based "directives," defendant argues the parties' use of "pin" is no different from other platforms' use of terms like "cut," "paste," "like," "print," "send," "close," and "delete." (Defendant's Reply, ECF No. 26, 2:2-3).  Defendant argues that Pinterest's use of "pin" does not indicate the source of its product.  *See KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 602 (9th Cir. 2005) ("Generic marks are not capable of receiving protection because they identify the product, rather than the product's source."); *see also Advertise.com, Inc. v. AOL Adver., Inc.*, 616 F.3d 974, 977 (9th Cir. 2010) ("Generic terms are those that refer to 'the genus of which the particular product or service is a species,' i.e., the name of the product or service itself.") (quoting *Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns Inc.*, 198 F.3d 1143, 1146 (9th Cir. 1999)).

"Which category a mark belongs in is a question of fact."  *Zobmondo*, 602 F.3d at 1113.  To determine whether, as defendant contends here, a contested word mark is generic, courts "look to whether consumers understand the word to refer only to a particular producer's goods or whether

the consumer understands the word to refer to the goods themselves." *Yellow Cab Co. v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925, 929 (9th Cir. 2005). The fact-specific nature of this inquiry normally precludes courts from determining at the pleading stage whether a mark is generic. *See Caveman Foods, supra*, at *5 (deciding whether a mark is generic "requires the consideration of competing evidence and is inappropriate for resolution on a motion to dismiss").

While some courts have decided fact-specific issues regarding trademark protection at the pleading stage, they generally have done so only where the complaint suffers from a complete failure to state a plausible basis for trademark protection. *See, e.g., Toho Co., Ltd. v. Sears, Roebuck & Co.*, 645 F.2d 788, 789 (9th Cir. 1981) (affirming dismissal of Lanham Act false dilution claim where plaintiff's and defendant's products were "unrelated as a matter of law" and there was no possibility that customers could confuse defendant's "Bagzilla" garbage bags with plaintiff's Godzilla-themed literary works and toys); *Schele v. Mercedes-Benz USA, LLC*, 10-1643 RS, 2011 WL 1088760 (N.D. Cal. Mar. 11, 2011) (pro se plaintiff failed to state a claim for trademark infringement where it was undisputed that plaintiff never used or intended to use the alleged mark in the United States).[7] Plaintiff's complaint, by contrast, plausibly identifies a theory under which the "pin" mark may be entitled to trademark protection. Although it may ultimately prove difficult for Pinterest to establish an exclusive right in this unregistered mark, defendant's motion fails to justify any deviation from the widely-shared stance that a Rule 12(b)(6) motion is generally an improper vehicle for establishing that a mark is generic or functional. *See, e.g., Webceleb, Inc. v. Procter & Gamble Co.*, 10-2318 DMS NLS, 2012 WL 460472 (S.D. Cal. Feb. 13, 2012) (whether mark is generic is "inappropriate for resolution on a motion to dismiss"); *Intel Corp. v. Americas News Intel Pub., LLC*, C 09-05085 CRB, 2010 WL 2740063 (N.D. Cal. July 12, 2010) (acknowledging the "potential strength" of defendant's argument that plaintiff's mark was generic, but holding it would be "premature" to find the mark generic at the pleading stage); *Autodesk, Inc. v. Dassault Systemes SolidWorks Corp.*, 08-04397 WHA, 2008 WL 6742224 (N.D. Cal. Dec. 18, 2008) ("Genericness and functionality are questions of fact, making dismissal under Rule 12(b)(6) inappropriate.").

---

[7] Here, unlike in *Toho*, plaintiff's and defendant's products are far from being "unrelated as a matter of law." *Toho*, 645 F.2d at 789. Pinterest and Pintrips both offer Internet-based services that enable users to "pin" content pertaining to travel.

Defendant further contends that even if "pin" is protectable, plaintiff nonetheless cannot own the mark because it is not the mark's senior user. *See Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 *as modified*, 97 F.3d 1460 (9th Cir. 1996) ("It is axiomatic in trademark law that the standard test of ownership is priority of use."). The complaint, however, avers that Pinterest "pioneered" the use of "pin-formative" marks in the context of social media and online bookmarking. (Compl. ¶ 9). It further alleges that by the time Pintrips was founded, Pinterest had already achieved nationwide recognition and fame due in part to its use of "pin," "pin it," and other "pin-formative" marks. Accordingly, while the complaint does not explicitly invoke the terms "senior user," it sufficiently alleges that Pinterest was first to use the "pin" mark in a manner deserving of trademark protection. Even if defendant can ultimately adduce evidence to the contrary, the averments in the complaint, which must be assumed true for purposes of a motion to dismiss, are enough to support plaintiff's claim that it owns the "pin" mark. *See RPost Holdings, Inc. v. Readnotify.com Pty. Ltd.*, 2012 WL 3201898 (E.D. Tex. June 29, 2012) (seniority of use is a question of fact improper for resolution on a motion to dismiss).

### C. Plaintiff's Other Theories of Liability

Additionally, defendant's motion fails to address the fact that all five of plaintiff's claims also proceed under the theory that defendant's use of the "Pintrips" mark is impermissible in light of plaintiff's ownership of the "Pinterest" mark.[8] In other words, because none of plaintiff's claims hinge solely upon its contention that "pin" is a protectable mark, defendant's motion could not suffice to dismiss any one claim in the complaint.

## V. CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is DENIED. A further case management conference is set for March 13, 2014. The parties are directed to file a joint case management statement no later than March 6, 2014.

---

[8] Indeed, only two claims—the second claim for false designation of origin under the Lanham Act and the fourth claim for unfair competition under California law—request relief on the basis that "pin" is a protectable mark owned by Pinterest. The first, third, and fifth claims, by contrast, allege only that defendant violated plaintiff's rights in its federally-registered "Pinterest" trademark. Although the first, third, and fifth claims allude to defendant's use of, among other things, the "pin" mark, they plead only that such use violates plaintiff's "Pinterest" mark.

IT IS SO ORDERED.

Dated: 2/14/14

_____
RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE