Frank L. Bernstein (SBN 189504)
KENYON & KENYON LLP
1801 Page Mill Road, Suite 210
Palo Alto, California 94304
Telephone:     (650) 384-4700
Facsimile:     (650) 384-4701
Email: fbernstein@kenyon.com

Attorneys for Defendant
*Pintrips, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| PINTEREST, INC., a Delaware corporation, | Case No.  3:13-cv-4608-RS |
| Plaintiff, | **DEFENDANT PINTRIPS, INC.'S ANSWER AND COUNTERCLAIMS** |
| v. | **DEMAND FOR JURY TRIAL** |
| PINTRIPS, INC., a Delaware corporation, | |
| Defendant. | |

Defendant Pintrips, Inc. ("Pintrips"), by and through counsel, hereby answers the Complaint (D.I. 1) filed by Plaintiff Pinterest, Inc. ("Pinterest"), as follows, with each numbered paragraph(s) corresponding to the similarly numbered paragraph(s) in the Complaint as set forth below.  Unless expressly admitted all allegations in the Complaint are denied.

## NATURE OF ACTION

1.      Pintrips admits only that Plaintiff purports to bring this action raising the claims as stated, and denies any of the claims referred to in this unnumbered paragraph of the Complaint have merit.  Pintrips submits that the generic terms "pin" and "pin it" are common, generic terms for pinning a virtual object on an user interface, and cannot whether alone or in any combination or variation as used by Plaintiff, serve as a trademark, service mark, brand, or any indicia of origin (the terms "trademark," "service mark," "brand," and "any other indicia of origin" are hereinafter referred to collectively as "mark").  Pintrips further submits that a drawing or graphic image of a pin is a common, generic graphic representation indicating pinning a virtual object on an user interface, and cannot whether alone or in any combination or variation as used by Pinterest, serve as a mark.  Pintrips denies that it has adopted a social media brand, and that it has refused to recognize, discuss, or remediate.  Pintrips denies further that it is a social media service.  Pintrips denies further that its brand causes confusion among consumers or implies a connection, affiliation or sponsorship that does not exist.  Pintrips denies further that "this" [sic] violates any applicable legal provision.  Pintrips lacks sufficient information to admit or deny the remaining allegations in this paragraph, and therefore denies the same.

## THE PARTIES

2.      Pintrips lacks sufficient information to admit or deny the allegations in this paragraph, and therefore denies the same.

3.      Pintrips denies that it is a California corporation and admits that it is a Delaware corporation.  Pintrips admits the remaining allegations in this paragraph.

**JURISDICTION**

4.      This paragraph contains only legal conclusions, as to which no response is required.

5.      This paragraph contains only legal conclusions, as to which no response is required.

**VENUE**

6.      This paragraph contains only legal conclusions, as to which no response is required.

**INTRADISTRICT ASSIGNMENT**

7.      This paragraph contains only legal conclusions, as to which no response is required.

**GENERAL ALLEGATIONS**

**Pinterest And Its Trademarks**

8.      Pintrips lacks sufficient information to admit or deny the allegations in this paragraph, and therefore denies the same.

9.      Pintrips denies that the generic terms "pin," "pin it," and a graphic representation of a pin, which function as tools to allow users to pin content to their board, is a mark for any good or service offered by Plaintiff.  Pintrips lacks sufficient information to admit or deny the remaining allegations in this paragraph, and therefore denies the same.

10.     Pintrips lacks sufficient information to admit or deny the allegations in this paragraph, and therefore denies the same.

11.     Pintrips lacks sufficient information to admit or deny the allegations in this paragraph, and therefore denies the same.

12.     Pintrips lacks sufficient information to admit or deny the allegations in this paragraph, and therefore denies the same.

13.     Pintrips lacks sufficient information to admit or deny the allegations in this paragraph, and therefore denies the same.

1    14.    Pintrips lacks sufficient information to admit or deny the allegations in this
2  paragraph, and therefore denies the same.

3    15.    Pintrips denies that Pinterest's alleged word mark and logotype are inherently
4  distinctive.  Pintrips lacks sufficient information to admit or deny the remaining allegations in this
5  paragraph, and therefore denies the same.

6    16.    Pintrips admits that U.S. Trademark Registration No. 4,145,087 issued on May 22,
7  2012, and that Pinterest is the registrant.  Pintrips admits further that the application for this
8  registration occurred on March 1, 2011, and that it was filed in the name of Pinterest.  Pintrips
9  denies that such registration should be entitled to any force or effect.  Rather, the registration
10  should be canceled because of naked licensing.  Pintrips lacks sufficient information to admit or
11  deny the remaining allegations in this paragraph, and therefore denies the same.

12    17.    Pintrips admits that Pinterest has filed the applications indicated in this paragraph,
13  in the identified classes.  Pintrips denies that such application for "pin" should proceed on to
14  registration because the term "pin" is generic for the services listed in the application and the term
15  as not been used as a mark by Pinterest.  Plaintiff further denies that such application for the word
16  mark and logotype should proceed on to registration because of naked licensing.  Pintrips further
17  answers that, even if the allegations in paragraph 17 are true, the existence of such applications is
18  of no relevance hereto.  Pintrips lacks sufficient information to admit or deny the remaining
19  allegations in this paragraph, and therefore denies the same.

20    18.    Pintrips denies that the generic, common terms pin or pin it function as a brand or
21  mark for any service offered by Plaintiff.  Pintrips states further that the terms pin and pin it are
22  generic terms used by many companies and individuals, including Plaintiff and its users, to refer
23  generally to the functionality of pinning a virtual object on a user interface, and not any particular
24  source of software.  Pintrips has insufficient information to admit or deny the remaining
25  allegations in this paragraph, and therefore denies the same.

26    19.    This paragraph contains only legal conclusions, as to which no response is
27  required.

28

**Pintrips And Its Confusing Marks**

20.   Pintrips refers to the webpages located or posted at pintrips.com with respect to any allegation concerning those documents or their content as of October 4, 2013.  Pintrips denies that it is a social media bookmarking service, and denies all remaining allegations in this paragraph.

21.   Pintrips admits that it was founded in early 2011, and refers to webpages or images located or posted at http://www.pintrips.com with respect to any allegation concerning those documents or content as of October 4, 2013.  Pintrips denies the remaining allegations in this paragraph.

22.   Denied.

23.   Pintrips lacks sufficient information to admit or deny the allegations in this paragraph, and therefore denies the same.

24.   Admitted.

25.   Pintrips admits that it is currently using the PINTRIPS mark, and that Plaintiff failed to object to Pintrips' use of PINTRIPS, PIN and other PIN-formative marks, and attempted registration of its PINTRIPS mark, until June 14, 2013.  Pintrips admits that it responded to Plaintiff's meritless objections on at least June 28, 2013.   Pintrips denies the remaining allegations in this paragraph.

**FIRST CAUSE OF ACTION**
**Trademark Infringement**
**(15 U.S.C. § 1114)**

26.   Pintrips incorporates its responses to paragraphs 1-25.

27.   Denied.

28.   Denied.

29.   Denied.

30.   Admitted.

31.   Denied.

32.   Denied.

1      33.    Denied.

2      34.    Denied.

**SECOND CAUSE OF ACTION**
**False Designation of Origin**
**(15 U.S.C. § 1125(a))**

35.    Pintrips incorporates its responses to paragraphs 1-34.

36.    This paragraph contains only legal conclusions, as to which no response is required.

37.    Denied.

38.    Denied.

39.    Denied.

40.    Denied.

41.    Denied.

**THIRD CAUSE OF ACTION**
**Trademark Dilution**
**(15 U.S.C. § 1125(c))**

42.    Pintrips incorporates its responses to paragraphs 1-41.

43.    The first sentence of this paragraph contains only legal conclusions, as to which no response is required.   Pintrips lacks sufficient information to admit or deny the remaining allegations in this paragraph, and therefore denies the same.

44.    This paragraph contains only legal conclusions, as to which no response is required.

45.    Denied.

46.    Denied.

47.    Denied.

**FOURTH CAUSE OF ACTION**
**Unfair Competition**
**(Cal. Bus. Prof. Code § 17200)**

48.    Pintrips incorporates its responses to paragraphs 1-47.

49.    Denied.

50.    Denied.

1    51.    Denied.

2    52.    Denied.

3                    **FIFTH CAUSE OF ACTION**
                    **California Trademark Dilution**
4                    **(Cal. Bus. Prof. Code § 14247)**

5    53.    Pintrips incorporates its responses to paragraphs 1-52.

6    54.    The first sentence of this paragraph contains only legal conclusions, as to which no

7    response is required.   Pintrips lacks sufficient information to admit or deny the remaining

8    allegations in this paragraph, and therefore denies the same.

9    55.    This paragraph contains only legal conclusions, as to which no response is

10   required.

11   56.    Denied.

12   57.    Denied.

13   58.    Denied.

14                              **FURTHER ANSWER**

15   Further answering the Complaint, Pintrips denies all allegations in the Complaint that are

16   not hereinabove expressly admitted.

17

18                      **PINTRIPS' AFFIRMATIVE DEFENSES**

19                       **FIRST AFFIRMATIVE DEFENSE**

20   1.    The Complaint fails to state a claim upon which relief can be granted.

21                      **SECOND AFFIRMATIVE DEFENSE**

22   2.    Plaintiff has no exclusive right or interest in any of the generic terms "pin," "pin

23   it," or in a graphic icon of a "pin."

24                       **THIRD AFFIRMATIVE DEFENSE**

25   3.    The term "pin" is generic for the services at issue.

26

27

28

**FOURTH AFFIRMATIVE DEFENSE**

4.      The term "pin" is descriptive for the services at issue and has not acquired distinctiveness, and cannot acquire distinctiveness, for those services.

**FIFTH AFFIRMATIVE DEFENSE**

5.      The phrase "pin it" is descriptive for the services at issue and has not acquired distinctiveness, and cannot acquire distinctiveness, for those services.

**SIXTH AFFIRMATIVE DEFENSE**

6.      The graphic icon of a "pin" is generic for the services at issue.

**SEVENTH AFFIRMATIVE DEFENSE**

7.      The graphic icon of a "pin" is descriptive for the services at issue and has not acquired distinctiveness, and cannot acquire distinctiveness, for those services.

**EIGHTH AFFIRMATIVE DEFENSE**

8.      Plaintiff knowingly has made false accusations against Pintrips, is misusing Plaintiff's alleged trademarks, and is using the legal process for the improper purpose of thwarting competition, engaging in unfair competition, stifling free speech and/or extorting intellectual property from a legitimate business enterprise, namely Pintrips.   Accordingly, Plaintiff is guilty of inequitable conduct and comes into this Court with unclean hands.

**NINTH AFFIRMATIVE DEFENSE**

9.      Plaintiff's claims are barred by license, consent, acquiescence, waiver, and estoppel.

**TENTH AFFIRMATIVE DEFENSE**

10.      Plaintiff's claims are barred because it has abandoned its rights in its alleged "Pinterest," "Pin it," and "Pin" marks.

**ELEVENTH AFFIRMATIVE DEFENSE**

11.      Plaintiff's claims are barred by the doctrine of the privilege of competition.

**TWELFTH AFFIRMATIVE DEFENSE**

12.      Plaintiff's claims are barred by the doctrine of fair use.

**THIRTEENTH AFFIRMATIVE DEFENSE**

13.    Plaintiff's claims are barred because there is no likelihood of confusion between Plaintiff's alleged marks and Pintrips' use of the pin term and its PINTRIPS mark for travel planning services.

**FOURTEENTH AFFIRMATIVE DEFENSE**

14.    Plaintiff's claims are barred by the First Amendment to the United States Constitution.

**FIFTEENTH AFFIRMATIVE DEFENSE**

15.    Plaintiff's claims are barred for lack of subject matter jurisdiction to the extent Plaintiff lacks valid registration of its alleged marks.

**SIXTEENTH AFFIRMATIVE DEFENSE**

16.    Plaintiff's claims are barred to the extent it has forfeited or abandoned its alleged marks, and/or failed to enforce its rights thereto.

**SEVENTEENTH AFFIRMATIVE DEFENSE**

17.    Plaintiff's claims are barred because its alleged "Pinterest" trademark is not inherently distinctive, and did not establish secondary meaning prior to either Pintrips' use of the generic term pin or its PINTRIPS mark.

**EIGHTEENTH AFFIRMATIVE DEFENSE**

18.    Any damages claimed in the Complaint are barred or limited by Plaintiff's failure to comply with the trademark marking or infringement notification requirements under the U.S. and/or state of California trademark laws.

**NINETEENTH AFFIRMATIVE DEFENSE**

19.    Plaintiff's claims are barred to the extent any persons, on whose behavior Plaintiff seeks to hold Pintrips liable, are innocent infringers.

**TWENTY AFFIRMATIVE DEFENSE**

20.    Plaintiff's claims are barred by the doctrine of laches.

**TWENTY-FIRST AFFIRMATIVE DEFENSE**

21.    Plaintiff's Complaint fails to properly invoke the equity jurisdiction of this Court.

1                             **TWENTY-SECOND AFFIRMATIVE DEFENSE**

2        22.     Plaintiff has not suffered, and will not suffer, any irreparable harm based on the

3 allegations in the Complaint.

4                             **TWENTY-THIRD AFFIRMATIVE DEFENSE**

5        23.     Pintrips will suffer irreparable harm if the injunctive relief request is granted.

6                             **TWENTY-FOURTH AFFIRMATIVE DEFENSE**

7        24.     Plaintiff's claims fail to state facts sufficient to support an award of attorneys' fees

8 against Pintrips.

9                             **TWENTY-FIFTH AFFIRMATIVE DEFENSE**

10        25.     Plaintiff's claims are barred because Plaintiff's requests for damages are

11 speculative and uncertain.

12                             **TWENTY-SIXTH AFFIRMATIVE DEFENSE**

13        26.     Plaintiff's claims for statutory damages are barred by the United States

14 Constitution.

15                             **TWENTY-SEVENTH AFFIRMATIVE DEFENSE**

16        27.     Pintrips has insufficient knowledge or information upon which to form a belief as

17 to whether it may have additional, as yet unstated, affirmative defenses available, and Pintrips

18 reserves the right to assert such additional affirmative defenses in the event investigation and

19 discovery indicate that they are proper.

20

21                                    **PRAYER FOR RELIEF**

22        WHEREFORE, Defendant, Pintrips, respectfully prays that each and every prayer for

23 relief that Plaintiff seeks be denied, and that instead this Court enter judgment for Pintrips and

24 against Plaintiff on all counts, that the Complaint be dismissed with prejudice, and further:

25

26        A.     Award to Pintrips its costs of defending against the Complaint, together with

27 reasonable attorneys' fees as may be allowed by applicable law and/or the equity powers of this

28 Court; and

KENYON & KENYON
LLP
PALO ALTO

B.    Award to Pintrips such other and further relief as this Court may deem just and proper.

## COUNTERCLAIMS

For its counterclaim against Counterdefendant Pinterest, Counterclaimant Pintrips alleges as follows:

## THE PARTIES

1.    Counterclaimant Pintrips, Inc. is, and was at all relevant times, a corporation organized under the law of Delaware.

2.    On information and belief, Counterdefendant Pinterest is, and was at all relevant times, a corporation organized under the laws of Delaware.

## JURISDICTION AND VENUE

3.    Pintrips incorporates by reference its answers and separate defenses above as if fully set forth herein.

4.    This action arises under the Trademark Laws of the United States, 15 U.S.C. § 1051 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 & 2202.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 & 1338.  This Court has supplemental jurisdiction over Counterclaimant's state law claims under 28 U.S.C. § 1367(a), and under principles of pendent jurisdiction.

5.    As detailed in Pintrips' answers and separate defenses above (and in the Complaint filed in this action by Counterdefendant), an actual controversy exists between Pintrips and Counterdefendant in that:

a.    Pinterest is attempting to assert trademark rights in the term "pin," and the phrase "pin it," and in the graphic image of a pin (either alone or in specific combinations as described by Pinterest).

b.    In connection with its travel planning service, Pintrips is using the generic term "pin" and a graphic image of a pin.

c.      Pinterest has requested that Pintrips be enjoined from using the above-listed generic term and from using a graphic image of a pin (either alone or in any specific combination as described by Pinterest).

6.      This Court has personal jurisdiction over Counterdefendant in this action and venue is proper in this judicial district under 28 U.S.C. § 1391(b), (c) & (d) because: (a) Counterdefendant resides in this judicial district; (b) Counterdefendant has initiated this action in this Court; (c) has intentionally engaged in substantial business with this forum amounting to sufficient minimum contacts, including, but not limited to, the offer for sale and sale of relevant services into California and into this judicial district; and (d) a substantial part of the acts or omissions giving rise to the asserted claims occurred or had effects in this judicial district.  Venue is proper in this district under 28 U.S.C. § 1391 and as Counterdefendant resides in this judicial district.

## **FACTS**

### **Pintrips' Background**

7.      Established in early 2011, Pintrips is an online travel planning tool that allows users to review and monitor information from commercial flights.[1]  Through Pintrips, customers are able to compare travel routes and price options, monitor price changes, and easily coordinate flights from various travel sites with fellow travelers.  Pintrips is a small start-up company that has worked hard to establish its presence in the online travel business arena.  A copy of a webpage located at http://www.pintrips.com, providing an overview of Pintrips' services, is attached hereto as Exhibit 1.

8.      Pintrips and its travel tools operate in an entirely different sector from Pinterest, who operates a social media platform.  Pintrips' brand does not cause confusion among consumers as it in no way implies a connection, affiliation or sponsorship with Plaintiff.  The two

---

[1]      Although Pinterest claims that it launched its pinning services in March, 2010, at least one pinning pundit notes that it was nearly non-existent in mid-2011.  A copy of an article discussing pinning is attached as Exhibit 2.

parties merely share the word "pin" in their respective business names, as nearly hundreds of online and "brick and mortar" companies do.

9.      Unlike Pinterest, there is no social media aspect of Pintrips' online travel services. A user's trip information (*i.e.*, itinerary and flight information) is private and accessible by the user's specific invitation only.  The information is shared only when a user expressly permits it, and then, it is shared only with the individuals that the user specifically identifies.  There is no automatic sharing of information with all Pintrips users, or any subset of Pintrips users.  For example, the user's trip information does not show up in a Google® search.

10.      Ten months before Pinterest commenced this action, Pintrips applied for trademark registration of its PINTRIPS mark for travel services.  *See* Trademark Application No. 85/793,784, a copy of which is attached hereto as Exhibit 3.  Pintrips provided a declaration of use and the required specimens of use and on April 17, 2013, the USPTO issued a Notice of Publication, a copy of which is attached hereto as Exhibit 4.  The Notice of Publication indicated that the USPTO did not find any prior applications or registrations, including those belonging to Plaintiff, that were likely to cause confusion with the PINTRIPS mark.

11.      Pintrips would likely have a registration for its mark had Pinterest not filed a Notice of Opposition on November 1, 2013 to block the USPTO from issuing Pintrips a certificate.  See Notice of Opposition, a copy of which is attached hereto as Exhibit 5.

**Pervasive Use of Pins in Software**

12.      Pinterest is not entitled to the exclusive use of the PIN or other PIN-formative marks as the term is generic and cannot be removed from common use to the exclusivity of one entity for profit.  A "pin" or "pinning" is a common functional term frequently used by software providers, customers, analysts, users, and the media to describe shared features of operating systems, websites, map applications, graphic user interfaces, applications and other software programs.

13.      Pintrips' use of the term pin and a graphic image of a pin as an icon in a generic manner are consistent with prevailing practice among leading websites, software, and apps. Examples include:

a.   Facebook allows users and administrators to "pin" certain page posts to the top of their respective pages.  A webpage from http://www.facebook.com, explaining how to pin a post, is attached hereto as Exhibit 6.

b.   Google Maps identifies points of interest on a map via marker "pins".  A webpage from https://developers.google.com demonstrating the ability to customize these markers, is attached hereto as Exhibit 7.  This example explains how custom icons can be used to replace "the default Google map marker pin."

c.   Microsoft Windows 7 allows a user to a "pin" an application to the taskbar as a shortcut for easy access to that application.  A webpage from http://windows.microsoft.com demonstrating this feature is attached is attached hereto as Exhibit 8.

d.   Apple Mac OS X allows users to "pin" often used programs, files or folders to a dock to provide the user a more convenient method to access these items.  A webpage from a commentator explaining this feature is attached hereto as Exhibit 9.

e.   A Blackberry 10 Device allows a user to "pin" a file to their device so that it will be available even when the user is offline.  A webpage from http://docs.blackberry.com demonstrating this feature is attached hereto as Exhibit 10.

f.   Pin Drop is an application available for smartphones and other portable devices that allows users to "pin" places and items of interest to keep or share with others.   Pin Drop provides "pinning" services similar to Pinterest in the context of online social media and bookmarking.  A webpage from http://www.pindropapp.com explaining and demonstrating the Pin Drop application is attached hereto as Exhibit 11.

g.   Historypin is an online social media community that allows people, groups and organizations to "pin" various media and content related to historical

artifacts found across the world.  The "pinning" functionality is used in a similar manner as the services provided by Pinterest in the same online social media, bookmarking business sector.  Users may click on "pins" located on a map of the world to obtain historical information on that specific location.  Alternatively, Historypin instructs users to "pin it" – by providing media such as digital pictures to share with the rest of the online community.  A webpage from http://www.historypin.com showing various pictures and other "pinned" content is attached hereto as Exhibit 12.

h.   Pinboard is a social bookmarking site.  A webpage from http://www. pinboard.in explaining and demonstrating the Pinboard application is attached hereto as Exhibit 13.

i.   Pincup is a social media app that allows users to share photos.  A webpage from http://www.pincup.com explaining and demonstrating the Pin Cup application is attached hereto as Exhibit 14.

j.   Pin In The Map is a website that allows users to pin a location on a Google® map, attach text, and send the pinned location to others.   A webpage from http://www. pininthemap.com explaining and demonstrating the Pin In the Map website is attached hereto as Exhibit 15.

k.   Pin Maps is an app for the iPhone and iPad that allows users to pin places that they wish to visit.  A webpage from https://itunes.apple.com/us/app/pin-maps/id590951333?mt=8                 com explaining and demonstrating the Pin Maps app is attached hereto as Exhibit 16.

l.   Pin Master HD is an app for the iPhone and iPad that allows users to pin locations on a map to share with their friends.  A webpage from https://itunes.apple.com/us/app/pin-master-hd-bookmark-your/id500567544?mt=8 explaining and demonstrating the Pin Master HD app is attached hereto as Exhibit 17.

1    m.    Pin'N Find is an Android app that helps users find where they parked their

2          car.  A webpage from https://www.facebook.com/pinnfind explaining and

3          demonstrating the Pin'N Find app is attached hereto as Exhibit 18.

4    n.    Pin Steam is an app for the Windows operating system.  Pin Stream  allows

5          users to pin tiles to see their friends online status and see the online games

6          they are playing.  A webpage from http://apps.microsoft.com/windows/en-

7          us/app/pin-steam/e697bf8a-8c25-4236-b701-197db3792ecf explaining and

8          demonstrating the Pin Steam app is attached hereto as Exhibit 19.

9    o.    Pin Jobs is a job search website.  A webpage from http://pin.jobs/

10         explaining and demonstrating the Pin Jobs website is attached hereto as

11         Exhibit 20.

12   p.    Pinblu is a website for social e-commerce.  A webpage from

13         http://pinblu.com/ is attached hereto as Exhibit 21.

14   q.    pin!Down is an iPhone app that allows users pin and save locations on a

15         virtual map.  A webpage from http://version11-english.pindown.ca is

16         attached hereto as Exhibit 22.

17         Attached hereto as Exhibit 23 are screenshots from many other software, website

18   and app providers who are using the term pin and a graphic image of a pin as an icon in a generic

19   manner such as Pinstyle, PinMe, PinMyPet, PinMyRide, PinMyWay, Pinnum, Uber, Pinspire,

20   and Property Pins.

21         14.    Likewise, national media outlets use the term "pin" in a generic sense.

22   Examination of publicly-accessible media sources reveals newspaper, magazine and blog articles

23   that use "pin" to refer to "pinning" an object on a user interface.  The articles which predate

24   Pinterest's inception, allegedly in March, 2010,[2] call into question Pinterest's claim that it

25

26

27   _____

[2]    Although Pinterest claims that it launched its pinning services in March, 2010, at least one pundit notes that
28   it was nearly non-existent in mid-2011.  *See* Exhibit 2.

pioneered the use of the pin term in the context of social media and bookmarking.  Examples include:

a. "Users can also 'pin' digital photos and messages to the screen, and Tesco aims to enable direct access to social networking sites like Facebook and Bebo." *Tesco Aims at the Heart of Digital Family Life*, New Media Age, October 30, 2008 (Attached as Exhibit 24);

b. "That kind of collaboration is how Hallmark and Product Red launched a campaign in 2008 that had social-network users pinning branded badges to their profile pages."  Abbey Klaassen, *Shops Seek Control in Social-Media Space*, Advertising Age, March 2, 2009 (Attached as Exhibit 25);

c. "Users can pin up almost anything, including photos, personal messages, artwork scraps, post cards or notes with links to news and entertainment stories, blogs, music, video and other digital content." *The Internet Pinboard Company: Internet Pinboard Pins Up Virtual Corkboard*, M2 PressWIRE, June 4, 2008 (Attached as Exhibit 26);

d. "App tiles can be moved around or replaced easily with a process called 'pinning,' already familiar to Windows 7."  Jonathan Takiff, *Improved Windows Mobile 7 Coming*, The Philadelphia Daily News, October 20, 2010 (Attached as Exhibit 27);

e. "There's also a Pinterest for expectant mothers, called SunnyBump, which also uses a similar pinboard-style platform that allows users to share stuff and purchase baby products." *Gentlemint, Dudepins and Manteresting Are Where Guys Go Instead of Pinterest*, About.com Computing Web Trends, April 5, 2013   (Attached as Exhibit 28);

f.  "Users can, for instance, lock down a Montage in time by pinning news stories, photos, videos, and more to a page."   Josh Lowensohn, *Fuse Labs' Montage Blends Search With Blogging*, CNET.com, November 16, 2010  (Attached as Exhibit 29);

g.  "Facebook has no storage of these third-party apps: . . . My Travel Photo Map (share photos from your adventures around the globe by pinning them to a map for friends to click through)."   Marc Saltzman, *Convenient, Powerful Ways to Share Memories*, Edmonton Journal, June 23, 2010  (Attached as Exhibit 30);

h.  "For the past three months, the Broadcastr team has been recording stories and sourcing archives from notable cultural figures, unique individuals, artists, performers, and organizations and pinning those stories to Broadcastrs interactive online map of the world." *Broadcastr, a New Social Media Platform for Location-Based Audio Content, Launches Beta*, American Banking and Market News, December 20, 2010 (Attached as Exhibit 31);

i.  "The Pinboard is a feature where logged-in users can create themed collections or wishlists."   *10 Great Websites to Buy Handmade Goods*, Mashable, May 26, 2010 (Attached as Exhibit 32);

j.  " . . .Facebook was initially the domain of hip young things, single satellites strung out across the globe lighting up cyber space with their witty anecdotes and drink-addled encounters, while pinning embarrassing photos on their virtual walls."  Kathy Evans, *This Is Our Life*, Sunday Age, November 28, 2010  (Attached as Exhibit 33);

k.    "Internet Explorer 9 sets itself apart by supporting hardware-accelerated graphics and offering users a more app-like experience with its new pinned site capability, making our customer experience even better;" and "Pinned Sites.  With Pinned Sites, a user's favorite websites can be accessed directly from the Windows Taskbar . . . ." *Microsoft and Top Sites Celebrate the Beauty of the Web With Internet Explorer 9 Beta Release*, PR Newswire, September 15, 2010 (Attached as Exhibit 34); and,

l.    "Pinning is a way to share interesting internet content via a virtual *pinboard*;" and "Yet Pinterest.com isn't the only pinning site out there."  (emphasis supplied).  *Pinning: The Next Wave in Social Media*, Pin It. The New Social Pinning Phenomena, pinit.com, March 30, 2012 (Attached as Exhibit 2).

**Pinterest Attempts to Seize the Generic Term Pin**

15.    Not surprisingly, Pinterest has failed to secure a registration for the term pin. Despite the generic nature of the term pin, on August 8, 2012, Pinterest filed an intent-to-use application with the United States Patent and Trademark Office ("USPTO"), identified as application number 85/698,998, a copy of which is attached hereto as Exhibit 35.

16.    On July 2, 2013, Pinterest received an office action letter from the USPTO which, among other things, confirmed that the application was still proceeding as an intent-to-use application under 15 U.S.C. § 1051(b).  *See* July 2, 2013 Office Action Letter, a copy of which is attached hereto as Exhibit 36.  To date, Plaintiff has not filed a statement of use or provided any specimens of use for the alleged mark with the USPTO to demonstrate its use in commerce as a trademark and not simply a commonly used, generic functional term.  Pinterest has not even alleged that it has used its purported "pin" mark before Pintrips' use of the term.

17.     Indeed, Pinterest's own use of the "pin" term on its website demonstrates that the term is used solely in its generic sense:



Printouts from pinterest.com are attached hereto as Exhibit 37.

18. Pinterest has also been unsuccessful in attempting to broaden its trademark rights for its PINTEREST mark. On May 11, 2013, the European Commission's Office for Harmonization in the Internal Market rejected Pinterest's opposition to a European Union trademark application (10,605,749) for the "Pinterest" mark, as filed by Premium Interest, Ltd. A copy of the Commission's decision is attached hereto as Exhibit 38.

19. Further narrowing the limited scope of Pinterest's alleged rights to PIN-formative marks are numerous current U.S. applications and registrations for PIN and PIN-formative marks, including those for software and social networking, including the following:

    a.   Serial No. 85/249,814 for the mark PINS, as published in the Trademark Official Gazette, a copy of which is attached hereto as Exhibit 39.

    b.   Reg. No. 3,637,935 for the mark PIN, a copy of which is attached hereto as Exhibit 40.

    c.   Reg. No. 4,264,695 for the mark PIN, a copy of which is attached hereto as Exhibit 41.

    d.   Reg. No. 3,945,852 for the mark PINS, a copy of which is attached hereto as Exhibit 42.

    e.   Reg. No. 4,028,935 for the mark PIN, a copy of which is attached hereto as Exhibit 43.

    f.   Reg. No. 2,795,963 for the mark PINS, a copy of which is attached hereto as Exhibit 44.

    g.   Reg. No. 4,159,225 for the mark PINWEEL, a copy of which is attached hereto as Exhibit 45.

    h.   Serial No. 85/292,873 for the mark PINNY, as published in the Trademark Official Gazette, a copy of which is attached hereto as Exhibit 46.

    i.   Reg. No. 4,360,237 for the mark PINNING PARTY, a copy of which is attached hereto as Exhibit 47.

    j.   Reg. No. 4,337,225 for the mark PINSYNC, a copy of which is attached hereto as Exhibit 48.

k.   Reg. No. 4,441,854 for the mark PINNUM, a copy of which is attached hereto as Exhibit 49.

l.   Reg. No. 4,087,290 for the mark MY CAMP MATE-PLAN. PIN. SHARE, a copy of which is attached hereto as Exhibit 50.

m.   Reg. No. 3,612,202 for the mark YELLOWPIN, a copy of which is attached hereto as Exhibit 51.

20.   Despite the numerous third party applications and registrations for PIN-formative marks for software and social media services, Pinterest has attempted to strong-arm Pintrips into giving up its lawful right to use the pin term and its name PINTRIPS.  Plaintiff has challenged Pintrips' registration of the PINTRIPS mark, as well as instituted this litigation concerning use of the pin term and the PINTRIPS mark.

21.   As part of its brand development, on December 4, 2012, Pintrips filed an application to register the PINTRIPS mark with the USPTO, Application Serial No. 85/793,784, based on Pintrips' use of the mark in connection with its travel planning service, including "arranging and coordinating travel arrangements for individuals and groups, namely, destinations stays, honeymoons, family vacations, and destination weddings; Coordinating travel arrangements for individuals and for groups."

22.   In its approval of the PINTRIPS mark for publication, the USPTO did not cite Plaintiff's application for "PIN" or Plaintiff's registration for "PINTEREST" as potentially confusing, nor did the USPTO otherwise suggest any issue with any of Plaintiff's alleged marks.  Put differently, the USPTO did not assert that Pintrips' PINTRIPS mark was confusingly similar to Plaintiff's application for "PIN" or its registration for "PINTEREST."   Accordingly, the PINTRIPS mark was published in the Trademark Official Gazette on May 7, 2013.  A copy of the USPTO's publication is attached hereto as Exhibit 52.

23.   In an improper effort to take Pintrips' intellectual property as its own, Plaintiff has attempted to disrupt Pintrips' nascent travel planning service by challenging Pintrips' right to use pin and the validity of its PINTRIPS mark.  On November 1, 2013, Plaintiff filed an opposition in the Trademark Trial and Appeals Board ("TTAB") to the registration of Pintrips' mark based on

1   Plaintiff's ownership of the application for "PIN" and its registration for "PINTEREST." *See*

2   TTAB Opposition No. 91/213,301 ("Opposition").

3       24.   Additionally, on October 4, 2013, Plaintiff initiated this federal action against

4   Pintrips (the "Federal Action").

5       25.   On or about November, 2013, Pinterest's CEO Ben Silbermann publicly announced

6   that the company would introduce new ways to plan trips, including "add[ing] an unnamed co-

7   booking website, which attempts to get through the chain from planning to purchase." Copies of

8   articles discussing Pinterest's recent interest in expanding its services to encompass travel

9   planning services are attached hereto as Exhibit 54.

10      26.   The timing and actions taken by Plaintiff with its Opposition and Federal Action all

11  point to the inescapable conclusion that Plaintiff improperly seeks to disrupt and prevent Pintrips

12  from lawfully using the "pin" term and its PINTRIPS mark for travel planning services.

13      27.   To make matters worse, it appears that Pinterest's planned travel booking service

14  will be a slavish copy of Pintrips' service, *i.e.*, it will allow users to coordinate flights with friends

15  and colleagues.

16      28.   Upon information and belief, Pinterest has not yet offered any travel planning

17  services. It is indisputable that allowing users to pin a picture of a pretty place to visit for the

18  world to see on a public board is not the same service as allowing users to coordinate flights with

19  their family members or work colleagues.

20      29.   Moreover, this is not the first time that Pinterest has unsuccessfully sought, through

21  TTAB oppositions and the like, to prevent others from exercising valid trademark rights to PIN-

22  formative marks. *See, e.g*., copies of TTAB Oppositions where PIN-formative marks proceeded

23  on to registration after Pinterest withdrew its respective opposition attached hereto as Exhibit 53.

24      30.   Pintrips vigorously denies Plaintiff's meritless allegations. Like numerous third

25  parties, Pintrips has every right to use pin term in a generic sense. Pintrips' PINTRIPS mark is

26  valid and should be registered. Neither Pintrips' mark nor its use of the pin term in connection

27  with its travel planning services infringes any valid trademark or other legal right of Pinterest, and

28  Pintrips' activities and conduct do not constitute unfair competition.

31.     Pintrips' use of the term pin in a generic sense is consistent with prevailing practice, as demonstrated below:



Attached hereto as Exhibit 1 are screenshots from pintrips.com.

**COUNT I**
**DECLARATORY JUDGMENT**
**("PIN")**

32.     Pintrips incorporates by reference its allegations in paragraphs 1 through 31 of its Counterclaims above as if fully set forth herein.

33.     An actual, concrete and justiciable controversy exists concerning Pintrips' lawful use of the term pin and other pin-formative phrases.

34.     The term "pin" is a common, generic term for pinning a virtual object on a user interface and cannot function as a mark.

35.     Accordingly, Pintrips is entitled to a declaration that the alleged mark "pin" is not and cannot be a valid mark and that Plaintiff does not have and cannot have the exclusive right to use the term "pin" for pinning a virtual object on a user interface.

**COUNT II**
**DECLARATORY JUDGMENT**
**("PIN IT")**

36.     Pintrips incorporates by reference its allegations in paragraphs 1 through 35 of its Counterclaims above as if fully set forth herein.

37.     An actual, concrete and justiciable controversy exists concerning Pintrips' lawful use of the term pin and other pin-formative phrases.

38.     The term "pin it" is a common, generic phrase for pinning a virtual object on a user interface and cannot function as a mark.

39.     Accordingly, Pintrips is entitled to a declaration that the alleged mark "pin it" is not and cannot be a valid mark and that Plaintiff does not have and cannot have the exclusive right to use the term "pin it" for pinning a virtual object on a user interface.

**COUNT III**
**DECLARATORY JUDGMENT**
**("THE GRAPHIC IMAGE OF A PIN")**

40.     Pintrips incorporates by reference its allegations in paragraphs 1 through 39 of its Counterclaims above as if fully set forth herein.

41.     An actual, concrete and justiciable controversy exists concerning Pintrips' lawful use of a graphic image of a pin.

42.     The graphic image of a pin is a common, generic visual representation for pinning a virtual object on a user interface and cannot function as a mark.

43.     Accordingly, Pintrips is entitled to a declaration that the alleged mark consisting of a graphic image of a pin is not and cannot be a valid mark and that Plaintiff does not have and cannot have the exclusive right to use the icon for pinning a virtual object on a user interface.

**COUNT IV**
**DECLARATORY JUDGMENT**
**(Cancellation of Federal Trademark Registration)**

44.     Pintrips incorporates by reference its allegations in paragraphs 1 through 43 of its Counterclaims as though fully set forth herein.

45.     Plaintiff is the purported owner of U.S. Trademark Registration No. 4,145,087 issued on May 22, 2012 for the alleged mark PINTEREST (the '087 Registration") for "PINTEREST."

46.     Pintrips makes this claim for cancellation of the '087 Registration pursuant to 15 U.S.C. §§ 1064, 1119, 1127.

47.     Upon information and belief, Pinterest allows tens of thousands of third parties to use the PINTEREST mark in connection with their goods and services.

48.     Upon information and belief, Pinterest's use guidelines contain no express right to inspect and supervise these random licensees' services and goods.

49.     Upon information and belief, the use guidelines do not allow Pinterest to terminate the license agreement if the licensee is producing inferior goods or services.

50.     Upon information and belief, Pinterest has not actually exercised control over the quality of its licensees' goods and services and has not actually inspected the licensees' goods and services.

51.     By virtue of this license and its failure to exercise actual control over quality, Pinterest has abandoned its mark.

52.     The '087 Registration has been abandoned due to extensive naked licensing to third parties, and therefore the registration is subject to cancellation.  *See FreecycleSunnyvale v. Freecycle Network*, 626 F.3d 509, 515 (9th Cir. 2010).

### COUNT V
### DECLARATORY JUDGMENT
**(Pintrips' Right to Register and Use the PINTRIPS Mark)**

53.     Pintrips incorporates by reference its allegations in paragraphs 1 through 52 of its Counterclaims as though fully set forth herein.

54.     An actual, concrete and justiciable controversy exists concerning Pintrips' registration and lawful use of its PINTRIPS mark in the advertising, promotion and sale of travel planning services.

55.   Pintrips is entitled to a declaration that it may register and use the PINTRIPS mark in connection with travel services, and that Counterdefendant is not entitled to enjoin or prevent such use or registration.

## **PRAYER FOR RELIEF**

WHEREFORE, Counterclaimant, Pintrips, respectfully prays that this Court enter an Order and judgment for Pintrips and against Counterdefendant, Pinterest, as follows:

A.   That the alleged mark "pin" is not and cannot be a valid mark and that Plaintiff does not have and cannot have the exclusive right to use the term "pin" for pinning a virtual object on a user interface;

B.   That the alleged mark "pin it" is not and cannot be a valid mark and that Plaintiff does not have and cannot have the exclusive right to use the term "pin it" for pinning a virtual object on an user interface;

C.   That the alleged mark consisting of a graphic image of a pin is not and cannot be a valid mark and that Plaintiff does not have and cannot have the exclusive right to use the icon for pinning a virtual object on an user interface;

D.   A declaration that this case is exceptional under 15 U.S.C. § 1117(a)(3);

E.   That U.S. Trademark Registration No. 4,145,087 be cancelled;

F.   That Pintrips may register and use the PINTRIPS mark in connection with travel services, and that Pinterest is not entitled to enjoin or prevent such registration;

G.   That Pintrips be awarded its costs of pursuing its Counterclaims, together with reasonable attorneys' fees as may be allowed by applicable law and/or the equity powers of this Court; and

H.   That Pintrips be awarded such other and further relief as this Court may deem just and proper.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## JURY DEMAND

Pintrips hereby demands a trial by jury on all issues so triable, including Plaintiff's claims for relief and Pintrips' Counterclaims pursuant to Rule 38 of Federal Rules of Civil Procedure and Civil L.R. 38-1.

Dated: February 28, 2014

Respectfully submitted,

By: */s/ Frank L. Bernstein*

Frank L. Bernstein (SBN 189504)
KENYON & KENYON LLP
1801 Page Mill Road, Suite 210
Palo Alto, California 94304
Telephone: (650) 384-4700
Facsimile:  (650) 384-4701
Email: fbernstein@kenyon.com

Attorneys for Defendant
*Pintrips, Inc.*