# HARVEY ▪ SISKIND LLP

July 28, 2014

Donald A. Thompson

**VIA ELECTRONIC CASE FILING**

The Honorable Kandis A. Westmore
United States Magistrate Judge
United States District Court
Courtroom 4 - 3rd Floor
1301 Clay Street
Oakland, CA 94612

    Re:    *Pinterest, Inc. v. Pintrips, Inc.*
               Case No. C 13-04608-RS-KAW

Your Honor:

    On June 17, 2014, counsel for the parties met and conferred in person and in good faith, pursuant to your order (D.N. 51), to resolve a discovery dispute concerning Pintrips's responses to Pinterest's Interrogatories No. 16 and 17, attached hereto as Exhibit A.[1] We certify that we have been unable to resolve this discovery dispute, despite our lengthy in-person discussion.

    /s/ *Donald A. Thompson*              /s/ *Frank L. Bernstein*
    Donald A. Thompson                     Frank L. Bernstein
    Harvey Siskind LLP                      Kenyon & Kenyon LLP
    Counsel for Pinterest, Inc.             Counsel for Pintrips, Inc.

    Accordingly, we submit this updated joint letter for your further consideration.

---

[1] The interrogatories were deemed served on March 17, 2014, and the responses were served on April 23, 2014, after a consented extension. Counsel met and conferred about the responses by phone on May 6, 2014 and May 20, 2014, and by email on other occasions, in advance of the in-person meeting on June 17, 2014.

The Honorable Kandis A. Westmore
July 28, 2014
Page 2

**Pinterest's Interrogatory No. 16**

The interrogatory reads: "Identify all communications between You and any third party which refer or relate to Pinterest."

The response reads: "[M]embers of the press have interviewed [Pintrips CEO] Stephen Gotlieb on several occasions. In addition, Stephen Gotlieb discussed the [this] litigation with potential investors and certain advisors on several occasions."

The dispute is whether Pintrips should identify by name and location, including employer, the "potential investors" and "certain advisors" referenced above (and anyone else with whom Pintrips has communicated about its trademark dispute with Pinterest).

The positions of the parties are explained below.

**Plaintiff Pinterest's Position**

1.      Pinterest Seeks Information Within the Scope of Discovery

The scope of discovery encompasses "any nonprivileged matter that is relevant to any party's claim or defense," specifically including "*the identity and location of persons who know of any discoverable matter*." Fed. R. Civ. P. 26(b)(1) (emphasis added). Accordingly, the scope of discovery encompasses the identity and location of persons referenced in interrogatory responses.

Because Pintrips has communicated with "potential investors" and "certain advisors" about this case, their identities and locations should be disclosed. *See Viacom Int'l, Inc. v. YouTube, Inc.*, 2008 U.S. Dist. LEXIS 79777, *12-14 (N.D. Cal. 2008) (communications with potential investors held relevant to infringement action). The "potential investors" and "certain advisors" are uniquely situated to know relevant information that is not readily available from other sources. For example, they may be able to confirm that Pintrips deliberately chose a name which is similar to Pinterest with the intent of profiting from Pinterest's success. Such information would clearly be relevant. *See* 15 U.S.C. § 1125(c)(2)(B)(v) (defendant's intent relevant to trademark dilution); *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348 n.9, 354 (9th Cir. 1979) (defendant's intent relevant to trademark infringement). Moreover, such information may not be memorialized anywhere, and may only be known to the "potential investors" and "certain advisors" because of their close relationship with Pintrips's founders. *See Viacom*, 2008 U.S. Dist. LEXIS 79777 *13 ("Due to [their] close relationships with defendants, [investors]

The Honorable Kandis A. Westmore
July 28, 2014
Page 3

may have obtained information regarding defendants' intent and knowledge" not memorialized in writing.)

Pintrips suggests that Pinterest intends to subpoena the "potential investors" and "certain advisors" to choke-off potential sources of funding for Pintrips. The truth is less interesting and more benign. Pinterest intends to subpoena the "potential investors" and "certain advisors" because they will be the most promising sources of evidence. *See id.* By its own admission, Pintrips is a "small startup" that "relies on investors for the necessary funds to continue to build its business." *See infra* at 6. Against this background, it is logical to assume that Pintrips confides in its investors. After all, it "relies" on them. It is equally logical to assume that the investors expect Pintrips to confide in them. After all, they are putting money at stake. It is also a matter of record that Pintrips has confided in its investors (whom it equates with "advisors") by communicating with them about this case. It is not a stretch to believe that Pintrips has also confided in its investors by communicating with them about why it adopted a name which is so similar to Pinterest. Again, such information would clearly be relevant. *See* 15 U.S.C. § 1125(c)(2)(B)(v); *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d at 348 n.9, 354.

For these reasons, Pinterest is entitled to the identities and locations of the "potential investors" and "certain advisors," among others with whom Pintrips has communicated about its trademark dispute with Pinterest.

    2.    <u>Pintrips Cannot Sustain Its Burden to Show that Discovery Is Unduly Burdensome</u>

Pintrips has the burden of showing that discovery should be prohibited and of clarifying, explaining and supporting its objections with competent evidence. *See Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975); *Mathis v. County of Lyon*, 2012 U.S. Dist. LEXIS 61814, *11-12 (D. Nev. 2012); *Directv, Inc. v. Trone*, 209 F.R.D. 455, 458 (C.D. Cal. 2002). Pintrips cannot carry that burden here.

Pintrips relies on its own misconception to argue that the requested discovery is unduly burdensome.[2] When weighing the burden on the producing party, courts do not look at whether the information is good or bad for its business. *In re Toys "R" Us-Delaware, Inc.*, 2010 U.S.

---

[2] Pintrips decries Pinterest for "mischaracterizing Pintrips' position." The reality is much simpler. Pinterest has not adopted Pintrips' position, and neither has a single court.

The Honorable Kandis A. Westmore
July 28, 2014
Page 4


Dist. LEXIS 130884, *20-22 (C.D. Cal. 2010). Rather courts look at indicia such as the cost of production, how many hours it would take to collect the requested information, or how many different locations at which the information is stored. *See Dep't of Fair Empl. & Hous. v. Law Sch. Admission Counsel*, 2013 U.S. Dist. LEXIS 84205, *8 (N.D. Cal. June 14, 2013) (ordering production of data underlying Defendant's decision to flag certain standardized test scores, documents that explain that data, and documents describing a correlation study); *Murphy v. Farmers New World Life Ins. Co.*, 2014 U.S. Dist. LEXIS 66749, *6 (D. Ariz. May 12, 2014) (finding that the burden and expense to the parties in conducting a deposition is not significant). Moreover, even where discovery imposes a burden, courts weigh the moving party's need for the discovery against the burden associated with producing the discovery. Fed. R. Civ. P. 26(b)(2)(C)(iii).

In this case, it would cost virtually nothing and require virtually no time for Pintrips to disclose the identities and locations of "potential investors," "certain advisors," and others with whom it has communicated about this case. It is difficult to imagine less burdensome and more appropriate discovery requests than requests for the name and location (including employer) of persons referenced in interrogatory responses. Moreover, Pintrips knows that Pinterest requires responses to seek discoverable information from the "potential investors" and "certain advisors". Pintrips simply does not want to disclose their identities, perhaps because it knows they possess evidence which would undermine its defense. Pintrips has not cited *a single case* which suggests that it can avoid disclosing potential investors and advisors because it may rely on them for funding. Moreover, Pintrips also has not distinguished the case cited by Pinterest which effectively says the opposite. *See Viacom Int'l, Inc. v. YouTube, Inc.*, 2008 U.S. Dist. LEXIS 79777, *12-14 (N.D. Cal. 2008)

Pintrips puts the cart before the horse by objecting to subpoenas *that do not yet exist*. When Pinterest issues such subpoenas, the recipients may raise objections if they feel unduly burdened (which hopefully they will not). Pinterest is mindful of its obligation "to avoid imposing undue burden or expense on a person subject to the subpoena." *See* Fed. R. Civ. P. 45(d)(1). Pinterest does not appreciate Pintrips' assumption to the contrary, which is both unwarranted and unripe.

Moreover, Pintrips cannot object on behalf of any "potential investor" or "certain advisor" who may be served with a subpoena in the future. Simply put, Pintrips lacks standing. *See Chevron Corp. v. Donziger*, 2013 U.S. Dist. LEXIS 119622, 14 (N.D. Cal. Aug. 22, 2013)

The Honorable Kandis A. Westmore
July 28, 2014
Page 5

("A party does not have standing to quash a subpoena on the basis that the non-party recipient of the subpoena would be subjected to an undue burden when the non-party has failed to object.").[3]

    3.    <u>Other Discovery Has No Bearing on this Dispute</u>

Pinterest strongly disagrees with how Pintrips has characterized discovery in this matter. Pinterest will not offer its own characterization – which is available elsewhere (*see* D.N. 48-1) – simply because it has no bearing on the present dispute.

According to Pintrips, "Pinterest should have to pursue discovery first against Pintrips and the already-identified third parties" before pursuing discovery from "potential investors" and "certain advisors." It is not clear why Pinterest should "have to pursue discovery" in the order that Pintrips prefers. In any event, Pinterest has already pursued discovery from Pintrips and the third-parties identified by Pintrips. *See supra* at 2 and *infra* at 4 and Exh. A. Even adopting Pintrips' dubious reasoning, there is no reason to withhold the identities of the "potential investors" and "certain advisors" at this stage.

**Defendant Pintrips' Position**

This discovery dispute is yet another example of Pinterest using this lawsuit to bully Pintrips, using litigation and the discovery process to cripple Pintrips' business. Pinterest has misrepresented Pintrips' position, as expressed clearly during the June 17 meet and confer, and also has inappropriately disparaged Pintrips' discovery participation to date. Pintrips has provided amended interrogatory responses, and has produced thousands of pages of documents, including a rolling production of confidential documents on two different occasions, within days after the Court entered the protective order in this case. All Pintrips has from Pinterest is some inadequate amendments to clearly-deficient interrogatory responses, and general citations to URLs pointing to huge portions of the World Wide Web, but not a single page of documents.[4]

---

[3] Pinterest and Pintrips agree that Pinterest will issue subpoenas to the "potential investors" and "certain advisors." Pinterest and Pintrips apparently disagree about whether such subpoenas are necessarily a "fishing expedition" and a form of "harassment."

[4] Pinterest's explanation for not producing documents yet is that it was deliberately waiting for a period of time after Pintrips produced documents, based on the relative timing of service of discovery requests. Pintrips takes great exception to Pinterest's approach, because it ignores the

The Honorable Kandis A. Westmore
July 28, 2014
Page 6

Looking at Interrogatories 16 and 17, it appears that Pinterest is narrowing the scope of Interrogatory 16 to make it identical to that of Interrogatory 17, thereby making Interrogatory 17, or at least the dispute underlying that Interrogatory, redundant or identical.

During the in-person meet and confer, counsel for Pintrips stated that Pintrips was not disputing the relevance of the information sought, or the burdensomeness or oppressiveness of responding. Pinterest's statement otherwise, and reliance on cases such as the *Viacom* case which Pinterest cites, mischaracterize Pintrips' position, and renders the meet and confer process virtually meaningless by burdening the Court with non-existent issues. None of the case law that Pinterest cites, including the *Viacom* case, bears on the ultimate issue, which Pinterest clearly understands because Pintrips explained it.

At this stage of the litigation, there is nothing *per se* about Pintrips' communications with investors that makes a request for such communications more than a fishing expedition, designed to harass third parties on whom Pintrips relies for funding. Pinterest's tactic is designed to damage or destroy Pintrips' business by hassling the investors and causing them to pull the plug on Pintrips' funding. Irrespective of Pinterest's claimed intent, that will be the effect.

It is clear that Pinterest intends to harass those third parties. Before the in-person meet and confer, Pinterest issued subpoenas to two of Pintrips' consultants, whom Pintrips had identified, and from whom Pinterest could seek the same information it claims to be seeking from Pintrips' investors and advisors. Counsel for the parties discussed those subpoenas during the in-person meeting. Pinterest has also asked the Court to issue a Letter of Request, pursuant to the Hague Convention for the Taking of Evidence Abroad to depose one of Pintrips' consultants, currently resident in the UK.

During the meet and confer, Pinterest's counsel stated the intention to subpoena Pintrips' investors as well. Indeed, that would be the only way to get information from the investors. In its part of this letter, Pinterest stated, "The 'potential investors' and 'certain advisors' are uniquely situated to know relevant information that is not readily available from other sources. For example, they may be able to confirm that Pintrips deliberately chose a name which is similar to Pinterest with the intent of profiting from Pinterest's success." And, "Pintrips knows

---

timing of Pintrips' initial production, and also ignores the timing of entry of the protective order. Pinterest has deliberately delayed discovery in this case.

The Honorable Kandis A. Westmore
July 28, 2014
Page 7

that Pinterest requires this information to seek discoverable information from the identified individuals."

Clearly Pinterest is going to subpoena the investors. Therefore, the potential damage to Pintrips' business is imminent, and Pintrips' objection to these interrogatories is timely. To use Pinterest's metaphor, the horse already is hooked up to the cart.

Pintrip's objection is as follows. As a small startup, Pintrips has little to no revenue, and relies on investors for the necessary funds to continue to build its business. Involving investors in this litigation has the clear potential of alienating the investors, and cutting off Pintrips' funding. The effect on Pintrips' business would be more than burdensome and oppressive; it would be catastrophic. If Pintrips were even to ask the investors if they would object to being identified in discovery responses, Pintrips would run the risk of losing funding.

If Pinterest wants to take discovery from third parties to find out what, if anything Pintrips has said relating to this litigation, Pinterest has that opportunity, with individuals whom Pintrips already has identified, and whom Pinterest already has subpoenaed.

Pinterest's argument about Pintrips' standing to object to subpoenas to investors is a red herring. Pintrips is not objecting here to the issuance of the subpoenas. Pintrips is objecting to providing the requested information.

In its portion of this letter, Pinterest quoted a portion of Fed. R. Civ. P. 26(b)(1). The last sentence of that portion of the rule states, "All discovery is subject to the limitations imposed by Rule 26(b)(2)(C)." That rule states, in relevant part:

> On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>
> (i) the discovery sought is unreasonable cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> \*   \*   \*
>
> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at

The Honorable Kandis A. Westmore
July 28, 2014
Page 8

>stake in the action, and the importance of the discovery in resolving the action.

As this Court has stated:

>It is no longer sufficient, as a precondition for conducting discovery, to show that the information sought "appears reasonably calculated to lead to the discovery of admissible evidence." After satisfying this threshold requirement counsel also must make a common sense determination, taking into account all the circumstances, that the information sought is of sufficient potential significance to justify the burden the discovery probe would impose, that the discovery tool selected is the most efficacious of the means that might be used to acquire the desired information (taking into account cost effectiveness and the nature of the information being sought), and that the timing of the probe is sensible, i.e., that there is no other juncture in the pretrial period when there would be a clearly happier balance between the benefit derived from and the burdens imposed by the particular discovery effort.

*In re Convergent Technologies Securites Litigation*, 108 F.R.D. 328, 331 (N.D. Cal. 1985). See also Wright & Miller, *Federal Practice & Procedure*, § 2008.1 (3d ed. – database updated April 2014).

Viewed in light of Pinterest's failure to date to take corresponding discovery of Pintrips, or of other third parties whose identities Pintrips already has provided, going after Pintrips' investors first clearly is a harassment tactic, designed to ruin Pintrips' ability to continue in business, that this Court should not countenance. Pinterest should have to pursue discovery first against Pintrips and the already-identified third parties.

**Pinterest's Interrogatory No. 17**

The interrogatory reads: "Identify all communications between You and any third party which refer or relate to [this] action."

The response reads: "[M]embers of the press have interviewed [Pintrips CEO] Stephen Gotlieb on several occasions. In addition, Stephen Gotlieb discussed [this] litigation with potential investors and certain advisors on several occasions."

The dispute is whether Pintrips should identify by name and location, including employer, the "potential investors" and "certain advisors" referenced above (and anyone else with whom Pintrips has communicated about its trademark dispute with Pinterest).

The parties agree that, with Pinterest's narrowing of the scope of Interrogatory No. 16, the scope of the two interrogatories is effectively the same. Accordingly, the parties incorporate their above arguments by reference here.

**CONCLUSION**

The parties will be pleased to discuss this matter with the Court, and to provide any further briefing the Court may request.

Respectfully submitted,

/s/ *Donald A. Thompson*

Donald A. Thompson
Harvey Siskind LLP
Counsel for Pinterest, Inc.

/s/ *Frank L. Bernstein*

Frank L. Bernstein
Kenyon & Kenyon LLP
Counsel for Pintrips, Inc.

I, Donald A. Thompson, am the ECF user whose identification and password are being used to file this document. Pursuant to Civil Local Rule 5.1, I hereby attest that counsel for Defendant has concurred in this filing.

/s/ *Donald A. Thompson*

1  Frank L. Bernstein (SBN 189504)
   KENYON & KENYON LLP
2  1801 Page Mill Road, Suite 210
   Palo Alto, California 94304
3  Telephone: (650) 384-4700
   Facsimile: (650) 384-4701
4  Email: fbernstein@kenyon.com

5  *Attorney for Defendant*
   *and Counter-Plaintiff*
6  *Pintrips, Inc.*

RECEIVED APR 25 2014 BY:

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PINTEREST, INC., a Delaware corporation, | Case No. 3:13-cv-4608-RS |
| Plaintiff and Counter-Defendant, | **DEFENDANT PINTRIPS, INC.'S RESPONSES TO PLAINTIFF PINTEREST INC.'S FIRST SET OF INTERROGATORIES** |
| v. | |
| PINTRIPS, INC., a Delaware corporation, | |
| Defendant and Counter-Plaintiff. | **HIGHLY CONFIDENTIAL** |

RESPONDING PARTY:     Pintrips, Inc.

PROPOUNDING PARTY:    Pinterest, Inc.

SET NO.:              1

- 1 -

Pintrips objects to the phrase "any PIN-formative mark" to the extent that it is vague and ambiguous, overly broad, and/or unduly burdensome, particularly to the extent that it purports to include "any . . . designation that includes or consists of the letter string 'pin.'" Pintrips objects further to this Interrogatory to the extent that it includes goods or services as to which Pintrips has neither knowledge nor familiarity. Pintrips objects further to this Interrogatory to the extent that it seeks information that is not within Pintrips' possession, custody, or control.

Subject to and without waiving any of the foregoing objections, Pintrips responds that the scope and vagueness of this Interrogatory prohibit a meaningful response at this time. Pintrips is willing to meet and confer with Pinterest to attempt to define an appropriate scope and meaning for this Interrogatory. At minimum, Pintrips is able to state that it is unaware of any actual consumer confusion, or possible actual consumer confusion, including inquiry confusion, regarding the source of any goods or services that Pintrips offers.

**INTERROGATORY NO. 16:**

Identify all communications between You and any third party which refer or relate to Pinterest.

**OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 16:**

Pintrips fully incorporates its General Objections as if specifically set forth herein. Pintrips objects to the phrases "all communications" and "any third party" to the extent that they are vague and ambiguous, overly broad, and/or unduly burdensome. Pintrips objects further to this Interrogatory to the extent that it seeks information that is protected from disclosure by the attorney-client privilege and/or the attorney work-product doctrine, or is otherwise protected from disclosure by any other applicable privilege or immunity.

Subject to and without waiving any of the foregoing objections, Pintrips responds that members of the press have interviewed Stephen Gotlieb on several

occasions. In addition, Stephen Gotlieb discussed the above-captioned litigation with potential investors and certain advisors on several occasions.

**INTERROGATORY NO. 17:**

Identify all communications between You and any third party which refer or relate to the above-captioned action.

**OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 17:**

Pintrips fully incorporates its General Objections as if specifically set forth herein. Pintrips objects to the phrases "all communications" and "any third party" to the extent that they are vague and ambiguous, overly broad, and/or unduly burdensome. Pintrips objects further to this Interrogatory to the extent that it seeks information that is protected from disclosure by the attorney-client privilege and/or the attorney work-product doctrine, or is otherwise protected from disclosure by any other applicable privilege or immunity.

Subject to and without waiving any of the foregoing objections, Pintrips responds that members of the press have interviewed Stephen Gotlieb on several occasions. In addition, Stephen Gotlieb discussed the above-captioned litigation with potential investors and certain advisors on several occasions.

**INTERROGATORY NO. 18:**

State whether You conducted a trademark search prior to adopting the mark PINTRIPS, and if so, set forth in detail the scope and results of that search.

**OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 18:**

Pintrips fully incorporates its General Objections as if specifically set forth herein.

Subject to and without waiving any of the foregoing objections, Pintrips responds that Stephen Gotlieb searched the USPTO database for the terms "pintrip" and "pintrips" and the search results did not list any application or registration.