HARVEY ▪ SISKIND LLP

August 19, 2014                                                                                          Lawrence J. Siskind

**VIA ELECTRONIC CASE FILING**

The Honorable Kandis A. Westmore
United States Magistrate Judge
United States District Court
Courtroom 4 - 3rd Floor
1301 Clay Street
Oakland, CA 94612

      Re:    *Pinterest, Inc. v. Pintrips, Inc.*
              Case No. C 13-04608-RS-KAW

Your Honor:

      This letter concerns a disputed nomination under the protective order in this case. *See* Exh. A (Protective Order). Pursuant to Section 7.4(a)(1) of that Order, Pinterest has nominated its Deputy General Counsel, Anthony Falzone, as "Designated House Counsel" authorized to access Highly Confidential – Attorneys' Eyes Only (AEO) information. In its letter, Pinterest provided this description of Mr. Falzone:

> Mr. Falzone is a resident of San Francisco, California and Deputy General Counsel of Pinterest, Inc. His current and reasonably foreseeable future primary job duties and responsibilities involve advising Pinterest with respect to: litigation; intellectual property, employment, and immigration law; and the legal aspects of international expansion and user-facing content. Mr. Falzone is not involved in competitive decision making.

*See* Exh. B (Letter from D. Thompson to F. Bernstein dated July 9, 2014).

      Pursuant to Section 7.4(b) of that Order, Pintrips has objected to the nomination of Mr. Falzone. *See* Exh. C (Letter from F. Bernstein to D. Thompson dated July 19, 2014). Pintrips provided this basis for its objection:

> Pinterest itself disqualified Mr. Falzone by sending him as Pinterest's representative to the July 10, 2014 mediation session with Magistrate Corley.
>
> …

The Honorable Kandis A. Westmore
August 19, 2014
Page 2

By having unlimited authority to negotiate a settlement, Mr. Falzone clearly is a decision maker, and therefore cannot qualify as Designated House Counsel pursuant to Paragraph 7.3(b)(1) of the Stipulated Protective Order.

The parties attest that they have been unable to resolve this dispute, despite repeated attempts by email and by phone, as well as an in-person conference.

/Lawrence J. Siskind/                    /Frank L. Bernstein/
Harvey Siskind LLP                       Kenyon & Kenyon LLP
Counsel for Pinterest, Inc.              Counsel for Pintrips, Inc.

## PLAINTIFF PINTEREST'S POSITION

This marks the second time the parties have sought the assistance of this Court to resolve a discovery dispute related to the right to access AEO information.  By its May 22, 2014 Order, this Court agreed with Pinterest, over the opposition of Pintrips, that disclosing AEO information to Designated House Counsel is appropriate in this case. Accordingly, the only issue facing the Court now is whether Mr. Falzone qualifies for that position for Pinterest.

The Chief Magistrate Judge of this Court has recognized that the burden of showing that a party's in-house counsel should <u>not</u> have access to AEO documents falls upon the objecting party. *City Of Oakland v. SSA Terminals, LLC*, 2012 WL 1414075 (N.D.Cal. April 23, 2012) ("Defendants bear the burden of showing that Plaintiff's in-house counsel should not have access to the AEO documents."). Therefore, Pintrips bears the burden here of proving that there is something about Mr. Falzone – as an individual nominee -- that disqualifies him from serving as Designated House Counsel. To meet this burden, Pintrips must prove that Mr. Falzone, personally, is involved in or may become involved in "competitive decision-making." Exh. A § 7.4(a)(1).

To determine the nature of "competitive decision-making," the Ninth Circuit follows the criteria expounded in *U.S. Steel Corp. v. United States*, 730 F.2d 1465 (Fed.Cir. 1984):

The *U.S. Steel* court cautioned against arbitrary distinctions based on type of counsel employed, noting that in practice the risk of inadvertent disclosure of trade secrets obtains equally for both kinds of counsel. The *U.S. Steel* court concluded that, to evaluate the risk of inadvertent disclosure, a court should examine the factual circumstances of *any* counsel's relationship to the party demanding access. A crucial factor in the *U.S. Steel* case was whether in-house counsel was involved in "competitive

The Honorable Kandis A. Westmore
August 19, 2014
Page 3

decisionmaking"; that is, advising on decisions about pricing or design "made in light of similar or corresponding information about a competitor." *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir.).

Pintrips cannot meet this burden for the simple reason that Mr. Falzone is not involved in deciding how to compete with business rivals on pricing, design, or other business issues. As Deputy General Counsel, he reports to the Company's General Counsel, not to any business or operations managers. While he provides legal advice on a wide array of topics to many people in the company, his role is to assess legal risks and advise the company on how to avoid or minimize those legal risks, not on business strategy.

The sole basis for Pintrips' assertion that Mr. Falzone is a competitive decision-maker is his participation in the July 10 mediation session. Pintrips has noted that under the Court's Notice of Settlement and Settlement Conference Order, a person "with **unlimited** authority to negotiate a settlement" was required to attend for each party. (emphasis in original) Pintrips asserts that by having such authority, Mr. Falzone is a competitive decision-maker, and therefore disqualified.

This contention falls woefully short of satisfying Pintrips' burden.

First, there is no supporting precedent. No court has ever held that participation in a settlement conference constitutes "competitive decision-making," and thus disqualifies an in-house attorney from having access to AEO. By advancing this argument, Pintrips invites this Court to make new law.

The closest Pintrips comes to citing an authority for this novel contention is *Intel Corp. v. VIA Technologies, Inc.*, 198 F.R.D. 525 (N.D. Cal 2000). Even a cursory review of that decision shows that it lends absolutely no support to Pintrips' novel theory.

*Intel* was a patent infringement suit involving confidential chipset technology. An in-house attorney at Intel named Isabella Fu was denied access to AEO, not because of her settlement decision-making authority (it does not appear that she had any such authority), but because of her involvement in making patent licensing decisions. The Court noted that:

> Ms. Fu's involvement in licensing through litigation constitutes competitive decision making, because her advice and counsel necessarily affect licensing decisions. Ms. Fu testified that as Senior Counsel she is actively involved in negotiating the terms of licensing agreements as part of settling lawsuits. . . . In evaluating these agreements, Ms. Fu testified she evaluates

The Honorable Kandis A. Westmore
August 19, 2014
Page 4

> the strength of the patent, Intel's products implicated by the patent, and competitors' products implicated by the patent. Ms. Fu further also testified that licensing agreements reached as part of settlements directly affected Intel's competitiveness in the market . . .

In other words, the Court was concerned about Ms. Fu's patent licensing activity because it involved comparing competitive products to realize competitive advantages. Her settlement activity was incidental, and was not the basis for the Court's decision to disqualify her.

Moreover, unlike the trademark dispute between Pinterest and Pintrips, *Intel* was a dispute over confidential technology. The Court was understandably worried about the risk of plaintiff Intel accessing VIA's trade secrets:

> The risk of potential injury is increased here because VIA represents the only unlicensed competitor of Intel for chipsets, and Intel is already the dominant player in this highly competitive market. Intel's history of dominance in this market compels a heightened concern for protecting VIA's confidential information.
> ~
> Disclosure of trade secrets to Intel of VIA's competing products and VIA's marketing information, strategies, and customer related data could have dire consequences for VIA.

The dispute between Pinterest and Pintrips is over defendant's decision to adopt confusingly similar trademarks. Pintrips has nothing Pinterest wants. No technology. No trade secrets. No patents. The only thing Pinterest wants from Pintrips is for Pintrips to stop referring to itself and its website with marks that foster the false impression that PINTRIPS and its PIN button are affiliated with PINTEREST and its PIN IT button.[1]

---

[1] Other differences between Intel and the present dispute deserve brief mention. In *Intel*, Ms. Fu reported to Peter Detkin, an Intel Vice President who had previously been denied access to AEO in other Intel patent litigations. Mr. Falzone reports to Pinterest's General Counsel. In *Intel*, the Court found no need for Intel to rely on in-house counsel for supervision, since it was represented by Howrey, Simon, Arnold, & White, which, at the time, boasted of having the "largest intellectual practice in the world with more than 230 IP attorneys." Harvey Siskind LLP has 8 attorneys, and this is the first litigation it has handled for Pinterest. It has a strong need for the supervision of fully informed in-house counsel.

The Honorable Kandis A. Westmore
August 19, 2014
Page 5

The second reason Pintrips' novel contention that settlement authority constitutes competitive decision making should be rejected is that the very notion is impractical. It is customary for the same in-house attorney who supervises a litigation to also attend settlement conferences. After all, such a supervisor is in the best position to advance settlement proposals, and to assess and respond to proposals from the other side. If Pintrips' contention were accepted, then companies would have to bifurcate litigation supervision and litigation settlement responsibilities, resulting in clumsy and inefficient staffing arrangements.

The third reason for rejecting Pintrips' novel contention is that, if accepted, it would not only be inefficient, it would also inhibit settlement negotiations. Lacking intimate knowledge of the case, including the downside risks, the in-house attorney assigned to attend the settlement conference would be cautious and guarded, and therefore reluctant to make the kinds of concessions and swaps which are integral parts of the settlement process. Pintrips' position would conflict with the strong public policy favoring settlement.

Mr. Falzone is a highly regarded member of our profession, with a distinguished and unblemished record. Before joining Pinterest, he was a Lecturer at Stanford Law School, where he co-founded and served as Executive Director of the Fair Use Project of the Center for Internet and Society. He was a partner at Bingham McCutchen in San Francisco. He also clerked for the Honorable Barry T. Moskowitz of the Southern District of California. He has signed the Acknowledgement (Exh. D), and he can be trusted to comply with the terms of the Protective Order.

His nomination to serve as Designated House Counsel should be accepted.

## DEFENDANT PINTRIPS' POSITION

While there are hundreds of companies using the word "pin," or images of pins, or using the term "pinning," and the like,  Pinterest singled out Pintrips to pursue in litigation for the past year.  It cannot be coincidence that shortly after filing suit, Pinterest announced a plan to enter into the travel sector as a direct competitor of Pintrips.  As Pintrips will discuss in more detail below, the companies' direct competition in the travel sector means that Pinterest could use highly confidential information about Pintrips' business to competitive advantage.  Using Mr. Falzone – the ultimate decision maker for plaintiff in this matter - as the person able to view highly confidential information about Pintrips is a fundamental inequality that denies Pintrips due process in resolving these claims."

The issue here is not whether the basis of the suit is a trade secret claim or a trademark claim.  The issue is whether the information that Mr. Falzone wants to review constitutes trade

The Honorable Kandis A. Westmore
August 19, 2014
Page 6

secrets or other highly confidential information of Pintrips. Indeed, Pinterest's statement that "Pintrips has nothing Pinterest wants" is almost laughable in view of Pinterest's strident insistence on Mr. Falzone's access to Pintrips' highly confidential information. If Pinterest's statement is correct, there should be no dispute, because there should be no need for Mr. Falzone, or anyone else at Pinterest, to have the access Pinterest seeks. That there is a dispute must mean that Pintrips does indeed have something that Pinterest wants.

Once again, Pinterest is overreaching in discovery, omitting both relevant facts and applicable case law in an attempt to extricate itself from a predicament of its own making. Pintrips has offered several compromises to resolve this dispute, to avoid the parties coming back to the Court, but Pinterest refused.

It hardly could be clearer that Mr. Falzone is a competitive decision maker. The syllogism is simple:

1) Pinterest considers Pintrips a competitor, because among other things, Pinterest has accused Pintrips of unfair competition (DI-1, Complaint, Count Four), and is entering the travel sector, precisely where Pintrips operates.

2) Pinterest has presented Mr. Falzone as an individual solely empowered to resolve this litigation between competitors, without having to consult anyone at Pinterest.

3) Therefore, Mr. Falzone is a competitive decision maker, as a matter of law.

**Pinterest Has Misrepresented the Parties' Protective Order Dispute**

Pinterest has mischaracterized the initial Protective Order dispute leading to the Court's May 22, 2014 Order. Pintrips proposed bilateral access, by limited numbers of party representatives, to Highly Confidential information. Because Pintrips is much smaller than Pinterest, and does not have in-house counsel, much less a Deputy General Counsel, Pintrips' proposal involved access by a Pintrips individual to AEO information. Pinterest refused, took the issue to the Court, and the Court decided in favor of Pinterest.

Thus, it fell to Pinterest to nominate an appropriate individual as Designated House Counsel. Pinterest proposed Mr. Falzone. Mr. Falzone is wholly inappropriate because Mr. Falzone is a competitive decision maker.

Pinterest has known for a long time that Pintrips objects to Mr. Falzone as a Designated House Counsel. Because Pinterest is so insistent on Mr. Falzone, Pintrips offered to go back to

The Honorable Kandis A. Westmore
August 19, 2014
Page 7

its original proposal of bilateral access, a compromise which would have allowed Pinterest the access it wanted for Mr. Falzone, and would have avoided burdening the Court with this dispute again. Pinterest refused, and so here we are.

## Pinterest Has Omitted Critical, Material Facts Regarding This Dispute

In presenting its position, Pinterest has highlighted Mr. Falzone's reporting path. Pinterest failed to tell the Court that Mr. Falzone does not have to report to anyone in order to settle this case. Paragraph 2 of Judge Corley's Notice of Settlement and Settlement Conference Order (DI-44) states, in relevant part, "Any party who is not a natural person shall be represented by the person(s) with **unlimited** authority to negotiate a settlement … A person who needs to call another person not present before agreeing to any settlement does not have full authority." (emphasis in the Notice)

At the July 10 Settlement Conference before Judge Corley, Mr. Falzone appeared as the sole in-house Pinterest representative. He appeared as a businessperson, not as a lawyer. Clearly Mr. Falzone had unlimited authority to discuss anything he saw fit to discuss with Pinterest's competitor, Pintrips, in order to settle the case, and did not have to call anyone else. Moreover, Mr. Falzone displayed significant knowledge of the product and competitive landscape, and about the business in general, supporting Pintrips' contention that Mr. Falzone is indeed a competitive decision maker. Settlement discussions could have gone anywhere, from licensing to acquisition to some other kind of business arrangement, and Mr. Falzone would not have had to get permission from anyone above him in his reporting path before agreeing to terms.

Pinterest attempts to wave off Mr. Falzone's competitive decision making by referring to his participation in the July 10 "mediation session" as Pintrips' "sole basis" for contending that Mr. Falzone is a competitive decision maker. Judge Corley's parameters for the settlement session that the parties attended clearly make Mr. Falzone, who attended as sole in-house Pinterest representative in compliance with Judge Corley's order, a competitive decision maker. Mr. Falzone's other licensing activity is merely icing on the cake.

Mr. Falzone's situation is even more extreme than the situation in *Intel Corp. v VIA Technologies, Inc.*, which Pintrips now will discuss.

## Pinterest Has Mischaracterized Caselaw, From This Circuit and This District, That Is Directly on Point Regarding This Dispute

In *Intel Corp. v. VIA Technologies, Inc.*, 198 F.R.D. 525 (N.D. Cal 2000), the court held that the activities of an in-house attorney at Intel, Isabella Fu, involved in licensing through

The Honorable Kandis A. Westmore
August 19, 2014
Page 8

litigation settlements, constituted competitive decision making because her advice and counsel necessarily affected licensing decisions as she was actively involved in negotiating terms of licensing agreements to settle lawsuits. *Intel*, 198 F.R.D. at 530 (emphasis added). Further, in the *Intel* case, the in-house attorney was once-removed from the ultimate decisionmaker, Peter Detkin, a vice-president at Intel, who had already been denied access. Thus, even though the Intel in-house counsel was not the final decision maker, her proximity and working relationship to the Intel vice-president was still enough to deem her a competitive decision maker in her own right.

Contrary to Pinterest's contention, the current situation is more egregious than the *Intel* situation, because Pinterest made clear at the settlement conference that Mr. Falzone himself had full decision making power with respect to settling the litigation with its perceived competitor, Pintrips. Irrespective of whether Mr. Falzone reports to anyone in his current capacity, he does not have to report to anyone in order to settle this litigation. Thus, Mr. Falzone's position is much closer to Mr. Detkin's than to Ms. Fu's. Mr. Detkin and Ms. Fu were refused access to AEO information; the same should hold for Mr. Falzone. Indeed, Pintrips wants to put Mr. Falzone in a position to negotiate a litigation settlement agreement while having complete access to all of Pintrips information and data, while the executives of Pintrips would have no such information of Pinterest. This fundamental problem was recognized in *Intel*, which led to a prohibition on access by Mr. Detkin and Ms. Fu.

Pinterest's statement that "the Court [in the *Intel* case] was concerned about Ms. Fu's patent licensing activity because it involved comparing competitive products to realize competitive advantages" is on all fours with the situation here. Pintrips is in the travel business, and has trade secrets about its travel business. Pinterest wants access to those trade secrets. The companies' products and prospective products are aligned. The risk of competitive harm could not be more clear.

Pinterest's statement that, in the *Intel* case, Ms. Fu's "settlement activity was incidental, and was not the basis for the Court's decision to disqualify her" is not properly discernible from the *Intel* Court's discussion. The *Intel* court found, "The potential injury from inadvertent disclosure of VIA trade secrets in this case would be great, because the information could be used to duplicate VIA products, compete for its customers, or interfere with its business plan and thereby gain a competitive advantage in the marketplace." 198 F.R.D. at 531. That is exactly the risk here.

The *Intel* court also found, "Intel and VIA are direct competitors, and confidential information about products that compete against each other in the market will be involved in this litigation. Some courts have found an increased risk of harm when information is being disclosed

The Honorable Kandis A. Westmore
August 19, 2014
Page 9

to a direct competitor. *See American Standard, Inc. v. Pfizer, Inc.,* 828 F.2d 734, 741 (Fed. Cir. 1987). Disclosure of trade secrets to Intel of VIA's competing products and VIA's marketing information, strategies, and customer related data could have dire consequences for VIA." *Id.* The similarities between the situation in *Intel* and the situation here could not be more striking.

Pinterest's discussion of *Brown Bag Software v. Symantec Corp*., 960 F.2d 1465, 1470 (9th Cir.), *cert. denied*, 113 S.Ct.198 (1992), is incomplete, and mischaracterizes the basis for the Court's holding in that case. In that case, Brown Bag's in-house counsel sought access to Symantec's confidential information, including "source codes, developmental plans, and beta tester information (all of which Symantec produced to Brown Bag's retained outside counsel under protective stipulation)" which the parties had agreed constituted protectable trade secrets under Fed. R. Civ. P. 26(c). *Id.*

> In reviewing the district court's protective order, the Ninth Circuit explained:

> > Thus, proper review of protective orders in cases such as this requires the district court to examine factually all the risks and safeguards surrounding inadvertent disclosure by *any* counsel, whether in-house or retained. Further, the nature of the claims and of a party's opportunity to develop its case through alternative discovery procedures factors into decisions on the propriety of such protective orders. *Id.*

Pursuant to the Federal Circuit holding in *U.S. Steel Corp. v. United States*, 730 F.2d 1465 (Fed. Cir. 1984), the district court in *Brown Bag* inquired into the in-house attorney's responsibilities, and "Brown Bag's counsel agreed that he was responsible for advising his employer on a gamut of legal issues, including contracts, marketing, and employment." *Id.* at 1471.

In affirming the district court, in *Brown Bag* the Ninth Circuit concluded that "[k]nowledge of Symantec's trade secrets would place in-house counsel in the 'untenable position' of having to refuse his employer legal advice on a host of contract, employment, and competitive marketing decisions lest he improperly or indirectly reveal Symantec's trade secrets." *Brown Bag*, *supra*, 960 F.2d at 1470. Therefore, the court concluded, Brown Bag's in-house counsel was involved in the type of competitive decisionmaking that counsels against disclosure under *U.S. Steel*.

Similarly, Pinterest represents that Mr. Falzone is involved in "litigation, intellectual property, employment, and immigration law; and the legal aspects of international expansion and user-facing content." Exh. B. Thus, like the in-house counsel in *Brown Bag*, Mr. Falzone's

The Honorable Kandis A. Westmore
August 19, 2014
Page 10

access to Pintrips' highly confidential information, coupled with his extensive involvement in a variety of Pinterest's interests, including settlement of this litigation with a company Pinterest perceives to be a competitor, would put Mr. Falzone in an untenable position with respect to his duties at Pinterest and would risk improper or indirect disclosure of Pintrips' highly confidential information.

Pinterest claims that Mr. Falzone is not a competitive decision maker because he "is not involved in deciding how to compete with business rivals on pricing, design, or other business issues". Settlement of litigation with a competitor clearly is a business issue, and for reasons Pintrips stated earlier, Mr. Falzone's control over this settlement makes him a competitive decision maker. To the extent that Pinterest is trying to say that competitive decision making somehow is limited to pricing and design, the Federal Circuit has held otherwise. In *In re Deutsche Bank Trust CompanyAmericas*, 605 F.3d 1373 (Fed. Cir. 2010), the Court stated that pricing and product design were listed in *U.S. Steel* as specific exemplars of activity involving competitive decision making, but that these were only examples. 605 F.3d at 1379.

Therefore, Pintrips submits that Mr. Falzone's nomination as Designated House Counsel should be denied.

Pintrips would welcome the opportunity to discuss this in person with the Court.

<u>**CONCLUSION**</u>

The parties will be pleased to discuss this matter with the Court, and to provide any further briefing the Court may request.

Respectfully submitted,

*/s/ Lawrence J. Siskind*

Lawrence J. Siskind
Harvey Siskind LLP
Counsel for Pinterest, Inc.

/s/ *Frank L. Bernstein*

Frank L. Bernstein
Kenyon & Kenyon LLP
Counsel for Pintrips, Inc.

The Honorable Kandis A. Westmore
August 19, 2014
Page 11

 I, Lawrence J. Siskind, am the ECF user whose identification and password are being used to file this document. Pursuant to Civil Local Rule 5.1, I hereby attest that counsel for Defendant has concurred in this filing.

        */s/ Lawrence J. Siskind*
        _____

# Exhibit A

HARVEY SISKIND LLP
LAWRENCE J. SISKIND (SBN 85628)
Email: siskind@harveysiskind.com
DONALD A. THOMPSON (SBN 260076)
Email: dthompson@harveysiskind.com
Four Embarcadero Center, 39th Floor
San Francisco, California 94111
Telephone: (415) 354-0100
Facsimile: (415) 391-7124

*Attorneys for Plaintiff-Counterdefendant*
*PINTEREST, INC.*

KENYON & KENYON LLP
Frank L. Bernstein (SBN 189504)
Email: fbernstein@kenyon.com
1801 Page Mill Road, Suite 210
Palo Alto, California 94304
Telephone: (650) 384-4700
Facsimile: (650) 384-4701

*Attorney for Defendant-Counterplaintiff*
*PINTRIPS, INC.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PINTEREST, INC.,<br>a Delaware Corporation,<br><br>          Plaintiff,<br><br>     v.<br><br>PINTRIPS, INC.,<br>a Delaware corporation,<br><br>          Defendant. | Case No. CV 13-04608-RS-KAW<br><br>[PROPOSED] PROTECTIVE ORDER FOR LITIGATION INVOLVING PATENTS, HIGHLY SENSITIVE CONFIDENTIAL INFORMATION AND/OR TRADE SECRETS |

Pinterest, Inc. and Pintrips, Inc. submit this proposed protective order for litigation involving patents, highly sensitive confidential information and/or trade secrets pursuant to the order of the Court dated May 22, 2014.  (DN 47.)

1.    PURPOSES AND LIMITATIONS

Disclosure and discovery activity in this action are likely to involve production of confidential, proprietary, or private information for which special protection from public disclosure and from use for any purpose other than prosecuting this litigation may be warranted. Accordingly, the parties hereby stipulate to and petition the court to enter the following Stipulated Protective Order. The parties acknowledge that this Order does not confer blanket protections on all disclosures or responses to discovery and that the protection it affords from public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under the applicable legal principles. The parties further acknowledge, as set forth in Section 12.4, below, that this Stipulated Protective Order does not entitle them to file confidential information under seal; Civil Local Rule 79-5 sets forth the procedures that must be followed and the standards that will be applied when a party seeks permission from the court to file material under seal.

2.    DEFINITIONS

2.1    Challenging Party: a Party or Non-Party that challenges the designation of information or items under this Order.

2.2    "CONFIDENTIAL" Information or Items: information (regardless of how it is generated, stored or maintained) or tangible things that qualify for protection under Federal Rule of Civil Procedure 26(c).

2.3    Counsel (without qualifier): Outside Counsel of Record and House Counsel (as well as their support staff).

2.4    Designated House Counsel: House Counsel who seek access to "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" information in this matter.

2.5   Designating Party: a Party or Non-Party that designates information or items that it produces in disclosures or in responses to discovery as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY".

2.6   Disclosure or Discovery Material: all items or information, regardless of the medium or manner in which it is generated, stored, or maintained (including, among other things, testimony, transcripts, and tangible things), that are produced or generated in disclosures or responses to discovery in this matter.

2.7   Expert: a person with specialized knowledge or experience in a matter pertinent to the litigation who (1) has been retained by a Party or its counsel to serve as an expert witness or as a consultant in this action, (2) is not a past or current employee of a Party or of a Party's competitor, and (3) at the time of retention, is not anticipated to become an employee of a Party or of a Party's competitor.

2.8   "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" Information or Items: extremely sensitive "Confidential Information or Items," disclosure of which to another Party or Non-Party would create a substantial risk of serious harm that could not be avoided by less restrictive means.

2.09   House Counsel: attorneys who are employees of a party to this action. House Counsel does not include Outside Counsel of Record or any other outside counsel.

2.10   Non-Party: any natural person, partnership, corporation, association, or other legal entity not named as a Party to this action.

2.11   Outside Counsel of Record: attorneys who are not employees of a party to this action but are retained to represent or advise a party to this action and have appeared in this action on behalf of that party or are affiliated with a law firm which has appeared on behalf of that party.

2.12   Party: any party to this action, including all of its officers, directors, employees, consultants, retained experts, and Outside Counsel of Record (and their support staffs).

2.13   Producing Party: a Party or Non-Party that produces Disclosure or Discovery Material in this action.

2.14   Professional Vendors: persons or entities that provide litigation support services (e.g., photocopying, videotaping, translating, preparing exhibits or demonstrations, and organizing, storing, or retrieving data in any form or medium) and their employees and subcontractors.

2.15   Protected Material: any Disclosure or Discovery Material that is designated as "CONFIDENTIAL," or as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY."

2.16   Receiving Party: a Party that receives Disclosure or Discovery Material from a Producing Party.

3.   SCOPE

The protections conferred by this Stipulation and Order cover not only Protected Material (as defined above), but also (1) any information copied or extracted from Protected Material; (2) all copies, excerpts, summaries, or compilations of Protected Material; and (3) any testimony, conversations, or presentations by Parties or their Counsel that might reveal Protected Material. However, the protections conferred by this Stipulation and Order do not cover the following information: (a) any information that is in the public domain at the time of disclosure to a Receiving Party or becomes part of the public domain after its disclosure to a Receiving Party as a result of publication not involving a violation of this Order, including becoming part of the public record through trial or otherwise; and (b) any information known to the Receiving Party prior to the disclosure or obtained by the Receiving Party after the disclosure from a source who obtained the information lawfully and under no obligation of confidentiality to the Designating

Party. Any use of Protected Material at trial shall be governed by a separate agreement or order.

4.    DURATION

Even after final disposition of this litigation, the confidentiality obligations imposed by this Order shall remain in effect until a Designating Party agrees otherwise in writing or a court order otherwise directs. Final disposition shall be deemed to be the later of (1) dismissal of all claims and defenses in this action, with or without prejudice; and (2) final judgment herein after the completion and exhaustion of all appeals, rehearings, remands, trials, or reviews of this action, including the time limits for filing any motions or applications for extension of time pursuant to applicable law.

5.    DESIGNATING PROTECTED MATERIAL

5.1   Exercise of Restraint and Care in Designating Material for Protection. Each Party or Non-Party that designates information or items for protection under this Order must take care to limit any such designation to specific material that qualifies under the appropriate standards. To the extent it is practical to do so, the Designating Party must designate for protection only those parts of material, documents, items, or oral or written communications that qualify – so that other portions of the material, documents, items, or communications for which protection is not warranted are not swept unjustifiably within the ambit of this Order.

Mass, indiscriminate, or routinized designations are prohibited. Designations that are shown to be clearly unjustified or that have been made for an improper purpose (e.g., to unnecessarily encumber or retard the case development process or to impose unnecessary expenses and burdens on other parties) expose the Designating Party to sanctions.

If it comes to a Designating Party's attention that information or items that it designated for protection do not qualify for protection at all or do not qualify for the

level of protection initially asserted, that Designating Party must promptly notify all other parties that it is withdrawing the mistaken designation.

  5.2 <u>Manner and Timing of Designations</u>. Except as otherwise provided in this Order (see, e.g., second paragraph of section 5.2(a) below), or as otherwise stipulated or ordered, Disclosure or Discovery Material that qualifies for protection under this Order must be clearly so designated before the material is disclosed or produced.

  Designation in conformity with this Order requires:

   (a) <u>for information in documentary form</u> (e.g., paper or electronic documents, but excluding transcripts of depositions or other pretrial or trial proceedings), that the Producing Party affix the legend "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" to each page that contains protected material. If only a portion or portions of the material on a page qualifies for protection, the Producing Party also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins) and must specify, for each portion, the level of protection being asserted.

  A Party or Non-Party that makes original documents or materials available for inspection need not designate them for protection until after the inspecting Party has indicated which material it would like copied and produced. During the inspection and before the designation, all of the material made available for inspection shall be deemed "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY." After the inspecting Party has identified the documents it wants copied and produced, the Producing Party must determine which documents, or portions thereof, qualify for protection under this Order. Then, before producing the specified documents, the Producing Party must affix the appropriate legend ("CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY") to each page that contains Protected Material. If only a portion or portions of the material on a page qualifies for protection, the Producing Party also must clearly identify the protected

1  portion(s) (e.g., by making appropriate markings in the margins) and must specify,

2  for each portion, the level of protection being asserted.

3  (b) for testimony given in deposition or in other pretrial or trial

4  proceedings, that the Designating Party identify on the record, before the close of the

5  deposition, hearing, or other proceeding, all protected testimony and specify the level

6  of protection being asserted. When it is impractical to identify separately each

7  portion of testimony that is entitled to protection and it appears that substantial

8  portions of the testimony may qualify for protection, the Designating Party may

9  invoke on the record (before the deposition, hearing, or other proceeding is

10  concluded) a right to have up to 21 days to identify the specific portions of the

11  testimony as to which protection is sought and to specify the level of protection

12  being asserted. Only those portions of the testimony that are appropriately designated

13  for protection within the 21 days shall be covered by the provisions of this Stipulated

14  Protective Order. Alternatively, a Designating Party may specify, at the deposition or

15  up to 21 days afterwards if that period is properly invoked, that the entire transcript

16  shall be treated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL –

17  ATTORNEYS' EYES ONLY."

18  Parties shall give the other parties notice if they reasonably expect a

19  deposition, hearing or other proceeding to include Protected Material so that the

20  other parties can ensure that only authorized individuals who have signed the

21  "Acknowledgment and Agreement to Be Bound" (Exhibit A) are present at those

22  proceedings. The use of a document as an exhibit at a deposition shall not in any way

23  affect its designation as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL –

24  ATTORNEYS' EYES ONLY."

25  Transcripts containing Protected Material shall have an obvious legend on the

26  title page that the transcript contains Protected Material, and the title page shall be

27  followed by a list of all pages (including line numbers as appropriate) that have been

28  designated as Protected Material and the level of protection being asserted by the

Designating Party. The Designating Party shall inform the court reporter of these requirements. Any transcript that is prepared before the expiration of a 21-day period for designation shall be treated during that period as if it had been designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" in its entirety unless otherwise agreed. After the expiration of that period, the transcript shall be treated only as actually designated.

(c) <u>for information produced in some form other than documentary and for any other tangible items</u>, that the Producing Party affix in a prominent place on the exterior of the container or containers in which the information or item is stored the legend "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY". If only a portion or portions of the information or item warrant protection, the Producing Party, to the extent practicable, shall identify the protected portion(s) and specify the level of protection being asserted.

5.3    <u>Inadvertent Failures to Designate</u>. If timely corrected, an inadvertent failure to designate qualified information or items does not, standing alone, waive the Designating Party's right to secure protection under this Order for such material. Upon timely correction of a designation, the Receiving Party must make reasonable efforts to assure that the material is treated in accordance with the provisions of this Order.

6.    <u>CHALLENGING CONFIDENTIALITY DESIGNATIONS</u>

6.1    <u>Timing of Challenges</u>. Any Party or Non-Party may challenge a designation of confidentiality at any time. Unless a prompt challenge to a Designating Party's confidentiality designation is necessary to avoid foreseeable, substantial unfairness, unnecessary economic burdens, or a significant disruption or delay of the litigation, a Party does not waive its right to challenge a confidentiality designation by electing not to mount a challenge promptly after the original designation is disclosed.

6.2     Meet and Confer. The Challenging Party shall initiate the dispute resolution process by providing written notice of each designation it is challenging and describing the basis for each challenge. To avoid ambiguity as to whether a challenge has been made, the written notice must recite that the challenge to confidentiality is being made in accordance with this specific paragraph of the Protective Order. The parties shall attempt to resolve each challenge in good faith and must begin the process by conferring directly (in voice to voice dialogue; other forms of communication are not sufficient) within 14 days of the date of service of notice. In conferring, the Challenging Party must explain the basis for its belief that the confidentiality designation was not proper and must give the Designating Party an opportunity to review the designated material, to reconsider the circumstances, and, if no change in designation is offered, to explain the basis for the chosen designation. A Challenging Party may proceed to the next stage of the challenge process only if it has engaged in this meet and confer process first or establishes that the Designating Party is unwilling to participate in the meet and confer process in a timely manner.

6.3     Judicial Intervention. If the Parties cannot resolve a challenge without court intervention, the Designating Party shall file and serve a motion to retain confidentiality under Civil Local Rule 7 (and in compliance with Civil Local Rule 79-5, if applicable) within 21 days of the initial notice of challenge or within 14 days of the parties agreeing that the meet and confer process will not resolve their dispute, whichever is earlier. Each such motion must be accompanied by a competent declaration affirming that the movant has complied with the meet and confer requirements imposed in the preceding paragraph. Failure by the Designating Party to make such a motion including the required declaration within 21 days (or 14 days, if applicable) shall automatically waive the confidentiality designation for each challenged designation. In addition, the Challenging Party may file a motion challenging a confidentiality designation at any time if there is good cause for doing

so, including a challenge to the designation of a deposition transcript or any portions thereof. Any motion brought pursuant to this provision must be accompanied by a competent declaration affirming that the movant has complied with the meet and confer requirements imposed by the preceding paragraph.

The burden of persuasion in any such challenge proceeding shall be on the Designating Party. Frivolous challenges and those made for an improper purpose (e.g., to harass or impose unnecessary expenses and burdens on other parties) may expose the Challenging Party to sanctions. Unless the Designating Party has waived the confidentiality designation by failing to file a motion to retain confidentiality as described above, all parties shall continue to afford the material in question the level of protection to which it is entitled under the Producing Party's designation until the court rules on the challenge.

7.    ACCESS TO AND USE OF PROTECTED MATERIAL

7.1    Basic Principles. A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in connection with this case only for prosecuting, defending, or attempting to settle this litigation. Such Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order. When the litigation has been terminated, a Receiving Party must comply with the provisions of section 15 below (FINAL DISPOSITION).

Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner[1] that ensures that access is limited to the persons authorized under this Order.

7.2    Disclosure of "CONFIDENTIAL" Information or Items. Unless otherwise ordered by the court or permitted in writing by the Designating Party, a

---

[1] It may be appropriate under certain circumstances to require the Receiving Party to store any electronic Protected Material in password-protected form.

Receiving Party may disclose any information or item designated "CONFIDENTIAL" only to:

(a) the Receiving Party's Outside Counsel of Record in this action, as well as employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the information for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A;

(b) the officers, directors, and employees (including House Counsel) of the Receiving Party to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(c) Experts (as defined in this Order) of the Receiving Party to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(d) the court and its personnel;

(e) court reporters and their staff, professional jury or trial consultants, and Professional Vendors to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(f) during their depositions, witnesses in the action to whom disclosure is reasonably necessary and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), unless otherwise agreed by the Designating Party or ordered by the court. Pages of transcribed deposition testimony or exhibits to depositions that reveal Protected Material must be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Stipulated Protective Order.

(g) the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information.

7.3    Disclosure of "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" Information or Items. Unless otherwise ordered by the court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" only to:

(a) the Receiving Party's Outside Counsel of Record in this action, as well as employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the information for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A;

(b) One Designated House Counsel of the Receiving Party (1) who has no involvement in competitive decision-making, (2) to whom disclosure is reasonably necessary for this litigation, (3) who has signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), and (4) as to whom the procedures set forth in paragraph 7.4(a)(1), below, have been followed. If either party successfully nominates a Designated House Counsel following those procedures, the parties will meet and confer about how information designated 'HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY' may be transmitted to and stored by such Designated House Counsel.   Until the parties agree on, or the Court orders, how such information may be transmitted to and stored by such Designated House Counsel, such Designated House Counsel may access such information only at the offices of Outside Counsel of Record for the Receiving Party;

(c) Experts of the Receiving Party (1) to whom disclosure is reasonably necessary for this litigation, (2) who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), and (3) as to whom the procedures set forth in paragraph 7.4(a)(2), below, have been followed;

(d) the court and its personnel;

(e) court reporters and their staff, professional jury or trial consultants, and Professional Vendors to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A); and

(f) the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information.

7.4 <u>Procedures for Approving or Objecting to Disclosure of "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" Information or Items to Designated House Counsel or Experts.</u>

(a)(1) Unless otherwise ordered by the court or agreed to in writing by the Designating Party, a Party that seeks to disclose to Designated House Counsel any information or item that has been designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" pursuant to paragraph 7.3(b) first must make a written request to the Designating Party that (1) sets forth the full name of the Designated House Counsel and the city and state of his or her residence, and (2) describes the Designated House Counsel's current and reasonably foreseeable future primary job duties and responsibilities in sufficient detail to determine if House Counsel is involved, or may become involved, in any competitive decision-making. Any Designated House Counsel who receives "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" information pursuant to this Order shall disclose any relevant changes in job duties or responsibilities prior to final disposition of the litigation to allow the Designating Party to evaluate any later-arising competitive decision-making responsibilities.

(a)(2) Unless otherwise ordered by the court or agreed to in writing by the Designating Party, a Party that seeks to disclose to an Expert (as defined in this Order) any information or item that has been designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" pursuant to paragraph 7.3(c) first must make a written request to the Designating Party that (1) identifies the

general categories of "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" information that the Receiving Party seeks permission to disclose to the Expert, (2) sets forth the full name of the Expert and the city and state of his or her primary residence, (3) attaches a copy of the Expert's current resume, (4) identifies the Expert's current employer(s), (5) identifies each person or entity from whom the Expert has received compensation or funding for work in his or her areas of expertise or to whom the expert has provided professional services, including in connection with a litigation, at any time during the preceding five years,[2] and (6) identifies (by name and number of the case, filing date, and location of court) any litigation in connection with which the Expert has offered expert testimony, including through a declaration, report, or testimony at a deposition or trial, during the preceding five years.[3]

(b) A Party that makes a request and provides the information specified in the preceding respective paragraphs may disclose the subject Protected Material to the identified Designated House Counsel or Expert unless, within 14 days of delivering the request, the Party receives a written objection from the Designating Party. Any such objection must set forth in detail the grounds on which it is based.

(c) A Party that receives a timely written objection must meet and confer with the Designating Party (through direct voice to voice dialogue) to try to resolve the matter by agreement within seven days of the written objection. If no agreement is reached, the Party seeking to make the disclosure to Designated House Counsel or the Expert may file a motion as provided in Civil Local Rule 7 (and in compliance with Civil Local Rule 79-5, if applicable) seeking permission from the court to do so. Any such motion must describe the circumstances with specificity, set

---

[2] If the Expert believes any of this information is subject to a confidentiality obligation to a third-party, then the Expert should provide whatever information the Expert believes can be disclosed without violating any confidentiality agreements, and the Party seeking to disclose to the Expert shall be available to meet and confer with the Designating Party regarding any such engagement.

[3] It may be appropriate in certain circumstances to restrict the Expert from undertaking certain limited work prior to the termination of the litigation that could foreseeably result in an improper use of the Designating Party's "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" information.

forth in detail the reasons why the disclosure to Designated House Counsel or the Expert is reasonably necessary, assess the risk of harm that the disclosure would entail, and suggest any additional means that could be used to reduce that risk. In addition, any such motion must be accompanied by a competent declaration describing the parties' efforts to resolve the matter by agreement (i.e., the extent and the content of the meet and confer discussions) and setting forth the reasons advanced by the Designating Party for its refusal to approve the disclosure.

In any such proceeding, the Party opposing disclosure to Designated House Counsel or the Expert shall bear the burden of proving that the risk of harm that the disclosure would entail (under the safeguards proposed) outweighs the Receiving Party's need to disclose the Protected Material to its Designated House Counsel or Expert.

8.    <u>PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION</u>

If a Party is served with a subpoena or a court order issued in other litigation that compels disclosure of any information or items designated in this action as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" that Party must:

(a) promptly notify in writing the Designating Party. Such notification shall include a copy of the subpoena or court order;

(b) promptly notify in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this Protective Order. Such notification shall include a copy of this Stipulated Protective Order; and

(c) co-operate with respect to all reasonable procedures sought to be pursued by the Designating Party whose Protected Material may be affected.[4]

_____

[4] The purpose of imposing these duties is to alert the interested parties to the existence of this Protective Order and to afford the Designating Party in this case an opportunity to try to protect its confidentiality interests in the court from which the subpoena or order issued.

If the Designating Party timely seeks a protective order, the Party served with the subpoena or court order shall not produce any information designated in this action as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" before a determination by the court from which the subpoena or order issued, unless the Party has obtained the Designating Party's permission. The Designating Party shall bear the burden and expense of seeking protection in that court of its confidential material – and nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this action to disobey a lawful directive from another court.

9.     A NON-PARTY'S PROTECTED MATERIAL SOUGHT TO BE PRODUCED IN THIS LITIGATION

(a)     The terms of this Order are applicable to information produced by a Non-Party in this action and designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY". Such information produced by Non-Parties in connection with this litigation is protected by the remedies and relief provided by this Order. Nothing in these provisions should be construed as prohibiting a Non-Party from seeking additional protections.

(b)     In the event that a Party is required, by a valid discovery request, to produce a Non-Party's confidential information in its possession, and the Party is subject to an agreement with the Non-Party not to produce the Non-Party's confidential information, then the Party shall:

1. promptly notify in writing the Requesting Party and the Non-Party that some or all of the information requested is subject to a confidentiality agreement with a Non-Party;

2. promptly provide the Non-Party with a copy of the Stipulated Protective Order in this litigation, the relevant discovery request(s), and a reasonably specific description of the information requested; and

3. make the information requested available for inspection by the Non-Party.

(c)     If the Non-Party fails to object or seek a protective order from this court within 14 days of receiving the notice and accompanying information, the Receiving Party may produce the Non-Party's confidential information responsive to the discovery request. If the Non-Party timely seeks a protective order, the Receiving Party shall not produce any information in its possession or control that is subject to the confidentiality agreement with the Non-Party before a determination by the court.[5] Absent a court order to the contrary, the Non-Party shall bear the burden and expense of seeking protection in this court of its Protected Material.

10.     UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL

If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material to any person or in any circumstance not authorized under this Stipulated Protective Order, the Receiving Party must immediately (a) notify in writing the Designating Party of the unauthorized disclosures, (b) use its best efforts to retrieve all unauthorized copies of the Protected Material, (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order, and (d) request such person or persons to execute the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A.

11.     INADVERTENT PRODUCTION OF PRIVILEGED OR OTHERWISE PROTECTED MATERIAL

When a Producing Party gives notice to Receiving Parties that certain inadvertently produced material is subject to a claim of privilege or other protection, the obligations of the Receiving Parties are those set forth in Federal Rule of Civil Procedure 26(b)(5)(B). This provision is not intended to modify whatever procedure may be established in an e-discovery order that provides for production without prior

---

[5] The purpose of this provision is to alert the interested parties to the existence of confidentiality rights of a Non-Party and to afford the Non-Party an opportunity to protect its confidentiality interests in this court.

privilege review. Pursuant to Federal Rule of Evidence 502(d) and (e), insofar as the parties reach an agreement on the effect of disclosure of a communication or information covered by the attorney-client privilege or work product protection, the parties may incorporate their agreement in the stipulated protective order submitted to the court.

12.    MISCELLANEOUS

12.1    Right to Further Relief. Nothing in this Order abridges the right of any person to seek its modification by the court in the future.

12.2    Right to Assert Other Objections. By stipulating to the entry of this Protective Order no Party waives any right it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in this Stipulated Protective Order. Similarly, no Party waives any right to object on any ground to use in evidence of any of the material covered by this Protective Order.

12.3    Export Control. Disclosure of Protected Material shall be subject to all applicable laws and regulations relating to the export of technical data contained in such Protected Material, including the release of such technical data to foreign persons or nationals in the United States or elsewhere. The Producing Party shall be responsible for identifying any such controlled technical data, and the Receiving Party shall take measures necessary to ensure compliance.

12.4    Filing Protected Material. Without written permission from the Designating Party or a court order secured after appropriate notice to all interested persons, a Party may not file in the public record in this action any Protected Material. A Party that seeks to file under seal any Protected Material must comply with Civil Local Rule 79-5. Protected Material may only be filed under seal pursuant to a court order authorizing the sealing of the specific Protected Material at issue. Pursuant to Civil Local Rule 79-5, a sealing order will issue only upon a request establishing that the Protected Material at issue is privileged, protectable as a trade secret, or otherwise entitled to protection under the law. If a Receiving Party's

request to file Protected Material under seal pursuant to Civil Local Rule 79-5(e) is denied by the court, then the Receiving Party may file the Protected Material in the public record pursuant to Civil Local Rule 79-5(e)(2) unless otherwise instructed by the court.

13.    <u>FINAL DISPOSITION</u>

Within 60 days after the final disposition of this action, as defined in paragraph 4, each Receiving Party must return all Protected Material to the Producing Party or destroy such material. As used in this subdivision, "all Protected Material" includes all copies, abstracts, compilations, summaries, and any other format reproducing or capturing any of the Protected Material. Whether the Protected Material is returned or destroyed, the Receiving Party must submit a written certification to the Producing Party (and, if not the same person or entity, to the Designating Party) by the 60-day deadline that (1) identifies (by category, where appropriate) all the Protected Material that was returned or destroyed and (2) affirms that the Receiving Party has not retained any copies, abstracts, compilations, summaries or any other format reproducing or capturing any of the Protected Material. Notwithstanding this provision, Counsel are entitled to retain an archival copy of all pleadings, motion papers, trial, deposition, and hearing transcripts, legal memoranda, correspondence, deposition and trial exhibits, expert reports, attorney work product, and consultant and expert work product, even if such materials contain Protected Material. Any such archival copies that contain or constitute Protected Material remain subject to this Protective Order as set forth in Section 4 (DURATION).

1    DATED: June 23, 2014                 /Donald A. Thompson/_____
2                                         HARVEY SISKIND LLP
                                          LAWRENCE J. SISKIND (SBN 85628)
3                                         Email: siskind@harveysiskind.com
                                          DONALD A. THOMPSON (SBN 260076)
4                                         Email: dthompson@harveysiskind.com
                                          Four Embarcadero Center, 39th Floor
5                                         San Francisco, California 94111
                                          Telephone: (415) 354-0100
6                                         Facsimile: (415) 391-7124
7
8
                                          *Attorneys for PINTEREST, INC.*
9
10
11   DATED: June 23, 2014                 /Frank L. Bernstein/_____
12                                         KENYON & KENYON LLP
                                          FRANK L. BERNSTEIN (SBN 189504)
13                                         Email: fbernstein@kenyon.com
                                          1801 Page Mill Road, Suite 210
14                                         Palo Alto, California 94304
                                          Telephone: (650) 384-4700
15                                         Facsimile: (650) 384-4701
16
17                                         *Attorney for PINTRIPS, INC.*
18
19   IT IS SO ORDERED.
20
21   DATED: __June 25, 2014___            _____
22                                         KANDIS A. WESTMORE
                                          UNITED STATES MAGISTRATE JUDGE
23
24
25
26
27
28

1

2

<u>EXHIBIT A</u>

<u>ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND</u>

3

I, _____ [print or type full name], of

4

_____ [print or type full address], declare under penalty of perjury

5

that I have read in its entirety and understand the Stipulated Protective Order that

6

was issued by the United States District Court for the Northern District of California

7

on [date] in the case of _____ **[insert formal name of the case and the**

8

**number and initials assigned to it by the court]**. I agree to comply with and to be

9

bound by all the terms of this Stipulated Protective Order and I understand and

10

acknowledge that failure to so comply could expose me to sanctions and punishment

11

in the nature of contempt. I solemnly promise that I will not disclose in any manner

12

any information or item that is subject to this Stipulated Protective Order to any

13

person or entity except in strict compliance with the provisions of this Order.

14

I further agree to submit to the jurisdiction of the United States District

15

Court for the Northern District of California for the purpose of enforcing the terms of

16

this Stipulated Protective Order, even if such enforcement proceedings occur after

17

termination of this action.

18

I hereby appoint _____ [print or type full

19

name] of _____ [print or type full address

20

and telephone number] as my California agent for service of process in connection

21

with this action or any proceedings related to enforcement of this Stipulated

22

Protective Order.

23

Date: _____

24

City and State where sworn and signed: _____

25

Printed name: _____

26

               [printed name]

27

Signature: _____

28

            [signature]

I, Donald A. Thompson, am the ECF user whose identification and password are being used to file this document. Pursuant to Civil Local Rule 5.1, I hereby attest that counsel for Defendant has concurred in this filing.

/Donald A. Thompson/

# Exhibit B

# HARVEY ▪ SISKIND LLP

July 9, 2014

<u>VIA EMAIL</u>

Frank L. Bernstein, Esq.
Kenyon & Kenyon LLP
1801 Page Mill Road, Suite 210
Palo Alto, CA 94304-1216
FBernstein@kenyon.com

      Re:    *Pinterest, Inc. v. Pintrips, Inc.*
             Case No. C 13-04608 (RS)(KAW)

Counsel:

      Pursuant to Section 7.4(a)(1) of our protective order (D.N. 55), this letter nominates Anthony Falzone as "Designated House Counsel" authorized to access "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" information in this case. Mr. Falzone is a resident of San Francisco, California and Deputy General Counsel of Pinterest, Inc. ("Pinterest"). His current and reasonably foreseeable future primary job duties and responsibilities involve advising Pinterest with respect to: litigation; intellectual property, employment, and immigration law; and the legal aspects of international expansion and user-facing content. Mr. Falzone is not involved in competitive decision-making.

      Please let us know at your earliest convenience whether Pintrips objects to this nomination.

                Sincerely,

                Donald A. Thompson

DAT:cl

cc: mrupp@kenyon.com

# Exhibit C

# Kenyon & Kenyon

**Frank L. Bernstein**
Direct 650.384.4688
fbernstein@kenyon.com

Kenyon & Kenyon LLP
1801 Page Mill Road
Suite 210
Palo Alto, CA  94304-1216
650.384.4700
Fax 650.384.4701

July 19, 2014

## VIA EMAIL TO DTHOMPSON@HARVEYSISKIND.COM

Donald A. Thompson, Esq.
Harvey Siskind LLP
4 Embarcadero Center, 39th Floor
SF, CA 94111

Re:     Falzone Nomination as Designated House Counsel
         _Pinterest, Inc. v. Pintrips, Inc._, 3:13-cv-04608, (N.D. Cal.)

Dear Don:

Responsive to your letter of 9 July, Pintrips objects to the nomination of Anthony Falzone as Designated House Counsel pursuant to the protective order in this litigation.  Pinterest itself disqualified Mr. Falzone by sending him as Pinterest's representative to the July 10, 2014 mediation session with Magistrate Corley.

Paragraph 2 of the Court's Notice of Settlement and Settlement Conference Order states:

2. Lead trial counsel shall appear at the Settlement Conference with the parties. Any party who is not a natural person shall be represented by the person(s) with **unlimited** authority to negotiate a settlement. An insured party shall appear with a representative of the carrier with full authority to negotiate up to the limits of coverage. A person who needs to call another person not present before agreeing to any settlement does not have full authority.

The emphasis on "unlimited" is the Court's.

By having unlimited authority to negotiate a settlement, Mr. Falzone clearly is a decisionmaker, and therefore cannot qualify as Designated House Counsel pursuant to Paragraph 7.3(b)(1) of the Stipulated Protective Order.

Very truly yours,

_Frank L Bernstein_

Frank L. Bernstein

# Exhibit D

## EXHIBIT A

## ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND

I, _____Anthony T. Falzone_____ [print or type full name], of _Pinterest Inc., 808 Brannan St., SF CA_, declare under penalty of perjury that I have read in its entirety and understand the Stipulated Protective Order that was issued by the United States District Court for the Northern District of California on **June 25, 2014** in the case of *Pinterest, Inc. v. Pintrips, Inc.*, **CV 13-04608-RS-KAW**. I agree to comply with and to be bound by all the terms of this Stipulated Protective Order and I understand and acknowledge that failure to so comply could expose me to sanctions and punishment in the nature of contempt. I solemnly promise that I will not disclose in any manner any information or item that is subject to this Stipulated Protective Order to any person or entity except in strict compliance with the provisions of this Order.

I further agree to submit to the jurisdiction of the United States District Court for the Northern District of California for the purpose of enforcing the terms of this Stipulated Protective Order, even if such enforcement proceedings occur after termination of this action.

I hereby appoint _____ [print or type full name] of _____ [print or type full address and telephone number] as my California agent for service of process in connection with this action or any proceedings related to enforcement of this Stipulated Protective Order.

Date: _August 6, 2014_

City and State where sworn and signed: _San Francisco, CA_

Printed name: _____

[printed name]

Signature: _____

[signature]