1   Edward T. Colbert (Admitted to Practice)
    KENYON & KENYON LLP
2   1500 K Street, N.W.
    Washington, D.C. 20005
3   Telephone: (202) 220-4200
    Facsimile: (202) 220-4201
4   Email: ecolbert@kenyon.com

5   Frank L. Bernstein (SBN 189504)
    KENYON & KENYON LLP
6   1801 Page Mill Road, Suite 210
    Palo Alto, California 94304
7   Telephone: (650) 384-4700
    Facsimile: (650) 384-4701
8   Email: fbernstein@kenyon.com

9   *Attorneys for Defendant
    and Counter-Plaintiff*
10  *Pintrips, Inc.*

11

12                  UNITED STATES DISTRICT COURT

13                 NORTHERN DISTRICT OF CALIFORNIA

14                    SAN FRANCISCO DIVISION

15

16
    PINTEREST, INC.,                    Case No.  3:13-cv-4608-RS
17
    a Delaware corporation,
18                                      **DEFENDANT PINTRIPS, INC.'S**
             Plaintiff and Counter-     **AMENDED ANSWER AND**
19           Defendant,                 **COUNTERCLAIMS**
20
    v.                                  **DEMAND FOR JURY TRIAL**
21
    PINTRIPS, INC.,
22
    a Delaware corporation,
23
24           Defendant and Counter-
             Plaintiff
25

26

27

28

1
2
3
4
5
6
7
8

Defendant and Counter-Plaintiff Pintrips, Inc. ("Pintrips"), by and through counsel, hereby answers the First Amended Complaint ("Complaint") (D.I. 78) filed by Plaintiff and Counter-Defendant Pinterest, Inc. ("Pinterest"), as follows, with each numbered paragraph(s) corresponding to the similarly numbered paragraph(s) in the Complaint as set forth below.  Unless expressly admitted all allegations in the Complaint are denied.

9

## NATURE OF ACTION

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1.     Pintrips admits only that Plaintiff purports to bring this action raising the claims as stated, and denies any of the claims referred to in this unnumbered paragraph of the Complaint have merit.  Pintrips submits that the generic terms "pin" and "pin it" are common, generic terms for pinning a virtual object on a user interface, and cannot, whether alone or in any combination or variation as used by Plaintiff, serve as a trademark, service mark, brand, or any indicia of origin (the terms "trademark," "service mark," "brand," and "any other indicia of origin" are hereinafter referred to collectively as "mark").  Pintrips further submits that a drawing or graphic image of a pin is a common, generic graphic representation indicating pinning a virtual object on a user interface, and cannot, whether alone or in any combination or variation as used by Pinterest, serve as a mark.  Pintrips denies that it has adopted a social media brand, and that it has refused to recognize, discuss, or remediate.  Pintrips denies further that it is a social media service. Pintrips denies further that its brand causes confusion among consumers or implies a connection, affiliation or sponsorship that does not exist.  Pintrips denies further that  its choice of brand violates any applicable legal provision.  Pintrips lacks sufficient information to admit or deny the remaining allegations in this paragraph, and therefore denies the same.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## THE PARTIES

2.      Pintrips lacks sufficient information to admit or deny the allegations in this paragraph, and therefore denies the same.

3.      Pintrips denies that it is a California corporation and admits that it is a Delaware corporation. Pintrips admits the remaining allegations in this paragraph.

## JURISDICTION

4.      This paragraph contains only legal conclusions, as to which no response is required.

5.      This paragraph contains only legal conclusions, as to which no response is required.

## VENUE

6.      This paragraph contains only legal conclusions, as to which no response is required.

## INTRADISTRICT ASSIGNMENT

7.      This paragraph contains only legal conclusions, as to which no response is required.

## GENERAL ALLEGATIONS

### Pinterest And Its Trademarks

8.      Pintrips lacks sufficient information to admit or deny the allegations in this paragraph, and therefore denies the same.

9.      Pintrips denies that the generic terms "pin," "pin it," and a graphic representation of a pin, which function as tools to allow users to pin content to their board, are marks for any good or service offered by Plaintiff. Pintrips lacks sufficient information to admit or deny the remaining allegations in this paragraph, and therefore denies the same.

10.      Pintrips lacks sufficient information to admit or deny the allegations in this paragraph, and therefore denies the same.

11.     Pintrips lacks sufficient information to admit or deny the allegations in this paragraph, and therefore denies the same.

12.     Pintrips lacks sufficient information to admit or deny the allegations in this paragraph, and therefore denies the same.

13.     Pintrips lacks sufficient information to admit or deny the allegations in this paragraph, and therefore denies the same.

14.     Pintrips lacks sufficient information to admit or deny the allegations in this paragraph, and therefore denies the same.

15.     Pintrips denies that Pinterest's alleged word mark and logotype are inherently distinctive.  Pintrips lacks sufficient information to admit or deny the remaining allegations in this paragraph, and therefore denies the same.

16.     Pintrips admits that U.S. Trademark Registration No. 4,145,087 issued on May 22, 2012, and that Pinterest is the registrant.  Pintrips admits further that the application for this registration occurred on March 1, 2011, and that it was filed in the name of Pinterest.  Pintrips denies that such registration should be entitled to any force or effect.  Rather, the registration should be canceled because of naked licensing.  Pintrips lacks sufficient information to admit or deny the remaining allegations in this paragraph, and therefore denies the same.

17.     Pintrips admits that U.S. Trademark Registration No. 4,553,185 issued on June 17, 2014, in connection with the identified classes and that Pinterest is the registrant.  Pintrips denies that such registration should be entitled to any force or effect.  Rather, the registration should be canceled because the mark is a generic functional term, and because of naked licensing.  Pintrips lacks sufficient information to admit or deny the remaining allegations in this paragraph, and therefore denies the same.

18.     Pintrips admits that Pinterest has filed the applications indicated in this paragraph, in the identified classes.  Plaintiff further denies that such application for the word mark and logotype should proceed on to registration because the mark is

generic, merely descriptive, and has not acquired distinctiveness.  Pintrips further answers that, even if the allegations in paragraph 18 are true, the existence of such applications is of no relevance hereto.  Pintrips lacks sufficient information to admit or deny the remaining allegations in this paragraph, and therefore denies the same.

19.     Pintrips denies that the generic, common terms "pin" or "pin it" function as a brand or mark for any service offered by Plaintiff.  Pintrips states further that the terms pin and pin it are generic terms used by many companies and individuals, including Plaintiff and its users, to refer generally to the functionality of pinning a virtual object on a user interface, and not any particular source of software.  Pintrips has insufficient information to admit or deny the remaining allegations in this paragraph, and therefore denies the same.

20.     This paragraph contains only legal conclusions, as to which no response is required.

**Pintrips And Its Confusing Marks**

21.     Pintrips refers to the webpages located or posted at pintrips.com with respect to any allegation concerning those documents or their content as of October 4, 2013.  Pintrips denies that it is a social media bookmarking service, and denies all remaining allegations in this paragraph.

22.     Pintrips admits that it was founded in early 2011, and refers to webpages or images located or posted at http://www.pintrips.com with respect to any allegation concerning those documents or content as of October 4, 2013. Pintrips denies the remaining allegations in this paragraph.

23.     Denied.

24.     Pintrips lacks sufficient information to admit or deny the allegations in this paragraph, and therefore denies the same.

25.     Admitted.

26.     Pintrips admits that it is currently using the PINTRIPS mark, and that Plaintiff failed to object to Pintrips' use of PINTRIPS, PIN and other PIN-

formative marks, or Pintrips' application to register its PINTRIPS mark, until June 14, 2013.  Pintrips admits that it responded to Plaintiff's meritless objections on at least June 28, 2013.  Pintrips denies the remaining allegations in this paragraph.

**FIRST CAUSE OF ACTION**
**Trademark Infringement**
**(15 U.S.C. § 1114)**

27.    Pintrips incorporates its responses to paragraphs 1-26.

28.    Denied.

29.    Denied.

30.    Denied.

31.    Admitted as to the use of PINTRIPS and PIN.  Pintrips has insufficient information to admit or deny the remaining allegations in this paragraph, at least in part because of the vagueness of the term "PIN-formative mark" which Plaintiff appears to have coined, and accordingly denies the same.

32.    Denied.

33.    Denied.

34.    Denied.

35.    Denied.

**SECOND CAUSE OF ACTION**
**False Designation of Origin**
**(15 U.S.C. § 1125(a))**

36.    Pintrips incorporates its responses to paragraphs 1-35.

37.    This paragraph contains only legal conclusions, as to which no response is required.

38.    Denied.

39.    Denied.

40.    Denied.

41.    Denied.

42.    Denied.

**THIRD CAUSE OF ACTION**

1

**Trademark Dilution**
**(15 U.S.C. § 1125(c))**

2

43.     Pintrips incorporates its responses to paragraphs 1-42.

3

44.     The first sentence of this paragraph contains only legal conclusions, as

4

to which no response is required.  Pintrips lacks sufficient information to admit or

5

deny the remaining allegations in this paragraph, and therefore denies the same.

6

45.     This paragraph contains only legal conclusions, as to which no

7

response is required.

8

46.     Denied.

9

47.     Denied.

10

48.     Denied.

11

**FOURTH CAUSE OF ACTION**
**Unfair Competition**
**(Cal. Bus. Prof. Code § 17200)**

12

13

49.     Pintrips incorporates its responses to paragraphs 1-48.

14

50.     Denied.

15

51.     Denied.

16

52.     Denied.

17

53.     Denied.

18

**FIFTH CAUSE OF ACTION**
**California Trademark Dilution**
**(Cal. Bus. Prof. Code § 14247)**

19

20

54.     Pintrips incorporates its responses to paragraphs 1-53.

21

55.     The first sentence of this paragraph contains only legal conclusions, as

22

to which no response is required.  Pintrips lacks sufficient information to admit or

23

deny the remaining allegations in this paragraph, and therefore denies the same.

24

56.     This paragraph contains only legal conclusions, as to which no

25

response is required.

26

57.     Denied.

27

58.     Denied.

28

KENYON & KENYON
LLP
PALO ALTO

PINTRIPS' AMENDED ANSWER AND
COUNTERCLAIMS                                           - 6 -                    Case No.  3:13-cv-4608-RS

1    59.    Denied.

2                            **FURTHER ANSWER**

3        Further answering the Complaint, Pintrips denies all allegations in the

4    Complaint that are not hereinabove expressly admitted.

5

6              **PINTRIPS' AFFIRMATIVE DEFENSES**

7                    **FIRST AFFIRMATIVE DEFENSE**

8    1.    The Complaint fails to state a claim upon which relief can be granted.

9                    **SECOND AFFIRMATIVE DEFENSE**

10   2.    Plaintiff has no exclusive right or interest in any of the generic terms

11   "pin," "pin it," or in a graphic icon of a "pin."

12                    **THIRD AFFIRMATIVE DEFENSE**

13   3.    The term "pin" is generic for the services at issue.

14                    **FOURTH AFFIRMATIVE DEFENSE**

15   4.    The term "pin" is descriptive for the services at issue and has not

16   acquired distinctiveness, and cannot acquire distinctiveness, for those services.

17                    **FIFTH AFFIRMATIVE DEFENSE**

18   5.    The phrase "pin it" is descriptive for the services at issue and has not

19   acquired distinctiveness, and cannot acquire distinctiveness, for those services.

20                    **SIXTH AFFIRMATIVE DEFENSE**

21   6.    The graphic icon of a "pin" is generic for the services at issue.

22                    **SEVENTH AFFIRMATIVE DEFENSE**

23   7.    The graphic icon of a "pin" is descriptive for the services at issue and

24   has not acquired distinctiveness, and cannot acquire distinctiveness, for those

25   services.

26                    **EIGHTH AFFIRMATIVE DEFENSE**

27   8.    Plaintiff knowingly has made false accusations against Pintrips, is

28   misusing Plaintiff's alleged trademarks, and is using the legal process for the

improper purpose of thwarting competition, engaging in unfair competition, stifling free speech and/or extorting intellectual property from a legitimate business enterprise, namely Pintrips.  Accordingly, Plaintiff is guilty of inequitable conduct and comes into this Court with unclean hands.

### NINTH AFFIRMATIVE DEFENSE

9.     Plaintiff's claims are barred by license, consent, acquiescence, waiver, and estoppel.

### TENTH AFFIRMATIVE DEFENSE

10.     Plaintiff's claims are barred because it has abandoned its rights in its alleged "Pinterest," "Pin it," and "Pin" marks.

### ELEVENTH AFFIRMATIVE DEFENSE

11.     Plaintiff's claims are barred by the doctrine of fair use.

### TWELFTH AFFIRMATIVE DEFENSE

12.     Plaintiff's claims are barred because there is no likelihood of confusion between Plaintiff's alleged marks as used by Plaintiff, and Pintrips' use of the pin term and its PINTRIPS mark for travel planning services.

### THIRTEENTH AFFIRMATIVE DEFENSE

13.     Plaintiff's claims are barred by the First Amendment to the United States Constitution.

### FOURTEENTH AFFIRMATIVE DEFENSE

14.     Plaintiff's claims are barred for lack of subject matter jurisdiction to the extent Plaintiff lacks valid registration of its alleged marks.

### FIFTEENTH AFFIRMATIVE DEFENSE

15.     Plaintiff's claims are barred to the extent it has forfeited or abandoned its alleged marks, and/or failed to enforce its rights thereto.

### SIXTEENTH AFFIRMATIVE DEFENSE

16.     Plaintiff's claims are barred because its alleged "Pinterest" trademark is not inherently distinctive, and did not establish secondary meaning prior to either Pintrips' use of the generic term pin or its PINTRIPS mark.

## SEVENTEENTH AFFIRMATIVE DEFENSE

17.     Plaintiff's claims are barred by the doctrine of laches.

## EIGHTEENTH AFFIRMATIVE DEFENSE

18.     Plaintiff has not suffered, and will not suffer, any irreparable harm based on the allegations in the Complaint.

## NINETEENTH AFFIRMATIVE DEFENSE

19.     Pintrips will suffer irreparable harm if the injunctive relief request is granted.

## TWENTIETH AFFIRMATIVE DEFENSE

20.     Plaintiff's claims fail to state facts sufficient to support an award of attorneys' fees against Pintrips.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

21.     Plaintiff's claims are barred because Plaintiff's requests for damages are speculative and uncertain.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

22.      Plaintiff's claims are barred because Pintrips' use of the generic term "pin" and its PINTRIPS mark pre-date Pinterest's respective applications for the alleged PIN mark, the word mark PINTEREST and the logotype "Pinterest".

## TWENTY-THIRD AFFIRMATIVE DEFENSE

23.     Pintrips has insufficient knowledge or information upon which to form a belief as to whether it may have additional, as yet unstated, affirmative defenses available, and Pintrips reserves the right to assert such additional affirmative defenses in the event investigation and discovery indicate that they are proper.

## PRAYER FOR RELIEF

WHEREFORE, Defendant Pintrips, respectfully prays that each and every prayer for relief that Plaintiff seeks be denied, and that instead this Court enter judgment for Pintrips and against Plaintiff on all counts, that the Complaint be dismissed with prejudice, and further:

A.     Award to Pintrips its costs of defending against the Complaint, together with reasonable attorneys' fees as may be allowed by applicable law and/or the equity powers of this Court; and

B.     Award to Pintrips such other and further relief as this Court may deem just and proper.

## COUNTERCLAIMS

For its counterclaim against Counterdefendant Pinterest, Counterclaimant Pintrips alleges as follows:

## THE PARTIES

1.     Counterclaimant Pintrips, Inc. is, and was at all relevant times, a corporation organized under the law of Delaware.

2.     On information and belief, Counterdefendant Pinterest is, and was at all relevant times, a corporation organized under the laws of Delaware.

## JURISDICTION AND VENUE

3.     Pintrips incorporates by reference its answers and separate defenses above as if fully set forth herein.

4.     This action arises under the Trademark Laws of the United States, 15 U.S.C. § 1051 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 & 2202.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 & 1338.  This Court has supplemental jurisdiction over Counterclaimant's state law claims under 28 U.S.C. § 1367(a), and under principles of pendent jurisdiction.

5.     As detailed in Pintrips' answers and separate defenses above (and in the Complaint filed in this action by Counterdefendant), an actual controversy exists between Pintrips and Counterdefendant in that:

a.     Pinterest is attempting to assert trademark rights in the term "pin," and the phrase "pin it," and in the graphic image of a pin (either alone or in specific combinations as described by Pinterest).

b.     In connection with its travel planning service, Pintrips is using the generic term "pin" and a graphic image of a pin.

c.     Pinterest has requested that Pintrips be enjoined from using the above-listed generic term and from using a graphic image of a pin (either alone or in any specific combination as described by Pinterest).

6.     This Court has personal jurisdiction over Counterdefendant in this action and venue is proper in this judicial district under 28 U.S.C. § 1391(b), (c) & (d) because: (a) Counterdefendant resides in this judicial district; (b) Counterdefendant has initiated this action in this Court; (c) Counterdefendant has intentionally engaged in substantial business with this forum amounting to sufficient minimum contacts, including, but not limited to, the offer for sale and sale of relevant services into California and into this judicial district; and (d) a substantial part of the acts or omissions giving rise to the asserted claims occurred or had effects in this judicial district.

## **FACTS**
### **Pintrips' Background**

7.     Established in early 2011, Pintrips is an online travel planning tool that allows users to review and monitor information from commercial flights. Through Pintrips, customers are able to compare travel routes and price options, monitor price changes, and easily coordinate flights from various travel sites with fellow travelers.  Pintrips is a small start-up company that has worked hard to establish its presence in the online travel business arena.  A copy of a webpage located at

1  http://www.pintrips.com, providing an overview of Pintrips' services, is attached
2  hereto as Exhibit 1.

3      8.      Although Pinterest claims that it launched its pinning services in
4  March, 2010, at least one pinning pundit notes that it was nearly non-existent in
5  mid-2011. A copy of an article discussing pinning is attached hereto as Exhibit 2.

6      9.      Moreover, almost all the way through discovery, Pinterest has failed to
7  identify a single instance of its own use of any of its marks in travel.

8      10.     In discovery responses which Pinterest has served, the only "use" of
9  any of Pinterest's marks in travel, that Pinterest has alleged to date, have been by
10 Pinterest users, not by Pinterest.

11     11.     Pintrips and its travel tools operate in an entirely different sector from
12 Pinterest, which operates a social media platform. Pintrips' brand does not cause
13 confusion among consumers as it in no way implies a connection, affiliation or
14 sponsorship with Plaintiff. The two parties merely share the word "pin" in their
15 respective business names, as nearly one hundred online, as well as "brick and
16 mortar" companies, do.

17     12.     Unlike Pinterest, there is no social media aspect of Pintrips' online
18 travel services. A user's trip information (*i.e.*, itinerary and flight information) is
19 private and accessible by the user's specific invitation only. The information is
20 shared only when a user expressly permits it, and then, it is shared only with the
21 individuals that the user specifically identifies. There is no automatic sharing of
22 information with all Pintrips users, or any subset of Pintrips users.

23     13.     In Pintrips' online travel services, a user's trip information does not
24 show up in a Google® search.

25     14.     Ten months before Pinterest commenced this action, Pintrips applied
26 for trademark registration of its PINTRIPS mark for travel services. *See* Trademark
27 Application No. 85/793,784, a copy of which is attached hereto as Exhibit 3.
28 Pintrips provided a declaration of use and the required specimens of use and on

1    April 17, 2013, the USPTO issued a Notice of Publication, a copy of which is
2    attached hereto as Exhibit 4. The Notice of Publication indicated that the USPTO
3    did not find any prior applications or registrations, including those belonging to
4    Plaintiff, that were likely to cause confusion with the PINTRIPS mark.

5        15.    Pintrips would likely have a registration for its mark had Pinterest not
6    filed a Notice of Opposition on November 1, 2013 to block the USPTO from
7    issuing Pintrips a certificate. *See* Notice of Opposition, a copy of which is attached
8    hereto as Exhibit 5.

9                    **Pervasive Use of Pins in Software**

10       16.    Pinterest is not entitled to the exclusive use of PIN or other PIN-
11   formative marks as the term is generic and cannot be removed from common use to
12   the exclusivity of one entity for profit.

13       17.    A "pin" or "pinning" is a common functional term frequently used by
14   software providers, customers, analysts, users, and the media to describe shared
15   features of operating systems, websites, map applications, graphic user interfaces,
16   applications and other software programs.

17       18.    Pintrips' use of the term pin, and a graphic image of a pin as an icon in
18   a generic manner, is consistent with prevailing practice among leading websites,
19   software, and apps.

20       19.    Exhibit 6 is a webpage from http://www.facebook.com.

21       20.    Exhibit 6 shows that Facebook allows users and administrators to
22   "pin" certain page posts to the top of their respective pages.

23       21.    Exhibit 7 is a webpage from https://developers.google.com.

24       22.    Exhibit 7 shows that Google Maps identifies points of interest on a
25   map via marker "pins".

26       23.    Exhibit 7 demonstrates the ability to customize these markers.

27       24.    Exhibit 7 explains how custom icons can be used to replace "the
28   default Google map marker pin."

25. Exhibit 8 is a webpage from http://smartypins.withgoogle.com.

26. Exhibit 8 demonstrates a game based on Google Maps called SmartyPins.

27. Exhibit 8 shows how a user is presented with a geographical trivia question and how the user places a "pin" on the map at the location they believe answers the question.

28. SmartyPins is an example of a PIN-formative mark.

29. Exhibit 9 is a webpage from http://windows.microsoft.com.

30. Exhibit 9 demonstrates how Microsoft Windows 7 allows a user to "pin" an application to the taskbar as a shortcut for easy access to that application.

31. Exhibit 10 is a webpage from a commentator.

32. Exhibit 10 explains how Apple Mac OS X allows users to "pin" often used programs, files or folders to a dock to provide the user a more convenient method to access these items.

33. Exhibit 11 is a webpage from http://docs.blackberry.com.

34. Exhibit 11 demonstrates how a Blackberry 10 Device allows a user to "pin" a file to their device so that it will be available even when the user is offline.

35. Exhibit 12 is a webpage from http://www.pindropapp.com explaining and demonstrating an application called Pin Drop.

36. Pin Drop is an application available for smartphones and other portable devices that allows users to "pin" places and items of interest to keep or share with others. Pin Drop was released in March 2011, and it provides "pinning" services similar to Pinterest in the context of online social media and bookmarking.

37. Pin Drop is an example of a PIN-formative mark.

38. Exhibit 13 is a webpage from http://www.historypin.com.

39.     Historypin is an online social media community that allows people, groups and organizations to "pin" various media and content related to historical artifacts found across the world.

40.     Historypin's "pinning" functionality is used in a similar manner as the services provided by Pinterest in the same online social media, bookmarking business sector.  Users may click on "pins" located on a map of the world to obtain historical information on that specific location.

41.     Alternatively, Historypin instructs users to "pin it" – by providing media such as digital pictures to share with the rest of the online community.

42.     Historypin is an example of a PIN-formative mark.

43.     Exhibit 14 is a webpage from http://www. pinboard.in (which despite the Indian domain name ".in", runs and operates in California) explaining and demonstrating a site called Pinboard.

44.     Pinboard is a social bookmarking site.

45.     Pinboard is an example of a PIN-formative mark.

46.     Exhibit 15 is a webpage from http://www.pincup.com, explaining an application called Pin Cup.

47.     Pin Cup is a social media app that allows users to share photos.

48.     Pin Cup is an example of a PIN-formative mark.

49.     Exhibit 16 is a webpage from http://www. pininthemap.com, explaining and demonstrating the Pin In the Map website.

50.     Pin In The Map is a website that allows users to pin a location on a Google® map, attach text, and send the pinned location to others.

51.     Pin In The Map is an example of a PIN-formative mark.

52.     Exhibit 17 is a webpage from https://itunes.apple.com/us/app/pin-maps/id590951333?mt=8 com, explaining and demonstrating an app called Pin Maps.

53.     Pin Maps is an app for the iPhone and iPad that allows users to pin places that they wish to visit.

54.     Pin Maps is an example of a PIN-formative mark.

55.     Exhibit 18 is a webpage from https://itunes.apple.com/us/app/pin-master-hd-bookmark-your/id500567544?mt=8, explaining and demonstrating an app called Pin Master HD.

56.     Pin Master HD is an app for the iPhone and iPad that allows users to pin locations on a map to share with their friends.

57.     Pin Master HD is an example of a PIN-formative mark.

58.     Exhibit 19 is a webpage from https://www.facebook.com/pinnfind, explaining and demonstrating an app called Pin'N Find.  Pin'N Find is an Android app that helps users find where they parked their cars.

59.     Pin'N Find is an example of a PIN-formative mark.

60.     Exhibit 20 is a webpage from http://apps.microsoft.com/windows/en-us/app/pin-steam/e697bf8a-8c25-4236-b701-197db3792ecf, explaining and demonstrating an app called Pin Stream.

61.     Pin Stream is an app for the Windows operating system, allowing users to pin tiles to see their friends' online status and see the online games they are playing.

62.     Pin Stream is an example of a PIN-formative mark.

63.     Exhibit 21 is a webpage from http://pin.jobs/, explaining and demonstrating a website called Pin Jobs.

64.     Pin Jobs is a job search website.

65.     Pin Jobs is an example of a PIN-formative mark.

66.     Exhibit 22 is a webpage from http://pinblu.com.

67.     Pinblu is a website for "social" e-commerce.

68.     Pinblu is an example of a PIN-formative mark.

69.     Exhibit 23 is a webpage from http://version11-english.pindown.ca, describing an iPhone app called pin!Down.

70.     pin!Down is an iPhone app that allows users to pin and save locations on a virtual map.

71.     Pin!Down is an example of a PIN-formative mark.

72.     Attached hereto, as collective Exhibit 24, are screenshots from many other software, website and app providers who are using the term pin and a graphic image of a pin as an icon in a generic manner such as Pinstyle, PinMe, PinMyPet, PinMyRide, PinMyWay, Pinnum, Uber, Pinspire, and Property Pins.

73.     All of the names listed in the preceding paragraph are examples of PIN-formative marks.

74.     Likewise, national media outlets use the term "pin" in a generic sense. Examination of publicly-accessible media sources reveals newspaper, magazine and blog articles that use "pin" to refer to "pinning" an object on a user interface. *See* Exhibits 25-34 (examined in greater detail *infra*).

75.     Moreover, these publicly-accessible articles demonstrate that the use of the term "pin" or "pinning" was present in the context of social media and bookmarking before the alleged inception of Pinterest in March 2010.  Examples include:

76.     Exhibit 25, an article entitled "Tesco Aims at the Heart of Digital Family Life", New Media Age, October 30, 2008, states, "Users can also 'pin' digital photos and messages to the screen, and Tesco aims to enable direct access to social networking sites like Facebook and Bebo."

77.     Exhibit 26, an article entitled "Shops Seek Control in Social-Media Space", Abbey Klaassen, Advertising Age, March 2, 2009, states, "That kind of collaboration is how Hallmark and Product Red launched a campaign in 2008 that had social-network users pinning branded badges to their profile pages."

78.   Exhibit 27, an article entitled "The Internet Pinboard Company: Internet Pinboard Pins Up Virtual Corkboard," M2 PressWIRE, June 4, 2008, states, "Users can pin up almost anything, including photos, personal messages, artwork scraps, post cards or notes with links to news and entertainment stories, blogs, music, video and other digital content."

79.   All of Exhibits 25-27 predate the formation of Pinterest.

80.   All of Exhibits 25-27 predate Pinterest's selection of its name.

81.   In addition, publicly-accessible articles demonstrate that the use of the term "pin" or "pinning" was present in the context of social media and bookmarking in 2010 during, or shortly after the alleged inception of Pinterest in March 2010.

82.   Exhibit 28, an article entitled "Improved Windows Mobile 7 Coming," Jonathan Takiff, The Philadelphia Daily News, October 20, 2010, states, "App tiles can be moved around or replaced easily with a process  called 'pinning,' already familiar to Windows 7."

83.   Exhibit 29, an article entitled "Fuse Labs' Montage Blends Search With Blogging," Josh Lowensohn, CNET.com, November 16, 2010, states, "Users can, for instance, lock down a Montage in time by pinning news stories, photos, videos, and more to a page."

84.   Exhibit 30, an article entitled, "Convenient, Powerful Ways to Share Memories," Edmonton Journal, Marc Saltzman, June 23, 2010, states, "Facebook has no storage of these third-party apps:  . . . My Travel Photo Map (share photos from your adventures around the globe by pinning them to a map for friends to click through)."

85.   Exhibit 31, an article entitled, "Broadcastr, a New Social Media Platform for Location-Based Audio Content, Launches Beta," American Banking and Market News, December 20, 2010, states, "For the past three months, the Broadcastr team has been recording stories and sourcing archives from notable

cultural figures, unique individuals, artists, performers, and organizations and pinning those stories to Broadcastrs interactive online map of the world."

86.    Exhibit 32, an article entitled, "10 Great Websites to Buy Handmade Goods," Mashable, May 26, 2010, states, "The Pinboard is a feature where logged-in users can create themed collections or wishlists."

87.    Exhibit 33, an article entitled, "This Is Our Life," Kathy Evans, Sunday Age, November 28, 2010, states, "Facebook was initially the domain of hip young things, single satellites strung out across the globe lighting up cyber space with their witty anecdotes and drink-addled encounters, while pinning embarrassing photos on their virtual walls."

88.    Exhibit 34, an article entitled, "Microsoft and Top Sites Celebrate the Beauty of the Web With Internet Explorer 9 Beta Release," PR Newswire, September 15, 2010, states, "Internet Explorer 9 sets itself apart by supporting hardware-accelerated graphics and offering users a more app-like experience with its new pinned site capability, making our customer experience even better;" and "Pinned Sites.  With Pinned Sites, a user's favorite websites can be accessed directly from the Windows Taskbar . . . ."

89.    Upon information and belief, Pinterest, its founders and/or executives were aware of this pervasive use of the term "pin" or "pinning" in the context of social media and bookmarking at the time of the inception of Pinterest.

90.    Upon information and belief, the widespread and popular usage of the term "pin" or "pinning" in the context of social media and bookmarking informed Pinterest's decision to adopt a PIN-formative brand, PIN-formative graphics and logos, and PIN-based functionality for its social media and bookmarking service.

91.    Exhibit 2, an article entitled "Pinning: The Next Wave in Social Media", posted March 30, 2012 on the blog, "Pin It: The New Social Pinning Phenomena", at http://pinit.com, states, "Pinning is a way to share interesting internet content via a virtual *pinboard*;" and "Yet Pinterest.com isn't the only

1  pinning site out there." (emphasis supplied). The article then highlights eight other
2  "pinning" sites.

3      92.   Exhibit 2 supports the contention that, in March 2012, the use of "pin"
4  or "pinning" was prevalent amongst a number of web sites and services as a
5  generic, functional term in the context of social media and bookmarking.

6              **Pinterest's Attempts to Seize the Generic Term Pin**

7
8      93.   On August 8, 2012, Pinterest filed an intent-to-use application with the
9  United States Patent and Trademark Office ("USPTO"), identified as application
10  number 85/698,998, a copy of which is attached hereto as Exhibit 35.

11      94.   On April 11, 2014, Pinterest received an Office Action letter from the
12  USPTO in response to a "Statement of Use" Pinterest had submitted in support of
13  its pending application for the "pin" mark. *See* April 11, 2014 Office Action Letter,
14  a copy of which is attached hereto as Exhibit 36.

15      95.   In Exhibit 36, the USPTO refused registration of the alleged "pin" mark
16  in two of the four classes of goods (classes 9, 38, 42, and 45) for which Pinterest
17  sought registration.

18      96.   In particular, the USPTO refused registration in class 45, which
19  encompasses goods/services "providing online social networking services".

20      97.   In response to Pinterest's specimens of use, the USPTO specifically
21  pointed to a Pinterest web page with a "Pin-it" button and stated that "[i]n such
22  presentation, the term PIN does not identify the source of any particular service, but
23  is a shorthand term for the action performed by applicant's customers." *Id.*

24      98.   The USPTO's statement indicates the USPTO's position that the term
25  is, at a minimum, functional as merely a description of an action.

26      99.   In response to the USPTO's rejection of Pinterest's specimens of use as
27  to classes 38 and 45, Pinterest divided the application as to classes 9 and 42. *See*

Request to Divide Application, dated May 1, 2014, a copy of which is attached hereto as Exhibit 37.

100.  Pinterest's registered PIN mark is for classes 9 and 42 only.

101.  On May 9, 2014, the USPTO issued another Office Action letter to Pinterest as a reminder that Pinterest still needed to cure the deficiencies with their specimens of use in regard to classes 38 and 45, lest the application be abandoned. *See* May 9, 2014 Office Action Letter, a copy of which is attached hereto as Exhibit 38.

102.  To date, Pinterest has not filed any further statements or specimens of use to demonstrate its use of "pin" as a trademark (in those respective classes) and not simply a commonly used, generic and functional term.

103.   Indeed,   Pinterest's   own   use   of   the   "pin"   term   on   its   website demonstrates that the term is used solely in its generic sense:



Printouts from pinterest.com are attached hereto as Exhibit 39.

104. On May 11, 2013, the European Commission's Office for Harmonization in the Internal Market rejected Pinterest's opposition to a European Union trademark application (10,605,749) for the "Pinterest" mark, as filed by Premium Interest, Ltd.  A copy of the Commission's decision is attached hereto as Exhibit 40.

105.  There are numerous current U.S. applications and registrations for PIN and PIN-formative marks, including those for software and social networking.

106. Exhibit 41 is a copy of the publication from the Trademark Official Gazette of Serial No. 85/249,814 for the mark  PINS.

107.  PINS in Exhibit 41 is an example of a PIN or a PIN-formative mark.

108.  Exhibit 42 is a copy of  Reg. No. 3,637,935 for the mark PIN.

109.  PIN in Exhibit 42 is an example of a PIN or a PIN-formative mark.

110.  Exhibit 43 is a copy of Reg. No. 4,264,695 for the mark PIN.

111.  PIN in Exhibit 43 is an example of a PIN or a PIN-formative mark.

112.  Exhibit 44 is a copy of Reg. No. 3,945,852 for the mark PINS.

113.  PINS in Exhibit 44 is an example of a PIN or a PIN-formative mark.

114.  Exhibit 45 is a copy of Reg. No. 4,028,935 for the mark PIN.

115.  PIN in Exhibit 45 is an example of a PIN or a PIN-formative mark.

116.  Exhibit 46 is a copy of Reg. No. 2,795,963 for the mark PINS.

117.  PINS in Exhibit 46 is an example of a PIN or a PIN-formative mark.

118.  Exhibit 47 is a copy of Reg. No. 4,159,225 for the mark PINWEEL.

119.  PINWEEL in Exhibit 47 is an example of a PIN or a PIN-formative mark.

120.  Exhibit 48 is a copy of the publication from the Trademark Official Gazette of Serial No. 85/292,873 for the mark PINNY.

121.  PINNY in Exhibit 48 is an example of a PIN-formative mark.

122.  Exhibit 49 is a copy of Reg. No. 4,360,237 for the mark PINNING PARTY.

123. PINNING PARTY in Exhibit 49 is an example of a PIN-formative mark.

124. Exhibit 50 is a copy of Reg. No. 4,337,225 for the mark PINSYNC.

125. PINSYNC in Exhibit 50 is an example of a PIN-formative mark.

126. Exhibit 51 is a copy of Reg. No. 4,441,854 for the mark PINNUM.

127. PINNUM in Exhibit 51 is an example of a PIN-formative mark.

128. Exhibit 52 is a copy of Reg. No. 4,087,290 for the mark MY CAMP MATE: PLAN. PIN. SHARE.

129. MY CAMP MATE: PLAN.  PIN.  SHARE in Exhibit 52 is an example of a PIN-formative mark.

130. Exhibit 53 is a copy of Reg. No. 3,612,202 for the mark YELLOWPIN.

131. YELLOWPIN in Exhibit 53 is an example of a PIN-formative mark.

132. Exhibit 54 is a copy of Reg. No. 4,423,455 for the mark PINGLER.

133. PINGLER in Exhibit 54 is an example of a PIN or a PIN-formative mark.

134. Exhibit 55 is a copy of Reg. No. 3,781,267 for the mark PINSENT MASONS.

135. PINSENT MASONS in Exhibit 55 is an example of a PIN-formative mark.

136. Exhibit 56 is a copy of Reg. No. 4,558,118 for the mark PINS.

137. PINS in Exhibit 56 is an example of a PIN or a PIN-formative mark.

138. Exhibit 57 is a copy of Reg. No. 4,597,067 for the mark PINWHEEL.

139. PINWHEEL in Exhibit 57 is an example of a PIN or a PIN-formative mark.

140. Exhibit 58 is a copy of the publication from the Trademark Official Gazette of Serial No. 79/141,509 for the mark PINKO.

141. PINKO in Exhibit 58 is an example of a PIN or a PIN-formative mark.

142. Exhibit 59 is a copy of App. No. 79,149,708 for the mark PINNERTEST.

143. PINNERTEST in Exhibit 59 is an example of a PIN or a PIN-formative mark.

144. Exhibit 60 is a copy of App. No. 79,147,135 for the mark PINAULT COLLECTION.

145. PINAULT COLLECTION in Exhibit 60 is an example of a PIN-formative mark.

146. Exhibit 61 is a copy of App. No. 86,384,143 for the mark PINS@COST.

147. PINS@COST in Exhibit 61 is an example of a PIN or a PIN-formative mark.

148. Exhibit 62 is a copy of App. No. 86,376,723 for the mark PIN POINT.

149. PIN POINT in Exhibit 62 is an example of a PIN-formative mark.

150. Exhibit 63 is a copy of App. No. 86,340,414 for the mark PINDRAGON.

151. PINDRAGON in Exhibit 63 is an example of a PIN or a PIN-formative mark.

152. Exhibit 64 is a copy of App. No. 86,329,748 for the mark JU MEI YOU PIN.

153. JU MEI YOU PIN in Exhibit 64 is an example of a PIN-formative mark.

154. Exhibit 65 is a copy of App. No. 86,293,947 for the mark PIN AND CLEAVER.

155. PIN AND CLEAVER in Exhibit 65 is an example of a PIN-formative mark.

156. Exhibit 66 is a copy of App. No. 86,289,811 for the mark VALPINS.

157.  VALPINS in Exhibit 66 is an example of a PIN or a PIN-formative mark.

158.  Exhibit 67 is a copy of App. No. 86,268,795 for the mark PINVOYAGE.

159.  PINVOYAGE in Exhibit 67 is an example of a PIN or a PIN-formative mark.

160.  Exhibit 68 is a copy of App No. 86,265,081 for the mark PINTACT, THE SOCIAL UTILITY.

161.  PINTACT, THE SOCIAL UTILITY in Exhibit 68 is an example of a PIN-formative mark.

162.  Exhibit 69 is a copy of App No. 86,250,395 for the mark PIN PICS.

163.  PIN PICS in Exhibit 69 is an example of a PIN-formative mark.

164.  Exhibit 70 is a copy of App. No. 86,237,170 for the mark WEB PIN.

165.  WEB PIN in Exhibit 70 is an example of a PIN-formative mark.

166.  Exhibit 71 is a copy of App. No. 86,221,832 for the mark M-PIN.

167.  M-PIN in Exhibit 71 is an example of a PIN or a PIN-formative mark.

168.  Exhibit 72 is a copy of the publication from the Trademark Official Gazette of Serial. No. 86/177,256 for the mark PINFEX.

169.  PINFEX in Exhibit 72 is an example of a PIN-formative mark.

170.  Exhibit 73 is a copy of the publication from the Trademark Official Gazette of Serial No. 86/158,741 for the mark MAPIN.

171.  MAPIN in Exhibit 73 is an example of a PIN-formative mark.

172.  Despite the numerous third party applications and registrations for PIN-formative marks for software and social media services, Pinterest has attempted to strong-arm Pintrips into giving up its lawful right to use the pin term and its name PINTRIPS.  Plaintiff has challenged Pintrips' registration of the PINTRIPS mark, as well as instituted this litigation concerning use of the pin term and the PINTRIPS mark.

173. As part of its brand development, on December 4, 2012, Pintrips filed an application to register the PINTRIPS mark with the USPTO, Application Serial No. 85/793,784, based on Pintrips' use of the mark in connection with its travel planning service, including "arranging and coordinating travel arrangements for individuals and groups, namely, destinations stays, honeymoons, family vacations, and destination weddings; Coordinating travel arrangements for individuals and for groups."

174. In its approval of the PINTRIPS mark for publication, the USPTO did not cite Plaintiff's application for "PIN" or Plaintiff's registration for "PINTEREST" as potentially confusing, nor did the USPTO otherwise suggest any issue with any of Plaintiff's alleged marks. Put differently, the USPTO did not assert that Pintrips' PINTRIPS mark was confusingly similar to Plaintiff's application for "PIN" or its registration for "PINTEREST." Accordingly, the PINTRIPS mark was published in the Trademark Official Gazette on May 7, 2013. A copy of the USPTO's confirmation of publication is attached hereto as Exhibit 74.

175. In an improper effort to take Pintrips' intellectual property as its own, Plaintiff has attempted to disrupt Pintrips' nascent travel planning service by challenging Pintrips' right to use "pin" and the validity of its PINTRIPS mark. On November 1, 2013, Plaintiff filed an opposition in the Trademark Trial and Appeals Board ("TTAB") to the registration of Pintrips' mark based on Plaintiff's ownership of the application for "PIN" and its registration for "PINTEREST." *See* TTAB Opposition No. 91/213,301 ("Opposition").

176. Additionally, on October 4, 2013, Plaintiff initiated this federal action against Pintrips (the "Federal Action").

177. On or about November, 2013, Pinterest's CEO Ben Silbermann publicly announced that the company would introduce new ways to plan trips,

including "add[ing] an unnamed co-booking website, which attempts to get through the chain from planning to purchase."

178. Exhibit 75 contains copies of articles discussing Pinterest's interest in introducing new services in the travel planning and sales field.

179. The timing and actions taken by Plaintiff with its Opposition and Federal Action all point to the inescapable conclusion that Plaintiff improperly seeks to disrupt and prevent Pintrips from lawfully using the "pin" term and its PINTRIPS mark for travel planning services.

180. To make matters worse, it appears that Pinterest's planned travel booking service will be a slavish copy of Pintrips' service, *i.e.*, it will allow users to coordinate flights with friends and colleagues.

181. Upon information and belief, Pinterest has not yet offered any travel planning or booking services. It is indisputable that allowing users to pin a picture of a pretty place to visit for the world to see on a public board is not the same service as allowing users to plan, purchase and coordinate flights or other travel related purchases with their family members or work colleagues.

182. Moreover, this is not the first time that Pinterest has unsuccessfully sought, through TTAB oppositions and the like, to prevent others from exercising valid trademark rights to PIN-formative marks. *See, e.g.*, copies of TTAB Oppositions where PIN-formative marks proceeded on to registration after Pinterest withdrew its respective opposition attached hereto as Exhibit 76.

183. Pintrips denies Plaintiff's meritless allegations. Like numerous third parties, Pintrips has every right to use "pin" term in a generic sense. Pintrips' PINTRIPS mark is valid and should be registered as has already been decided by the United States Patent and Trademark Office. Neither Pintrips' mark nor its use of the "pin" term in connection with its travel planning services infringes any valid trademark or other legal right of Pinterest, and Pintrips' activities and conduct do not constitute unfair competition.

184. Pintrips' use of the term "pin" in a generic sense is consistent with prevailing practice, as demonstrated below:



Attached hereto as Exhibit 1 are screenshots from pintrips.com.

## COUNT I
## DECLARATORY JUDGMENT
### ("PIN")

185. Pintrips incorporates by reference its allegations in paragraphs 1 through 184 of its Counterclaims above as if fully set forth herein.

186. An actual, concrete and justiciable controversy exists concerning Pintrips' lawful use of the term pin and other pin-formative phrases.

187. The term "pin" is a common, generic term for pinning a virtual object on a user interface and cannot function as a mark.

188. The "pin" as used by Plaintiff is a functional term describing an action taken in the use of Plaintiff's online bulletin board.

189. Accordingly, Pintrips is entitled to a declaration that the alleged mark "pin" is not and cannot be a valid mark and that Plaintiff does not have and cannot have the exclusive right to use the term "pin" for pinning a virtual object on a user interface.

**COUNT II**
**DECLARATORY JUDGMENT**
**("PIN IT")**

190. Pintrips incorporates by reference its allegations in paragraphs 1 through 189 of its Counterclaims above as if fully set forth herein.

191. An actual, concrete and justiciable controversy exists concerning Pintrips' lawful use of the term pin and other pin-formative phrases.

192. The term "pin it" is a common, generic phrase for pinning a virtual object on a user interface and cannot function as a mark.

193. The "pin it" as used by Plaintiff is a functional phrase describing an action taken or to be taken in the use of Plaintiff's online bulletin board.

194. Accordingly, Pintrips is entitled to a declaration that the alleged mark "pin it" is not and cannot be a valid mark and that Plaintiff does not have and cannot have the exclusive right to use the term "pin it" for pinning a virtual object on a user interface.

**COUNT III**
**DECLARATORY JUDGMENT**
**("THE GRAPHIC IMAGE OF A PIN")**

195. Pintrips incorporates by reference its allegations in paragraphs 1 through 194 of its Counterclaims above as if fully set forth herein.

196. An actual, concrete and justiciable controversy exists concerning Pintrips' lawful use of a graphic image of a pin.

197. The graphic image of a pin is a common, generic visual representation for pinning a virtual object on a user interface and cannot function as a mark.

198. Accordingly, Pintrips is entitled to a declaration that the alleged mark consisting of a graphic image of a pin is not and cannot be a valid mark and that Plaintiff does not have and cannot have the exclusive right to use the icon for pinning a virtual object on a user interface.

**COUNT IV**
**DECLARATORY JUDGMENT**
**(Cancellation of Federal Trademark Registration)**

199. Pintrips incorporates by reference its allegations in paragraphs 1 through 198 of its Counterclaims as though fully set forth herein.

200. Plaintiff is the purported owner of U.S. Trademark Registration No. 4,145,087 issued on May 22, 2012 for the alleged mark PINTEREST (the "'087 Registration") for "PINTEREST."

201. Pintrips makes this claim for cancellation of the '087 Registration pursuant to 15 U.S.C. §§ 1064, 1119, 1127.

202. Upon information and belief, Pinterest allows tens of thousands of third parties to use the PINTEREST mark in connection with their goods and services.

203. Upon information and belief, Pinterest's use guidelines contain no express right to inspect and supervise these random licensees' services and goods.

204. Upon information and belief, the use guidelines do not allow Pinterest to terminate the license agreement if the licensee is producing inferior goods or services.

205. Upon information and belief, Pinterest has not actually exercised control over the quality of its licensees' goods and services and has not actually inspected the licensees' goods and services.

206. By virtue of this license and its failure to exercise actual control over the use of "Pinterest" or the nature or quality or such use, Pinterest has abandoned its mark.

207. The '087 Registration has been abandoned due to extensive naked licensing to third parties, and therefore the registration is subject to cancellation. *See FreecycleSunnyvale v. Freecycle Network*, 626 F.3d 509, 515 (9th Cir. 2010).

**COUNT V**
**DECLARATORY JUDGMENT**
**(Cancellation of Federal Trademark Registration)**

208. Pintrips incorporates by reference its allegations in paragraphs 1 through 207 of its Counterclaims as though fully set forth herein.

209. Plaintiff is the purported owner of U.S. Trademark Registration No. 4,553,185 issued on June 17, 2014 for the alleged mark PIN (the "'185 Registration") for "PIN."

210. Pintrips makes this claim for cancellation of the '185 Registration pursuant to 15 U.S.C. §§ 1064, 1119, 1127.

211. Upon information and belief, "pin" is a generic and/or functional term for pinning a virtual object on a user interface.

212. By virtue of the widespread common usage of the generic term "pin", the PIN mark cannot function to identify Pinterest as the single source of that mark, and therefore the '185 Registration is subject to cancellation under 15 U.S.C. § 1064(3).

213. Upon information and belief, Pinterest allows tens of thousands of third parties to use the PIN mark in connection with their goods and services.

214. Upon information and belief, Pinterest's use guidelines contain no express right to inspect and supervise these random licensees' services and goods.

215. Upon information and belief, the use guidelines do not allow Pinterest to terminate the license agreement if the licensee is producing inferior goods or services.

216. Upon information and belief, Pinterest has not actually exercised control over the use of, or the nature or quality of its licensees' goods and services and has not actually inspected the licensees' goods and services.

217. By virtue of this license and its failure to exercise actual control over quality, Pinterest has abandoned its mark.

218. The '185 Registration has been abandoned due to extensive naked licensing to third parties, and therefore the registration is subject to cancellation. *See FreecycleSunnyvale v. Freecycle Network*, 626 F.3d 509, 515 (9th Cir. 2010).

**COUNT VI**
**DECLARATORY JUDGMENT**
**(Pintrips' Right to Register and Use the PINTRIPS Mark)**

219. Pintrips incorporates by reference its allegations in paragraphs 1 through 218 of its Counterclaims as though fully set forth herein.

220. An actual, concrete and justiciable controversy exists concerning Pintrips' registration and lawful use of its PINTRIPS mark in the advertising, promotion and sale of travel planning services.

221. Pintrips is entitled to a declaration that it may register and use the PINTRIPS mark in connection with travel services, and that Counterdefendant is not entitled to enjoin or prevent such use or registration.

**PRAYER FOR RELIEF**

WHEREFORE, Counterclaimant, Pintrips, respectfully prays that this Court enter an Order and judgment for Pintrips and against Counterdefendant, Pinterest, as follows:

A.     That the alleged mark "pin" is not and cannot be a valid mark and that Plaintiff does not have and cannot have the exclusive right to use the term "pin" for pinning a virtual object on a user interface;

B.     That the alleged mark "pin it" is not and cannot be a valid mark and that Plaintiff does not have and cannot have the exclusive right to use the term "pin it" for pinning a virtual object on an user interface;

C.     That the alleged mark consisting of a graphic image of a pin is not and cannot be a valid mark and that Plaintiff does not have and cannot have the exclusive right to use the icon for pinning a virtual object on an user interface;

D.     A declaration that this case is exceptional under 15 U.S.C. § 1117(a)(3);

E.      That U.S. Trademark Registration No. 4,145,087 be cancelled;

F.      That U.S. Trademark Registration No. 4,553,185 be cancelled;

G.      That Pintrips may register and use the PINTRIPS mark in connection with travel services, and that Pinterest is not entitled to enjoin or prevent such registration;

H.      That Pintrips be awarded its costs of pursuing its Counterclaims, together with reasonable attorneys' fees as may be allowed by applicable law and/or the equity powers of this Court; and

I.       That Pintrips be awarded such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

Pintrips hereby demands a trial by jury on all issues so triable, including Plaintiff's claims for relief and Pintrips' Counterclaims pursuant to Rule 38 of Federal Rules of Civil Procedure and Civil L.R. 38-1.

Dated:          September 11, 2014          Respectfully submitted,

By: */s/ Frank L. Bernstein*

Edward T. Colbert (Admitted to Practice)
KENYON & KENYON LLP
1500 K Street, N.W.
Washington, D.C. 20005
Telephone: (202) 220-4200
Facsimile: (202) 220-4201
Email: ecolbert@kenyon.com

Frank L. Bernstein (SBN 189504)
KENYON & KENYON LLP
1801 Page Mill Road, Suite 210
Palo Alto, California 94304
Telephone:  (650) 384-4700
Facsimile:  (650) 384-4701
Email: fbernstein@kenyon.com

*Attorneys for Defendant and
Counter-Plaintiff Pintrips, Inc.*