UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PINTEREST, INC.,<br><br>        Plaintiff,<br>    v.<br><br>PINTRIPS, INC.,<br><br>        Defendant. | Case No. 13-cv-04608-RS   (KAW)<br><br>**ORDER REGARDING DISCOVERY LETTER BRIEFS**<br><br>Re: Dkt. No. 72, 91 |

## I.   INTRODUCTION

Pinterest, Inc. ("Plaintiff") and Pintrips, Inc. ("Defendant") dispute whether Plaintiff's Deputy General Counsel, Anthony Falzone, may be properly nominated as "Designated House Counsel" under the stipulated protective order entered in this case.[1] The Court held a hearing on the matter on September 4, 2014. Following the hearing, the Court ordered Mr. Falzone to prepare a declaration that details his duties and responsibilities. On September 26, 2014, the parties filed Mr. Falzone's declaration, along with a brief updated joint letter. After reviewing the declaration, the Court issued an order stating that Mr. Falzone appeared to be engaged in competitive decision-making and giving the parties the option of an evidentiary hearing on the issue, which the parties elected not to pursue. As the matter is now ripe for ruling, the Court

---

[1] That order defines "Designated House Counsel" as "House Counsel who seek access to 'HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY' information in this matter." Aug. 19, 2014 Joint Ltr., Ex. A, Stipulated Protective Order ¶ 2.4, Dkt. No. 72. It limits disclosure of attorneys' eyes only information to Designated House Counsel who, among other things "has no involvement in competitive decision-making" and "to whom disclosure is reasonably necessary for this litigation." *Id.* ¶ 7.4(a).

concludes that Plaintiff may not nominate Mr. Falzone as "Designated House Counsel" under the stipulated protective order entered in this case. The Court's reasons are set forth below.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 26(b)(1) permits "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." The information sought "need not be admissible at the trial" so long as it "appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* A producing party may ask the Court to minimize its burden to turn over discoverable information by ordering "that a trade secret or other confidential research, development, or commercial information need not be revealed or revealed only in a specified way." Fed. R. Civ. P. 26(c). In that instance, the producing party bears the burden of showing that such protection is warranted. *City of Oakland v. SSA Terminals, LLC*, No. C 11-1446 YGR (MEJ), 2012 WL 1414075, at *2 (N.D. Cal. April 23, 2012). The Court must balance the risk of inadvertent disclosure of trade secrets to competitors against the risk that the protection of such information will impair a plaintiff's ability to prosecute its case. *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992) (no abuse of discretion where magistrate judge held an evidentiary hearing, during which in-house counsel testified, prior to issuing a protective order limiting access to attorneys' eyes only information).

In *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1467 (Fed. Cir. 1984), the Federal Circuit rejected the view that access to confidential information "may be denied solely because of counsel's in-house status." It noted the concern that "there is a greater likelihood of inadvertent disclosure by lawyers who are employees committed to remain in the environment of a single company," but reasoned that "[d]enial or grant of access, however, cannot rest on a general assumption that one group of lawyers are more likely or less likely inadvertently to [*sic*] breach their duty under a protective order." *Id.* at 1467-68. The Federal Circuit thus concluded that "the factual circumstances surrounding each individual counsel's activities, association, and relationship with a party, whether counsel be in-house or retained, must govern any concern for inadvertent or accidental disclosure." *Id.* In the context of in-house counsel who is engaged in competitive decision-making, the Federal Circuit cautioned that it "may well be that a party

seeking access should be forced to retain outside counsel or be denied the access recognized as needed." *Id.* at 1468. The Federal Circuit defined "competitive decision-making" as "shorthand for a counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decision (pricing, product design, etc.) made in light of similar or corresponding information about a competitor." *Id.*

In resolving this type of dispute, the Court must determine whether knowledge of the trade secrets at issue would place counsel in the "untenable position" of either refusing his employer legal advice or revealing the sensitive information. *Intel Corp. v. VIA Tech, Inc.*, 198 F.R.D. 525, 530-31 (N.D. Cal. 2000) (citing *Brown Bag*, 960 F.2d at 1472). "The concern for inadvertent disclosure is particularly acute where the party seeking access to the information is a direct competitor." *Adobe Systems, Inc. v. Davachi*, No. C 10-03575 SC (LB), 2011 WL 2610170, at *5 (N.D. Cal. July 1, 2011) (citing *U.S. Steel Corp.*, 730 F.2d at 1468 n.3).

### III.   DISCUSSION

According to Plaintiff, "Mr. Falzone is not involved in deciding how to compete with business rivals on pricing, design, or other business issues." (Aug. 19, 2014 Joint Ltr. at 3.) Plaintiff asserts that Mr. Falzone reports to the General Counsel, not to any business or operations manager, and that his role is to assess and advise on legal risks, not on business strategy. *(Id.)* Based on these descriptions of Mr. Falzone's position, Plaintiff contends that Mr. Falzone is not engaged in competitive-decision making. *(Id.)* As Defendant argues, Mr. Falzone's declaration implies that this is simply not the case.[2] (Sept. 26, 2014 Joint Ltr. at 3.)

In his declaration, Mr. Falzone describes his role as follows. He reports to Michael Yang, Plaintiff's General Counsel. (Sept. 26, 2014 Joint Ltr., Ex. A, Falzone Decl. ¶ 2, Dkt. No. 91.) He

---

[2] The Court, however, rejects Defendant's argument that because Mr. Falzone possesses unlimited authority to settle this case, which involves a competitor, he is necessarily a competitive decision-maker. Aug. 19, 2014 Joint Ltr. at 6, 7. Defendant has not cited any legal authority in support of this position, and the Court is unconvinced that, as Defendant puts it, the "simple syllogism" demonstrates Mr. Falzone a competitive decision-maker as a matter of law. This would make any attorney who attends a settlement conference with unlimited authority to settle a case involving a competitor a competitive decision-maker. This is unworkable. An in-house lawyer who, for example, strictly manages a company's litigation could possess unlimited authority to settle a case involving a competitor, attend a settlement conference intending to exercise such authority, but nonetheless fail to meet the definition of a competitive decision-maker.

explains that "[t]he small size of [the Company's] legal team and the dynamic nature of the industry [they] work in require each one of [them] to cover a lot of ground." (*Id.* ¶ 5.) Among other things, he is "responsible for setting and executing the Company's worldwide strategy on all aspects of intellectual property, including copyright, trademark and trade secret matters. This includes protecting the Company's intellectual property and advising it on its intellectual property rights, as well as on the intellectual property rights of others." (*Id.* ¶ 5.a.) He also "provide[s] legal counseling to product teams to help them identify, assess and minimize legal risk in the products they're developing, and to ensure [the Company's] products comply with applicable legal requirements (e.g., privacy rules, COPA requirements relating to age restrictions, CAN-SPAM issues, etc.)." (*Id.* ¶ 5.e.)

Mr. Falzone also denies that he engages in competitive decision-making. He states that in the area of intellectual property, he "may advise the Company on whether a new product qualifies for copyright or patent protection, or what [they] need to do to comply with specific statutory requirements. But [he is] not involved in deciding what new products to develop, or how to market or price them." (*Id.* ¶ 7.) In the area of litigation, he "will advise the Company on whether it has viable claims against another business entity and whether to pursue them. But [he is] not involved in identifying competitors or in devising business strategies for dealing with them." (*Id.*) With respect to the subject of this litigation, Mr. Falzone also declares that he "advised business and product teams on legal issues relating to 'Place Pins' (including for example copyright, trademark, contract and privacy issues), but [he] was not involved in the Company's decision to develop 'Place Pins,' and [he] was not involved in designing or testing the product or deciding how to market it." (*Id.* ¶ 8.)

Here, it is undisputed that Plaintiff and Defendant are competitors in the travel sector. In light of this, Mr. Falzone's substantial role on the legal team, his control over Plaintiff's intellectual property, his influence over whether Plaintiff will pursue litigation against another business entity, and his advisory work with product teams presents a real risk that he will find himself in the "'untenable position' of either refusing his employer legal advice or revealing [Defendant's] sensitive information." *See Adobe Systems, Inc.*, 2011 WL 2610170, at *5 ("The concern for

4

inadvertent disclosure is particularly acute where the party seeking access to the information is a direct competitor."); *Intel*, 198 F.R.D. at 531 ("The potential injury from inadvertent disclosure of [Defendant's] trade secrets in this case would be great, because the information could be used to duplicate [Defendant's] products, compete for its customers, or interfere with its business plan and thereby gain a competitive advantage in the marketplace."). Put another way, there is a risk that Mr. Falzone will have in interest in the protected information beyond the current litigation. This is especially so given that his client has recently entered the market in which Defendant operates.

      Any harm to Plaintiff, however, is non-existent. It has competent outside counsel that has been involved in this case from the outset. "Requiring a party to rely on its competent outside counsel does not create an undue or unnecessary burden." *Intel Corp.*, 198 F.R.D. at 529 (internal quotations omitted); *see Brown Bag Software*, 960 F.2d at 1471 (no prejudice where outside counsel had sufficient time and resources to review confidential information and was presumably competent to evaluate the information). Plaintiff has not advanced a persuasive argument why Mr. Falzone must have access to Defendant's attorneys' eyes only information, or why he is otherwise critical to the prosecution of its case. That Plaintiff prefers to closely supervise its outside counsel, *see* Joint Ltr. at 4 n.1 ("Plaintiff has a strong need for the supervision of fully informed in-house counsel."), *see* Falzone Decl. ¶ 9 ("I consider it especially important that I be in a position to supervise [Harvey Siskind LLP] closely."), is insufficient to justify risking the inadvertent disclosure of Defendant's attorneys' eyes only information. The argument that Plaintiff's ability to prosecute its case would be impaired because Mr. Falzone would not have access to important information that would help him understand the strengths of Plaintiff's claims and could inform his decision to settle is also unavailing. Competent counsel routinely facilitate the settlement of cases, even when it is only a company principal, who, without access to attorneys' eyes only information, possesses the authority to resolve litigation.

      Here, then, it is appropriate to deny Mr. Falzone access to Defendant's attorneys' eyes only information. The risk of inadvertent disclosure outweighs any possible prejudice to Plaintiff's ability to prosecute its case. *See Adobe Systems Inc.*, 2011 WL 2610170, at *3 ("Where a counsel is involved in 'competitive decision-making,' and denial of the information would not prejudice the

ability of that party to litigate its case, courts generally deny that counsel access to the information.") (citation omitted).

### IV.   CONCLUSION

For the reasons set forth above, Mr. Falzone may not be nominated as "Designated House Counsel" under the stipulated protective order entered in this case.

**IT IS SO ORDERED.**

Dated: 10/21/2014

                                                                     _____
KANDIS A. WESTMORE
United States Magistrate Judge