UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PINTEREST, INC., <br><br> Pinterest, <br><br> v. <br><br> PINTRIPS, INC., <br><br> Pintrips. | Case No. 13-cv-04608-RS (KAW) <br><br> **ORDER GRANTING MOTION FOR SANCTIONS** <br><br> Re: Dkt. No. 102 |

Pinterest, Inc. moves for sanctions against Pintrips, Inc. and its law firm, Kenyon and Kenyon LLP, pursuant to Federal Rule of Civil Procedure 37 and Civil Local Rule 37-4. Pintrips opposes the motion. For the reasons set forth below, the motion is GRANTED.

## I. BACKGROUND

This motion for sanctions stems from Pintrips' deficient responses to Pinterest's First Set of Interrogatories,[1] and its subsequent noncompliance with two court orders on the subject. The parties initially sought intervention from this Court on May 30, 2014, when Pinterest requested a telephonic conference pursuant to Section 15 of this Court's General Standing Order. (Pl.'s Req., Dkt. No. 48.) Pinterest claimed that a telephonic conference was necessary because Pintrips had not cooperated in the filing of a joint letter concerning its responses to Pinterest's First Set of Interrogatories. *(Id.)* Pinterest withdrew its request for a telephonic conference on June 2, 2014, stating that Pintrips had provided supplemental information in response to the interrogatories and agreed to cooperate in the filing of a joint letter, which was docketed that same day. (Pl.'s Notice, Dkt. No. 49.)

In the joint letter, the parties outlined their discovery dispute for the Court. (June 2, 2014,

---

[1] The interrogatories were deemed served on March 17, 2014. July 28, 2014 Joint Ltr., Dkt. No. 63.

Joint Ltr., Dkt. No. 50.)  The Court determined that the parties had not sufficiently met and conferred, and it ordered the parties to do so in person, and in good faith, to reach a resolution. (June 9, 2014 Order at 1, Dkt. No. 51.)  To guide the parties' meet and confer efforts, the Court also ordered Pinterest to consider whether its interrogatories, as written, were sufficiently detailed to invite a meaningful response.  (*Id.* at 1.)  In addition, Pinterest was to identify the interrogatories for which supplemental responses were appropriate, and Pintrips was to provide further verified responses.  (*Id.*)  The parties were permitted to file an updated joint letter if they were unsuccessful in resolving their dispute.  (*Id.*)

That joint letter followed on July 28, 2014.[2]  (July 28, 2014 Joint Ltr., Dkt. No. 63.)  In the filing, the parties identified the two interrogatories giving rise to their dispute.  (*Id.*)  The first interrogatory at issue asks that Pintrips "[i]dentify all communications between You and any third party which refer or relate to Pinterest."  (*Id.* at 11, Interrog. No. 16.)  The second interrogatory at issue is similar; it reads:  "Identify all communications between You and any third party which refer or relate to the above-captioned action."  (*Id.* at 12, Interrog. No. 17.)  Pintrips' response to both interrogatories was identical:

> [M]embers of the press have interviewed Stephen Gotlieb on several occasions.  In addition, Stephen Gotlieb discussed the above-captioned litigation with potential investors and certain advisors on several occasions.

(*Id.* at 12.)

In the joint letter, Pinterest argued that Pintrips should be required to disclose the names, locations, and employers of the potential investors, certain advisors, and anyone else with whom Pintrips has communicated about this trademark dispute.  (*Id.* at 2.)  Pintrips, in turn, expressed its objection to providing the requested information.  (*Id.* at 7.)  It claimed:

> As a small startup, Pintrips has little to no revenue, and relies on investors for the necessary funds to continue to build its business.  Involving investors in this litigation has the clear potential of alienating the investors and cutting off Pintrips' funding.  The effect on Pintrips' business would be more than burdensome and oppressive; it would be catastrophic.  If Pintrips were even to ask the investors if they would object to being identified in discovery responses, Pintrips would run the

---

[2] The Court terminated an earlier version of the parties' joint letter because it did not include the specific interrogatories and responses at issue and did not adhere to the formatting requirements described in the Court's General Standing Order.  July 18, 2014 Order at 1, Dkt. No. 60.

risk of losing funding.

(*Id.* at 7.)

On August 7, 2014, the Court issued an order resolving the parties' discovery dispute. (Aug. 7, 2014 Order, Dkt. No. 68.) The Court reasoned that the potential investors and certain advisors with whom Pintrips has discussed this case may have information on the issue of Pintrips' intent, which is one of the elements a court may consider in connection with Pinterest's claim for trademark dilution. (*Id.* at 3 (citing 15 U.S.C. § 1125(c)(2)(B)(v).) The Court rejected Pintrips' arguments that identifying these individuals would result in catastrophic harm and dismissed Pintrips' assertion that such disclosure would risk funding for its venture as speculation. (*Id.*) The remainder of the Court's August 7 order reads:

> Accordingly, Pintrips shall supplement its responses to interrogatory numbers 16 and 17 with the names and locations of the potential investors and certain advisors it referred to in its interrogatory responses. Pintrips, however, need not supply any information relating to these individuals' employers. That information is not necessary to satisfy Rule 26(b)(1), which allows for discovery of "the identity and location of persons who know of any discoverable matter."

(Aug. 7, 2014 Order at 4.)

Pintrips did not comply. Instead, it moved for a protective order (1) requiring Pinterest to "seek leave of the Court before issuing any subpoenas or otherwise attempting to contact any of the investors and/or potential investors that Pintrips *will* identify pursuant to the Court's Order of August 7, 2014 (Dkt. No. 68)," (2) providing Pintrips "the opportunity to respond to any such leave that Pinterest may seek," and (3) giving Pintrips three "business days to notify the investor or potential investor that a subpoena will be forthcoming, prior to Pinterest issuing the subpoena." (Def.'s Mot. Protective Order at 3, 4, Dkt. No. 73 (emphasis supplied); Proposed Order, Dkt. No. 73-1.)[3]

Pintrips argued that such an order was warranted for three reasons. First, it claimed that Pinterest should be required to propound discovery on already-identified sources before seeking

---

[3] In its motion, Pintrips made sure to express its intent to comply with the Court's August 7 order, upon which it had yet to act because of Pinterest's supposed discovery tactics. Def.'s Mot. Protective Order at 3, 5.

3

information from third-party investors. (*Id.* at 6, 7.) Second, it argued that Pinterest was deliberately raising the costs of litigation by not following this approach.[4] (*Id*. at 8.) Third, Pintrips asserted that permitting Pinterest to propound discovery on third-party investors posed a serious threat to its business, which according to its founder and CEO, cannot generate revenue sufficient to meet its capital needs. (*Id.* at 9; Gotlieb Decl. ¶ 8 ("[Pintrips] relies on investor funding for the capital necessary to develop its business. Revenues to date for [Pintrips] are insufficient to supply that capital.").)

In ruling on Pintrips' motion for a protective order, the Court referred back to its August 7 order and reiterated that Pintrips' concern about investors withdrawing funding or deterring potential investors from providing funding was speculation. (Sept. 4, 2014 Order at 2, Dkt. No. 83.) It also rejected the argument that Pinterest was engaging in a fishing expedition or other conduct warranting judicial intervention. (*Id.* at 3.) The Court thus denied Pintrips' motion for a protective order, as it had not made the requisite showing. (*Id.* at 3-4.) Pintrips was to "supplement its responses to interrogator[y] nos. 16 and 17, as set forth in this Court's August 7, 2014 order, by no later than September 8, 2014." (*Id.* at 4.)

When Pintrips failed to comply a second time, Pinterest moved for sanctions.[5] (Pl.'s Mot., Dkt. No. 102.) Pintrips filed its opposition to the motion on November 12, 2014. (Def.'s Opp'n, Dkt. No. 106.) Pinterest's reply followed on November 19, 2014. (Pl.'s Reply, Dkt. No. 109.) The Court held a hearing on the motion on December 18, 2014.

---

[4] Pintrips further contended that Pinterest wanted "to get at [its] investors, jeopardize [its] sources of funding, and put [it] out of business." Def.'s Mot. Protective Order at 2. Pintrips claimed that it had identified three advisors during discovery, and that if Pinterest "really wanted to obtain information from third parties regarding [Pintrips'] communications with its advisors," it could have obtained the information from the advisors Pintrips lists on its website." *(Id.)*

[5] Pinterest initially moved for sanctions on August 27, 2014, and the parties stipulated to having the motion heard on shortened time. Pl.'s Mot. Sanctions, Dkt. No. 76. The Court, however, did not hear the motion on shortened time and ordered Pinterest to re-notice its motion for hearing according to Civil Local Rule 7-2. Aug. 29, 2014 Order, Dkt. No. 79. It was not until after the Court issued another order, warning that the motion would be deemed withdrawn, that Pinterest re-noticed its motion. Oct. 17, 2014 Order, Dkt. No. 96. The purported re-notice, however, was improper. The filing was actually an amended motion for sanctions. *See* Dkt. No. 100. Pinterest finally filed its motion using the correct docketing event on October 28, 2014, nearly two months after the Court had first ordered it to re-notice its motion.

United States District Court
Northern District of California

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 37 provides:

> If a party or a party's officer, director, or managing agent--or a witness designated under Rule 30(b)(6) or 31(a)(4)--fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:
> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> (iii) striking pleadings in whole or in part;
> (iv) staying further proceedings until the order is obeyed;
> (v) dismissing the action or proceeding in whole or in part;
> (vi) rendering a default judgment against the disobedient party; or
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2). The rule also authorizes the court where the action is pending to order sanctions when:

> (i) a party or a party's officer, director, or managing agent--or a person designated under Rule 30(b)(6) or 31(a)(4)--fails, after being served with proper notice, to appear for that person's deposition; or
> (ii) a party, after being properly served with interrogatories under Rule 33 or a request for inspection under Rule 34, fails to serve its answers, objections, or written response.

Fed. R. Civ. P. 37(d)(1)(A). "Sanctions may include any of the orders listed in Rule 37(b)(2)(A)(i)-(vi)," and "[i]nstead of or in addition to these sanctions the court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(d)(3).

In this district, Civil Local Rule 37-4 requires a party seeking sanctions, including an award of attorneys' fees, in connection with a dispute about disclosure or discovery under Rule 37 to file a declaration: (1) stating the facts and circumstances supporting the motion, (2) describing the party's efforts to secure compliance without court intervention, and (3) "itemiz[ing] with particularity the otherwise unnecessary expenses, including attorney fees," incurred as a result of the other party's violation. The moving party must also provide appropriate justification for the hourly rates claimed. *(Id.)*

5

### III. DISCUSSION

Here, Pinterest seeks sanctions based on Pintrips' failure to comply with two orders of this Court and its "related gamesmanship." (Pl.'s Mot. at 1, Dkt. No. 102.) Specifically, it claims that Pintrips has not identified the certain advisors with whom its CEO has discussed Pinterest or this litigation. (*Id.* at 1, 2; 1st Thompson Decl. ¶¶ 19, 22, Dkt. No. 102-1.) It seeks an order requiring Pintrips and its law firm to pay at least $26,250 in attorneys' fees incurred as a result of their failure to do so.[6] (Pl.'s Reply at 4, Dkt. No. 109; Levich Decl. ¶ 6, Dkt. No. 110.)

In its opposition, Pintrips argues that it provided the requested information months ago. (Def.'s Opp'n at 1.) It asserts that it has not disobeyed or otherwise failed to comply with any court order. *(Id.)* According to Pintrips:

> Pintrips' list of advisors is publicly available, on Pintrips' Web site, and has been during the time that Pinterest has sought the identity of those advisors. Pintrips drew Pinterest's attention to this in Pintrips's Motion for a Protective Order, filed August 21, 2014. Dkt. 73, p. 2, referring to http://www.pintrips.com/#/about_us. Bernstein Declaration, Ex. 1. So what Pinterest is complaining about, at best, is that Pintrips has not put, in an interrogatory response, publicly available information.

(Def.'s Opp'n at 1-2.)

    1. <u>Pintrips has not answered interrogatory numbers 16 and 17 as ordered by the Court.</u>

Pintrips' position is not persuasive. Indeed, the Court noted this argument when it denied the motion for a protective order. (*See* Sept. 4, 2014 Order at 1 n.1 ("[Pintrips] asserts that it has identified three advisors during discovery, and that if [Pinterest] 'really wanted to obtain information from third parties regarding [Pintrips'] communications with its advisors' it could have obtained the information from the advisors [Pintrips] lists on its website.").) Notwithstanding that argument, the Court ordered Pintrips to "supplement its responses to interrogator[y] nos. 16 and 17, as set forth in this Court's August 7, 2014 order." (Sept. 4, 2014 Order at 4.)

Pintrips' most recent responses to interrogatory numbers 16 and 17 are dated October 22, 2014. (1st Thompson Decl. ¶ 22 & Ex. K at 3.) That list consists of the names of 64 "investors

---

[6] Pinterest also asks that Pintrips be held in contempt unless and until it obeys this Court's orders. Pl.'s Mot. at 2-3. Pinterest, however, has not briefed any of the applicable factors, and the Court declines to marshal arguments on the party's behalf.

6

and potential investors." (1st Thompson Decl. Ex. K at 3.) It does not include names of any of the "certain advisors" with whom Pintrips has admittedly discussed Pinterest or this litigation, and Pintrips cannot point to any interrogatory response in which it identifies the certain advisors at issue. Nor has it directed the Court to any legal authority that stands for the proposition that a party need not respond to a propounded interrogatory where the information responsive to that interrogatory is publicly-available on the Internet.

For these reasons, Pintrips has not answered interrogatory numbers 16 and 17 as required by this Court's previous orders.

### 2. Pintrips' conduct was not substantially justified.

During the hearing on the motion, Pintrips began by explaining, unsuccessfully, why it believed that it had complied with the Court's prior orders. It then proceeded to offer unacceptable excuses for its noncompliance.

Pinterest first argued that an award of expenses would be unjust given its belief that it had complied with the Court's orders when it incorporated its September 4, 2014 list of "investors and potential investors" into a formal supplemental interrogatory response, dated October 22, 2014. This belief is unfounded. According to Pintrips, the parties had reached an understanding that all Pintrips needed to do to sufficiently respond to interrogatory numbers 16 and 17 was to formalize the September 4, 2014 list as a supplemental interrogatory response. Pintrips represents that it did so on October 22, 2014, and as a result, thought it had complied with the Court's orders. Yet, when asked whether the list of investors and potential investors included in its October 22, 2014 responses included the names of the certain advisors at issue, Pintrips responded, "no."[7]

Pintrips then asserted that identifying the certain advisors its CEO alluded to in the company's interrogatory responses was a matter of "burden and memory tests." This is unconvincing. An earlier version of Pintrips' interrogatory responses indicated that Mr. Gotlieb discussed the above-captioned litigation with potential investors and certain advisors on several

---

[7] At one point during the hearing, Pintrips indicated that some of the potential investors and investors are also advisors. This, however, is not indicated on either the September 4, 2014 list or in the October 22, 2014 interrogatory response.

7

occasions, so he remembers talking to these certain advisors. (July 28, 2014 Joint Ltr., Dkt. No. 63.) After all, he has repeatedly emphasized that his company is a "small, closely-held start-up." (*See* Dec. 9, 2014 Gotlieb Decl., Dkt. No. 120-1 ¶¶ 4, 5; *see also* Aug. 21, 2014 Gotlieb Decl. ¶ 8.) Pintrips' next argument—that identifying these certain advisors would have required it "to go through documents it had produced"—is equally unpersuasive. Pintrips has offered nothing to support its assertion that identifying these certain advisors was, as it claims, "virtually an impossible task."

In light of the above, the Court finds that Pintrips' conduct was not substantially justified.

3.  <u>There are no circumstances that would make an award of expenses unjust.</u>

Pinterest asks that Pintrips and its law firm pay at least $26,250[8] to cover the attorneys' fees incurred as a result of the Pintrips' failure to identify the certain advisors at issue. (Pl.'s Reply at 4, Dkt. No. 109; Levich Decl. ¶ 6, Dkt. No. 110.)

At the hearing on the motion, Pintrips argued that an award of expenses would be unjust given its belief that it had complied with the Court's orders when it incorporated its September 4, 2014 list of "investors and potential investors" into a formal supplemental interrogatory response, dated October 22, 2014. As discussed above, this belief is unfounded. The Court does not understand how Pintrips could maintain such a belief when, in open court, it admitted that the certain advisors alluded to in Pintrips' initial responses were not identified anywhere in the company's October 22, 2014 supplemental responses. The only plausible explanation here is that Pintrips simply refused to name those advisors and did so in outright defiance of this Court's orders.

In this case, then, the Court finds that there are no circumstances that would make an award of expenses unjust.

4.  <u>Reasonableness of attorneys' fees</u>

Pinterest has established its entitlement to an award of sanctions. The next issue to be decided is whether the Court should award sanctions based on the total amount of attorneys' fees

---

[8] As discussed below, Pinterest has increased this figure to $31,962.50 in its most recent filing.

Pinterest attributes to Pintrips' misconduct.

Courts in the Ninth Circuit calculate an award of attorney's fees using the lodestar method, whereby a court multiplies "the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) (citation omitted). A party seeking attorneys' fees bears the burden of demonstrating that the rates requested are "in line with the prevailing market rate of the in the community." *Id.* Typically, affidavits of counsel "regarding prevailing fees in the community and rate determinations in other cases . . . are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990) (citation omitted). The "community is the forum in which the district court sits." *Camacho*, 523 F.3d at 979 (citation omitted).

Pinterest originally requested sanctions in the amount of $22,125 based on the following: "**about** 26 hours [spent] preparing two motions for sanctions about Pintrips' responses to interrogatory numbers 16 and 17 . . . , **about** 14 hours [spent] on an opposition to a related motion for a protective order . . . , **at least** 7 hours [spent] meeting and conferring with opposing counsel about Pintrips's responses to interrogatory numbers 16 and 17 . . . , and **about** 12 hours [spent] on joint letters about Pintrips's responses to interrogatory numbers 16 and 17." (Pl.'s Mot. at 3; 1st Thompson Decl. ¶ 1.) Pinterest then amended that amount to $26,250, for the additional $3,000 in attorney's fees it incurred "for review of the opposition brief and preparation of the reply brief on this motion," and the additional $1,125 it "expect[ed] to incur . . . for attending at the hearing on this motion." (Pl.'s Reply at 4; Levich Decl. ¶ 6.)

At the hearing on the motion, the Court alerted Pinterest to the deficiencies in its submission. The Court noted that the supporting papers did not comply with Civil Local Rule 37-4(b)(3). That rule provides that a motion for sanctions must be accompanied by competent declarations which "itemize with particularity the otherwise unnecessary expenses, including attorney fees, directly caused by the alleged violation or breach, and set forth an appropriate justification for any attorney-fee hourly rate claimed" if attorney fees or other costs or expenses are requested. *Id.* The Court also explained that it could not determine the reasonableness of

9

claimed attorney fees based on estimates alone. In light of these deficiencies, the Court gave Pinterest the option of providing actual billing records or submitting a supplemental declaration that substantiated the amounts claimed, with the requisite particularity

Pinterest filed a supplemental declaration on December 23, 2014. (2d Thompson Decl., Dkt. No. 126.) In the filing, Pinterest once again requests an increased amount of attorneys' fees, this time increasing the total amount sought to $31,962.50. (*Id.* ¶ 42.) Even assuming that Pinterest could be entitled to that amount despite its failure to request it in its original moving papers, the Court finds that only $9,075 is a reasonable amount of attorney fees to award as a sanction.

The reduction is not based on the reasonableness of the hourly rates claimed, $375.00 for Mr. Thompson, and $350.00 for Ms. Levich, or the reasonableness of the hours billed for particular tasks. This Court is aware of the prevailing rates in the community for similar services performed by attorneys of comparable skill, experience, and reputation, and it finds that both the hourly rates claimed and the hours billed for specific tasks are reasonable. *See, e.g., Recouvreur v. Carreon*, 940 F.Supp.2d 1063, 1070 (N.D. Cal. 2013) (finding an ordinary billing rate of $300 per hour reasonable for a lawyer in private practice); *see also* 2d Thompson Decl., Ex. B. Rather, the reduction is warranted based on the Pinterest's failure to remedy the deficiencies the Court highlighted during the hearing on the motion, namely, that relying on estimates is insufficient, as it precludes the Court from properly scrutinizing the amounts claimed.

For example, the supplemental declaration contains such entries as:

Between August 22, 2014 and August 27, 2014, I spent **at least** 26 hours – valued at $9,750 – drafting, editing, and filing: (a) Pinterest's motion for sanctions arising from Pintrips's failure to comply with the Court Order dated August 7, 2014 (**at least** 16 hours); and (b) Pinterest's opposition to Pintrips's motion for a protective order that had been filed as an apparent pretext to delay its compliance with Court Order dated August 7, 2014 (**at least** 10 hours). *See* Dkt. ##76, 77. I cannot perfectly separate the time spent preparing the former motion from time spent opposing the latter motion, since I worked on both simultaneously and since they served complementary purposes. I found it particularly time consuming to prepare a statement of facts in support of the motion for sanctions since this required sorting through my extensive communications with opposing counsel to identify the most salient evidence (the same declaration was also cited in opposition to the motion for protective order). *See* Dkt. #76-1. I also found it particularly time

10

> consuming to edit both motions in order to convey as succinctly as possible how Pintrips's had engaged in sanctionable conduct and how Pinterest had not engaged in any conduct that warranted a protective order.
>
> . . .
>
> Between September 4, 2014 and October 28, 2014, I spent **at least** 8.5 hours – valued at $3,187.50 – preparing a second motion for sanctions to explain Pintrips's continued noncompliance with the Orders dated August 7, 2014 and September 4, 2014. *See* Dkt. #102. I note that by October 28, 2014, Pintrips had produced verified interrogatory responses identifying all of its "investors and potential investors" (but not advisors). In light of the changed circumstances, I did not consider it appropriate to re-notice the previously filed motion for sanctions without modification (which would risk misleading the Court). Accordingly, I considered a second motion for sanctions to be necessary.
>
> . . .
>
> Between November 12, 2014 and November 19, 2014, I spent **at least** 9.4 hours – valued at $3,525 – on the following tasks: (a) preparing an opposition to Pintrips's "motion to renew" Pinterest's motion to seal documents filed in support of Pinterest's motion for sanctions (**at least** 1.3 hours) (*See* Dkt. #108); (b) reviewing the opposition to Pinterest's second motion for sanctions (**at least** 0.2 hours) (*See* Dkt. #106); and (c) preparing a reply in support of Pinterest's second motion for sanctions (**at least** 7.8 hours) (*See* Dkt. #109). In connection with the third task, I found it particularly time-consuming to review Pintrips's document production (with the assistance of Ms. Levich) to find evidence which disproved certain representations that Pintrips had made in its opposition. Indeed, a careful review revealed the names of at least a dozen individuals with whom Pintrips had apparently communicated about Pinterest and this case. *See* Dkt. #110.

(2d Thompson Decl. ¶¶ 28, 34, 36 (emphasis supplied).)

It is unclear why Pinterest relied on estimates in its supplemental declaration. In the filing, counsel states in preparing it, he reviewed his firm's billing reports. (2d Thompson Decl. ¶ 1.) According to him, the reports "identify the dates services were performed, a description of the services performed that day, the name of the attorney who performed the services, the number of hours devoted to those services, and the monetary value of those services." *(Id.)* Yet, instead of providing the actual billing reports, which would have provided the Court will actual time expended on tasks, Pinterest has instead relied solely on its counsel's declaration. That declaration, however, seems internally inconsistent. On the one hand, counsel states that the firm's billing reports provide specifics. On the other hand, he provides estimates on the time he spent on certain tasks, and he gives a date range, rather than a date certain, during which he completed certain work. In light of this, then, the Court questions the accuracy of any estimates provided by

11

counsel, and given that Pinterest declined the Court's invitation to provide actual billing records,[9] the Court finds that Pinterest's use of estimates to substantiate its claimed attorneys' fees is inconsistent with the requirement that such fees be "itemize[d] with particularity." *See* Civil L.R. 37-4(b)(3). The Court, therefore, finds it appropriate to exclude these entries, which total **at least** $22,887.50, from Pinterest's attorney fee award.

## IV. CONCLUSION

For the reasons set forth above, Pinterest's motion for sanctions is GRANTED. Pintrips and its law firm, Kenyon and Kenyon LLP, are hereby sanctioned in the amount of $9,075. Both are jointly and severally liable for payment, which is to be made to Pinterest by no later than March 13, 2015.

**IT IS SO ORDERED**.

Dated: 01/12/15

_____
KANDIS A. WESTMORE
United States Magistrate Judge

---

[9] In his declaration, Plaintiff's counsel states that "[u]pon request, [he] would be pleased to file a redacted copy of [the] billing report in this matter with the Court." 2d Thompson Decl. ¶ 1. If Pinterest wished to rely on the billing report to support its claimed attorneys' fees, it should have been filed as an exhibit to the supplemental declaration. At the hearing on the motion, Pinterest was given the option of either providing actual billing records or a sufficiently detailed declaration that supported the amounts claimed. It has elected the latter. The Court will not now request information that Pinterest has had ample opportunity to provide.