# EXHIBIT A

1  HARVEY SISKIND LLP
   LAWRENCE J. SISKIND (SBN 85628)
2  Email: lsiskind@harveysiskind.com
   DONALD A. THOMPSON (SBN 260076)
3  Email: dthompson@harveysiskind.com
   JANE A. LEVICH (SBN 293299)
4  Email: jlevich@harveysiskind.com
   Four Embarcadero Center, 39th Floor
5  San Francisco, California 94111
   Telephone: (415) 354-0100
6  Facsimile: (415) 391-7124
7
8  Attorneys for Plaintiff
   PINTEREST, INC.
9

10              IN THE UNITED STATES DISTRICT COURT

11          FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                   SAN FRANCISCO DIVISION

13

14  PINTEREST, INC.,                     Case No. C 13-4608 HSG
    a Delaware corporation,
15                                        **PINTEREST'S TRIAL BRIEF**
                        Plaintiff,        **[Replaces Document No. 165-3 filed on 04/28/15]**
16
    v.                                    Pretrial Conference:   May 12, 2015, 3:00 pm
17
    PINTRIPS, INC.,                       Trial Begins:          May 18, 2015, 8:30 a.m.
18  a California corporation,
19                      Defendant.        Judge:                 Hon. Haywood S. Gilliam, Jr
20  AND RELATED COUNTERCLAIMS

21

22

23

24

25

26

27     This Trial Brief is ten pages per Court Order given at the Status Conference on March 10, 2015.

28

TRIAL BRIEF                                                    CASE NO. C 13-4608 HSG

1    This is a straightforward case of trademark infringement involving two confusingly similar

2  marks for online services: PINTEREST and PINTRIPS. Plaintiff Pinterest, Inc. ("Pinterest") adopted

3  its PINTEREST mark and launched its service in March 2010. Pinterest allows users to gather

4  content, including travel content, from the Internet and save it onto themed boards. Defendant

5  Pintrips, Inc. ("Pintrips") changed its name from Flightrax to Pintrips, and adopted its PINTRIPS

6  mark years later. Pintrips allows users to gather travel-related content from the Internet and save it

7  onto travel-related boards. In addition to its PINTEREST mark, Pinterest also uses other PIN-

8  formative marks, notably including PIN IT and PIN. In addition to its PINTRIPS mark, Pintrips also

9  uses a Pin button.

10    Evidence of confusion between PINTEREST and PINTRIPS abounds. Plaintiff anticipates

11  that Defendant will try to divert the Court's attention from this confusion by focusing on Plaintiff's

12  PIN mark, claiming it is generic. Defendant is wrong: PIN is a strong, suggestive, federally registered

13  mark. But Defendant has no choice. It must focus on the supposed genericness of PIN because it has

14  no defense for the undeniable confusing similarity of PINTEREST and PINTRIPS.

**FACTS**

16    Pinterest is one of the most successful Internet sensations in history. Launched in March

17  2010, it allows users to save, or "Pin," content from all over the Internet to their personal collections,

18  or "Pinboards." Each content file posted on these boards is called a "Pin." Almost from the start,

19  Pinterest was a hit, growing at the rate of 50% per month. In August 2011, Time Magazine featured it

20  as one of the top 50 websites of the year. By September 2011, enrolled users exceeded 1.3 million.

21  By February 2012, enrolled users exceeded 10 million. Today, about one quarter of all Americans

22  who use the Internet use Pinterest. Even the White House has nine boards on Pinterest, including

23  "The First Lady" and "The People's Pins."

24    One of the most popular categories on Pinterest is travel. Many people use Pinterest as a

25  travel-planning tool. Many airlines, hotels, and travel planning companies promote themselves on

26  Pinterest, including American Airlines, Southwest Airlines, Virgin America, Air France, Four

27  Seasons Hotels and Resorts, Trump Hotels, Airbnb, Travel + Leisure, Conde Nast Traveler, and

28  Travel Channel, to name just a few. Pinterest users have saved over a billion travel-related Pins.

1    Defendant was well aware of Pinterest's burgeoning success when it changed its name from

2  Flightrax to Pintrips, and adopted its PINTRIPS mark and Pin button. The changeover process began

3  at a conference among CEO Stephen Gotlieb and a group of advisors from June 8-10, 2011. During

4  the conference, advisor Ashley Raiteri phoned home and his wife suggested ███████████████

5  ███████ Raiteri did so, and then emailed a link to Gotlieb and the others, stating: ██████████

6  ███████████████████████ Gotlieb agreed: ████████████████████████

7  ████████████████████████████████████████████

8  ████████████████ This exposure to Pinterest led Gotlieb and his advisors to consider

9  changing their name from Flightrax to Pintrips.

10    But the decision to do so did not happen right away. During the summer and fall of 2011,

11  Gotlieb and his team considered other names to replace Flightrax, chief among them "Goodr," which

12  remained in contention until late 2011. In September 2011, they had 5 to 10 testers. In December

13  2011, they expanded to 25. Pintrips did not open to the public until November 2012.

14    Between June 2011, when they first became aware of Pinterest, and November 2012, when

15  they publicly launched Pintrips, Gotlieb and his team watched and envied the viral growth of

16  Pinterest. They were aware that the two names were confusingly similar – but, in view of Pinterest's

17  success, they saw such confusion as an advantage and welcomed it.

18    In December 2011, while they were testing the service, and long before it was publicly

19  accessible, Gotlieb's sister-in-law sent him an article and wrote: ████████████████████

20  ████████████████████████████████ When Gotlieb's mother-in-law

21  learned of Pinterest, ██████████████████████████████ And when this suit

22  arose, Sheila Bijoor, Pintrips' Chief Product Officer, commented ruefully on an article: ███████

23  ████████████████████████████████████████████

24    As soon as Pintrips went public, users began experiencing confusion. One befuddled Pintrips

25  user wrote: ██████████████████████████████████ Even search

26  engines became confused. When one performs a Google search for "pintrips pinboard," Google

27  responds: "Did you mean: pinterest pinboard?" When one asks Siri on an iPhone about the business

28  of Pintrips, she replies with information about Pinterest. *See* Exhibits A and B attached.

1    In the face of this confusion, Gotlieb could have chosen Goodr instead of Pintrips to replace

2  Flightrax. But Gotlieb did not mind this confusion. He welcomed it. When Eugene Mirkin joined

3  Pintrips as Chief Technology Officer, he told Gotlieb that Pintrips was "reminiscent of Pinterest."

4  Gotlieb responded: "It's a useful coincidence." Then the two men laughed.

5    Gotlieb strove to exploit this "useful coincidence." For their public beta launch, he and his

6  team prepared talking points which stressed the connection to Pinterest:

7  ███████████████████████████████████████████████

8  ███████████████████████████████

9  At conferences, Gotlieb mentioned that his company was ████████████ When an article

10  appeared entitled "Pintrips: If Pinterest and Kayak had a Child," he and his PR agent were thrilled

11  and proceeded to recirculate it. After Gotlieb was interviewed for a story about Pintrips, the journalist

12  wrote: "The site's name deliberately evokes that of Pinterest." Rather than complain about this

13  accusation of trademark infringement, Gotlieb admitted he was happy with the story.

14    Gotlieb also ███████████████████████████████████████.

15  In March 2012, seven months before the public launch of Pintrips, ██████████████████

16  ████████████████████████████████████████████████

17  ███████████████████████

18    Gotlieb and his team have attempted to confuse consumers, and they have succeeded.

19  Pinterest commissioned Dr. Jacob Jacoby to perform a survey on likelihood of confusion. Under his

20  guidance, qualified respondents in a test group were shown the Pintrips homepage and asked

21  questions about who was behind it. Nearly 20% said Pinterest, compared to no one in a control group.

22    This confusion will worsen unless enjoined. Presently, Defendant's Pin button is available

23  only by downloading an extension. ███████████████████████████████████

24  ███████████████████████████████████████████████

25  ████████████████ Plaintiff commissioned Dr. Deborah Jay to measure the resulting

26  likelihood of confusion. Under her direction, qualified respondents in a test group were shown a

27  Pintrips Pin button on a third-party travel site and asked questions about who was behind it. Nearly

28  half answered Pinterest, compared to virtually none in a control group.

TRIAL BRIEF                                    -3-                        CASE NO. C 13-4608 HSG

1    Defendant has not commissioned (or disclosed) a survey relevant to any issue.

2                                          **LAW**

3    **I.     Pinterest Will Prevail on Its Infringement Claims**

4          Pinterest's first, second, and fourth claims assert trademark infringement. To prevail, Pinterest

5    must show that (1) Pinterest enjoys priority in at least one protected mark (*i.e.*, a "distinctive" mark),

6    and (2) Pintrips's actions create a likelihood of confusion. *Brookfield Commc'ns, Inc. v. W. Coast*

7    *Entm't Corp.*, 174 F.3d 1036, 1046-48, 1053-54 (9th Cir. 1999).

8          **A.   Pinterest's PINTEREST and PIN Marks are Presumptively Valid, and Strong**

9          There is no question of Pinterest's priority. It launched its service and commenced use of its

10   PINTEREST, PIN, and PIN IT marks in March 2010. Pintrips did not even begin to test its software

11   or services until late 2011 and did not begin to offer them commercially until November 28, 2012.

12   So Pinterest's date of first use is much earlier.

13         Plaintiff's PINTEREST and PIN marks are federally registered. "Federal registration of a

14   trademark endows it with a strong presumption of validity." *KP Permanent Make-Up, Inc. v. Lasting*

15   *Impression I, Inc.*, 408 F.3d 596, 604 (9th Cir. 2005); *accord B & B Hardware, Inc. v. Hargis Indus.,*

16   *Inc.*, 135 S. Ct. 1293, 1300 (Mar. 24, 2015). PINTEREST and PIN are federally registered and

17   presumptively valid trademarks for social bookmarking software and services that allow users to

18   "discover, access and share information about, and multimedia content concerning, goods, services,

19   and experiences." U.S. Reg. Nos. 4704153, 4145087, 4553185, 4653305.

20         Plaintiff's marks are also strong. "Marks are generally classified in one of five categories of

21   increasing distinctiveness: (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, or (5) fanciful."

22   *Zobmondo Entm't, LLC v. Falls Media, LLC*, 602 F.3d 1108, 1113 (9th Cir. 2010); *accord* J. Thomas

23   McCarthy, McCarthy on Trademarks and Unfair Competition § 23:1.50 (2015) ("*McCarthy*"). § 11:2.

24   "Suggestive, arbitrary, and fanciful marks are considered 'inherently distinctive' and are

25   automatically entitled to federal trademark protection because their intrinsic nature serves to identify

26   a particular source of a product." *Zobmondo*, 602 F.3d at 1113. "Merely descriptive marks, which

27   describe the qualities or characteristics of a product" are entitled to protection upon showing that they

28

1  have "acquired distinctiveness." *KP Permanent*, 408 F.3d at 602. Generic designations are not

2  entitled to protection "because they identify the product, rather than [its] source." *Id.*

3        PINTEREST, a whimsical combination of "pin" and "interest," is a fanciful mark; *i.e.*, a

4  coined word that has been invented or selected for the sole purpose of functioning as a trademark.

5  *McCarthy* § 11:5. At minimum, PINTEREST is a suggestive mark because "a consumer must use

6  imagination or a type of multistage reasoning to understand the mark's significance." *Kendall-*

7  *Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1047 n.8 (9th Cir. 1998); *accord Visa*

8  *Intern. Service Ass'n v. JSL Corp.*, 610 F.3d 1088, 1089-90, 1092 (9th Cir. 2010) (VISA for credit

9  cards considered metaphorical and inherently distinctive).

10       PIN is a suggestive mark because it "subtly connotes something about the product." *AMF, Inc.*

11  *v. Sleekcraft Boats*, 599 F.2d 341, 349 (9th Cir. 1979). A customer buying pins at a store knows

12  exactly what she is getting. But she may not know immediately what a Pin is on Pinterest. Once she

13  familiarizes herself with the service, she will learn that a Pin is a content file saved on a board. But it

14  requires "imagination" and "multistage reasoning" (*Kendall-Jackson*, 150 F.3d at 1047 n.8) to grasp

15  the connection between the mark and the service. *Cf. Visa*, 610 F.3d at 1090 ("[T]he word

16  visa wouldn't make people think of credit cards if it weren't for the Visa brand.").

17       If not suggestive, then PIN is descriptive of the services Pinterest provides. Descriptive marks

18  convey something about the product or service. *Sleekcraft*, 599 F.2d at 349. They are protectable

19  upon a showing "secondary meaning." *Zobmondo*, 602 F.3d at 1113. Evidence of secondary meaning

20  includes evidence of product popularity and publicity, as well as evidence of confusion and copying.

21  *McCarthy* §15:36-38, 47-52. Secondary meaning can be acquired very quickly since "the Internet has

22  made it easier than ever to reach millions of people around the globe." *McCarthy* §15:54. Assuming

23  that PIN is descriptive, it acquired secondary meaning early, with Pinterest's viral growth.

24  **B. Pintrips's Challenges to the Protectability of these Marks are Meritless**

25       Pintrips has not seriously challenged the validity and strength of the PINTEREST mark.

26  Instead, it has focused on the PIN mark, which it claims is generic, and thus unprotectable. Defendant

27  really has no choice but to try this tack, since the evidence of confusing similarity between

28  PINTEREST and PINTRIPS is overwhelming. But the defense is meritless.

Whether a mark is generic is governed by its "primary significance" for particular goods or services. 15 U.S.C. § 1064(3); *see In re America Online, Inc.*, 77 U.S.P.Q. 2d1618, *15-19 (TTAB 2006) (INSTANT MESSENGER for online chat services not generic). If consumers understand the mark to refer to *the source* of the goods or services, it is not generic. *KP Permanent*, 408 F.3d at 604.

Due to its federal registrations, there is a "strong presumption" that PIN is not generic. Rebutting this strong presumption imposes a "heavy burden" on Defendant. *KP Permanent Mark-Up*, 408 F.3d at 604. The usual way to meet this burden is to introduce a survey of public perception. Professor McCarthy declares such surveys "almost de rigueur in litigation over genericness," continuing: one "who alleges [genericness] and does not introduce a survey … may be viewed as less than serious." *McCarthy* § 12:14. Defendant has produced no survey. Its defense is less than serious.

Instead of a survey, Defendant will present examples of other parties using "pin," but in ways unrelated to Pinterest. Most people, including Pinterest's tens of millions of users, identify PIN with Pinterest, notably as a noun for content saved on Pinterest, or as a verb for the act of saving it on Pinterest. Defendant may parade others' uses of "pin" to designate map locations or to affix an icon to a taskbar. Such "evidence" merely shows that "pin" may be generic for some purposes but not for others. In this case, it is irrelevant, and certainly insufficient to meet Defendant's "heavy burden." *See Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9-12 (2d Cir. 1976) (Safari held generic for hats but not for boots or shoes); *Polo Fashions, Inc. v. Extra Special Prods., Inc.*, 451 F. Supp. 555, 559 (S.D.N.Y. 1978) (Polo held generic for polo shirts but not for other shirts and apparel).

Defendant may also argue that PIN is functional. "A product feature is functional, and cannot serve as a trademark if it is essential to the use or purpose of the article or if it affects the cost or quality of the article." *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 32 (2001) (road sign built to withstand wind held functional). "[I]t is not apparent how a word mark could be essential to the use or purpose of an article or affect its cost or quality." *Autodesk, Inc. v. Dassault Sys. SolidWorks Corp.*, 685 F. Supp. 2d 1001, 1008 (N.D. Cal. 2009). Pinterest's PIN and PIN IT marks are words, not product features. Other parties can and have used other words for collecting and saving Internet content files. For example, long before Pinterest used Pin, other social bookmarking services used STUMBLE, DIGG, FANCY, and HEART for the same purpose.

1    Finally, Defendant's obsession with Pin is futile. Marks must be viewed in their entirety and

2    not dissected. *McCarthy* § 23:41. Therefore, even if Pin were generic (which it is not), that would be

3    inconsequential to the issue of confusion between PINTEREST and PINTRIPS. The defendant in

4    *Sleekcraft*, which pitted "Slickcraft" against "Sleekcraft," tried the same gambit, arguing that the

5    court should disregard the common suffix "craft." The court acknowledged that "craft" is generic in

6    the context of boats, but stated: "We must consider the entire mark." It found infringement.

7    **C.      Pintrips's Actions Create a "Likelihood of Confusion"**

8    Since Pintrips cannot seriously challenge the validity and strength of Pinterest's marks, the

9    case will turn on whether Pintrips's actions cause likely confusion. "The confusion that is remedied

10   by trademark and unfair competition law is confusion not only as to source, but also as to affiliation,

11   connection or sponsorship" between the plaintiff and defendant or their respective goods or services.

12   *McCarthy* § 23:8; *accord* 15 U.S.C. § 1125(a). In this Circuit, likelihood of confusion is determined

13   under the eight non-exclusive *Sleekcraft* factors. *McCarthy* § 24:39. "Some factors are much more

14   helpful than others, and the relative importance of each [is] case specific." *Brookfield*, 174 F.3d at

15   1054. Doubt is resolved in favor of the senior user. *McCarthy* § 23:64-66. In this case, there is no

16   doubt. All factors favor Plaintiff.

17   The first *Sleekcraft* factor is trademark strength. *Sleekcraft*, 599 F.2d at 349. Trademark

18   strength encompasses conceptual strength, or "the placement of the mark on the spectrum of marks,"

19   and commercial strength, or "the marketplace recognition value of the mark." *McCarthy* § 23:40.50;

20   *accord GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1207 (9th Cir. 2000). "'Strong' marks are

21   given 'strong' protection – protection over a wider range of related products and services and a

22   greater spectrum of variations." *McCarthy* § 23:40.50. PINTEREST is conceptually strong because it

23   is a whimsical, made-up word. PIN is conceptually strong because it is a clever metaphor. Both

24   marks are commercially strong because of the viral growth of Pinterest. Also, about a quarter of all

25   Americans who use the Internet use Pinterest, viewing both marks as they save and share billions of

26   Pins. Defendant's own expert notes that people associate "Pinterest [with] the very idea of pinning."

27   The second factor is proximity or relatedness of services. Offerings are "related" if a

28   reasonable buyer would believe they are connected. *Sleekcraft*, 599 F.2d at 348, n.10. Software and

services are related when they "are complementary in function and purpose," particularly if they target overlapping users through overlapping stores. *McCarthy* § 24:44. Pinterest and Pintrips both offer social bookmarking software through app stores and websites. Moreover, Pinterest is often used for travel planning, and Pintrips is exclusively used for travel planning. Gotlieb told investors and advisors that ████████████████████ confirming that the parties offer related services.

The third *Sleekcraft* factor is similarity of marks, which is tested on three levels: sight, sound, and meaning. *Sleekcraft*, 599 F.2d at 351. "Each must be considered as … encountered in the marketplace." *Id.* Sound is particularly important when "reputation is conveyed [by] word of mouth." *Id.*; *McCarthy* § 23:22. Defendant's witnesses have testified that they promote their site through word of mouth, exacerbating the likelihood of confusion. Defendant's Chief Product Officer disposed of this issue when she agreed with a journalist: ███████████████

The fourth *Sleekcraft* factor is actual confusion. *Sleekcraft*, 599 F.2d at 351. "Any evidence of actual confusion is strong proof of … a likelihood of confusion." *McCarthy* § 23:13; *accord GoTo.com*, 202 F.3d at 1208. While many courts recognize that this factor is not a prerequisite for relief due to the difficulty of uncovering such evidence,[1] in this case it exists in abundance. ████████ ██████████████████████████████████████████ ██████████████████████████████████████████

Surveys provide surrogate evidence of actual confusion, particularly when the net rate of confusion meets or exceeds 15%. *McCarthy* § 32:184; *see, e.g., James Burrough, Ltd. v. Sign of Beefeater, Inc.*, 540 F.2d 266, 272 (7th Cir. 1976) (15% confusion); *RJR Foods, Inc. v. White Rock Corp.*, 603 F.2d 1058, 1061 (2d Cir. 1979) (15-20% confusion); *see also Jockey Int'l, Inc. v. Burkard*, 1975 WL 21128 (S.D. Cal. Feb. 21, 1975) (11.4% confusion supported likelihood of confusion). In this case, Dr. Jacoby's survey found that nearly 20% of respondents who were shown just the homepage for Pintrips, without any indicia of Pinterest, still thought that Pinterest was behind it.

---

[1] *See, e.g., Brookfield*, 174 F.3d at 1050 ("[A]ctual confusion is hard to prove."); *McCarthy* § 23:12 ("Persons who are truly confused will often never be aware of the deception … [or] bother to report [it].")

The fifth *Sleekcraft* factor is similarity of marketing channels. *Sleekcraft*, 599 F.2d at 353. Here, the channels are identical. Both parties offer their software and services through app stores and websites. Both rely on press coverage, online sharing, and word of mouth for promotion.

The sixth *Sleekcraft* factor is the degree of consumer care. "[W]hen dealing with inexpensive products, customers are likely to exercise less care … making confusion more likely." *Brookfield*, 174 F.3d at 1046. Confusion is more likely in this case because Pinterest and Pintrips are both free.

The seventh *Sleekcraft* actor is intent. "[P]roof of defendant's intent . . . is not required for infringement." *McCarthy* § 23:107. "[One] who negligently, ignorantly or innocently stumbles into confusing the public is still an infringer." *Id*. Intent is relevant because one who intends to confuse is "presume[d] … to accomplish his purpose." *Sleekcraft*, 599 F.2d at 354. Intent to confuse can be inferred "[w]here an alleged infringer chooses a mark he knows to be similar to another." *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1148 (9th Cir. 2002). That is exactly what happened here. Gotlieb chose the name Pintrips ███████████████████ Even though an advisor encouraged him to perform a trademark search, he never did. When his CTO told him the name was "reminiscent" of Pinterest, he laughed and called it a "useful coincidence." ███████ The resultant confusion is not accidental.

The eighth *Sleekcraft* factor is likelihood of future convergence. *Sleekcraft*, 599 F.2d at 354. Pinterest and Pintrips both offer travel-related services. ███████████████ Pintrips's own advisors have acknowledged ███████████ Another risk of convergence arises from Pintrips's plans ███████████ Dr. Deborah Jay's survey reveals that nearly half of the respondents seeing the Pintrips Pin button on third-party travel sites would mistakenly believe that Pinterest was behind it.

D.      **Pintrips's Actions Also Create Initial Interest Confusion**

"Initial interest confusion" refers to situations where a customer is initially confused but discovers her mistake before making a purchase. Despite the discovery, the customer proceeds to do business anyway, since she's already there. Such confusion is actionable. *Brookfield*, 174 F.3d at 1062; *Dr. Seuss Enters, LP. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1405 (9th Cir. 1997). It is "a variation on the … 'bait and switch.'" *McCarthy* § 23:6. Pintrips's Chief Product Officer Sheila Bijoor conceded that such confusion exists here, when she commented on an article Gotlieb sent her about the dispute with Pinterest:

██████████████████████████████████████████

██████████████████████████████████

Her comment illustrates initial interest confusion – but with one important difference. ████

████████████████████████████████████████████ For them,

apparently, initial interest confusion will congeal into permanent confusion.

III.    **Pinterest Will Prevail on Its Dilution Claims**

Pinterest's third and fifth claims allege dilution of the PINTEREST mark. To prevail on these claims, Pinterest must show that (1) PINTEREST is distinctive and famous; (2) PINTEREST became distinctive and famous before PINTRIPS had been used in commerce, and (3) PINTRIPS will likely dilute PINTEREST by creating an association with it. 15 U.S.C. § 1125(c)(1), (2)(B); *Visa*, 610 F.3d at 1089-90 (9th Cir. 2010). PINTEREST is distinctive and famous for the purpose of dilution in the same ways it is for the purpose of infringement, and it rapidly rose to fame before the launch of Pintrips. Finally, PINTRIPS dilutes PINTEREST by deliberately fostering an association with it.

### CONCLUSION

For the foregoing reasons, judgment on all claims should be entered in favor of Pinterest.

Dated: April 28, 2015

Respectfully submitted,
HARVEY SISKIND LLP

By: _____/s/_____
        Lawrence J. Siskind

Attorneys for Plaintiff
PINTEREST, INC.

# EXHIBIT B

1  | HARVEY SISKIND LLP
   | LAWRENCE J. SISKIND (SBN 85628)
2  | Email: lsiskind@harveysiskind.com
   | DONALD A. THOMPSON (SBN 260076)
3  | Email: dthompson@harveysiskind.com
   | JANE A. LEVICH (SBN 293299)
4  | Email: jlevich@harveysiskind.com
   | Four Embarcadero Center, 39th Floor
5  | San Francisco, California 94111
   | Telephone: (415) 354-0100
6  | Facsimile: (415) 391-7124
7  |
8  | Attorneys for Plaintiff
   | PINTEREST, INC.
9  |

10  **IN THE UNITED STATES DISTRICT COURT**

11  **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

12  **SAN FRANCISCO DIVISION**

13

14  PINTEREST, INC.,                     Case No. C 13-4608 HSG
    a Delaware corporation,
15                                        **PINTEREST'S PROPOSED FINDINGS OF
                                          FACT AND CONCLUSIONS OF LAW**
16                  Plaintiff,            **[Replaces Document No. 165-7 filed on 04/28/15]**

17      v.                               **Pretrial Conf.:**   May 12, 2015 at 3:00 pm

18  PINTRIPS, INC.,
    a California corporation,            **Trial Begins:**     May 18, 2015 at 8:30 am
19
                    Defendant.           **Judge:**            Hon. Haywood S. Gilliam, Jr.
20

21  AND RELATED COUNTERCLAIMS

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

Page

FINDINGS OF FACT .................................................................................................. 1

    I.     Pinterest Becomes a Famous Online Service.................................................. 1

    II.    Pintrips Attempts to Become Pinterest for Travel........................................... 4

CONCLUSIONS OF LAW ........................................................................................... 9

    I.     Pinterest Prevails on Its Infringement Claims............................................... 9

    A.    All of Pinterest's Marks Are Senior and Valid .............................................. 9

            1.     Pinterest Enjoys Priority in Its Marks ............................................... 9

            2.     Pinterest's Marks Are Presumptively and Actually Valid ....................... 10

                 i)        PINTEREST Is Fanciful, Or At Least Suggestive .......................... 10

                 ii)       PIN Is Suggestive, Or At Least Descriptive with Secondary Meaning ........................................................... 11

            3.     Pintrips's Counterclaims and Affirmative Defenses are Meritless ............... 12

                 i.        PIN Is Not Generic ...................................................... 12

                 ii.       PIN Is Not Functional.................................................... 13

    B.    Pintrips' Actions Create a "Likelihood of Confusion".................................... 14

            1.     Pinterest's Marks Are Very Strong.................................................. 15

            2.     Pinterest and Pintrips Both Offer Social Bookmarking Software and Services................................................................... 15

            3.     Pinterest and Pintrips Use Very Similar Marks ................................... 16

            4.     Pintrips' Users Have Suffered Actual Confusion, Confirmed by a Survey .. 16

            5.     Pinterest and Pintrips Use the Same Marketing Channels ........................ 17

            6.     Users Exercise Limited Care with Free Software and Services .................. 17

            7.     Pintrips's Actions Reveal an Intent to Confuse .................................. 18

8.      Pinterest and Pintrips Will Likely Continue to Converge .............................. 18

II.      Pinterest Prevails on Its Dilution Claims ................................................................................. 19

PINTEREST'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW          CASE NO. C 13-4608 HSG

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4
5
*Abercrombie & Fitch Co. v. Hunting World, Inc.*,
    537 F.2d 4 (2d Cir. 1976)...................................................................................13

6
*In re America Online, Inc.*,
    77 U.S.P.Q. 2d1618 (TTAB 2006) ...................................................................12

7
8
*AMF, Inc. v. Sleekcraft Boats*,
    599 F.2d 341 (9th Cir. 1979) .....................................................................*passim*

9
10
*Autodesk, Inc. v. Dassault Sys. SolidWorks Corp.*,
    685 F. Supp. 2d 1001 (N.D. Cal. 2009) .........................................................13

11
*B & B Hardware, Inc. v. Hargis Indus., Inc.*,
    135 S. Ct. 1293 (Mar. 24, 2015) ...............................................................10, 12

12
13
*Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*,
    174 F.3d 1036 (9th Cir. 1999) ...................................................................*passim*

14
15
*Cairns v. Franklin Mint*,
    24 F. Supp. 2d 1013 (C.D. Cal. 1998), *aff'd sub nom* 216 F.3d 1082 (9th Cir.
    1999) ...............................................................................................................13

16
17
*Cleary v. News Corp.*,
    30 F.3d 1255 (9th Cir. 1994) ..........................................................................9

18
19
*Clicks Billiards, Inc. v. Sixshooters, Inc.*,
    251 F.3d 1252 (9th Cir. 2001) ...................................................................12, 14

20
*Comm. for Idaho's High Desert, Inc. v. Yost*,
    92 F.3d 814 (9th Cir. 1996) ...........................................................................9

21
22
*Dr. Seuss Enters, LP. v. Penguin Books USA, Inc.*,
    109 F.3d 1394 (9th Cir. 1997) ...................................................................14, 15

23
24
*Eclipse Assoc. Ltd. v. Data General Corp.*,
    894 F.2d 1114 (9th Cir. 1990) .......................................................................16

25
*Entrepreneur Media, Inc. v. Smith*,
    279 F.3d 1135 (9th Cir. 2002) .......................................................................18

26
27
*GoTo.com, Inc. v. Walt Disney Co.*,
    202 F.3d 1199 (9th Cir. 2000) ...................................................................15, 16

28

*In re Iolo Tech, LLC,*
   95 U.S.P.Q.2d 1498 (TTAB 2010) ............................................................ 15

*James Burrough, Ltd. v. Sign of Beefeater, Inc.,*
   540 F.2d 266 (7th Cir. 1976) ................................................................... 17

*Jockey Int'l, Inc. v. Burkard,*
   1975 WL 21128 (S.D. Cal. Feb. 21, 1975) .................................................. 17

*Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery,*
   150 F.3d 1042 (9th Cir. 1998) ................................................................. 11

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.,*
   408 F.3d 596 (9th Cir. 2005) ............................................................. 10, 12

*North Am. Graphics, Inc. v. North Am. Graphics of US, Inc.,*
   1997 U.S. Dist. LEXIS 8107, 1997 WL 316599 (S.D.N.Y. Jun. 10, 1997) .............. 11

*Perfumebay.com Inc. v. eBay, Inc.,*
   506 F.3d 1165 (9th Cir. 2007) ................................................................. 19

*Playboy Enters, Inc. v. Netscape Communic'ns. Corp.,*
   354 F.3d 1020 (9th Cir. 2004) ................................................................. 14

*Polo Fashions, Inc. v. Extra Special Prods., Inc.,*
   451 F. Supp. 555 (S.D.N.Y. 1978) ............................................................ 13

*RJR Foods, Inc. v. White Rock Corp.,*
   603 F.2d 1058 (2d Cir. 1979) .................................................................. 17

*Self-Realization Fellowship Church v. Ananda Church of Self-Realization,*
   59 F.3d 902 (9th Cir. 1995) ................................................................... 13

*Synergistic Int'l, Inc. v. Windshield Doctor, Inc.,*
   470 F.3d 162 (4th Cir. 2003) .................................................................. 11

*TrafFix Devices, Inc. v. Marketing Displays, Inc.,*
   532 U.S. 23 (2001) .............................................................................. 13

*Visa Intern. Service Ass'n v. JSL Corp.,*
   610 F.3d 1088 (9th Cir. 2010) ............................................................. 11, 19

*Vuitton et Fils S.A. v. J. Young Enters.,*
   644 F.2d 769 (9th Cir. 1982) .................................................................. 12

*Yellow Cab Co. v. Yellow Cab,*
   419 F.3d 925 (9th Cir. 2005) .................................................................. 12

*Zobmondo Entm't, LLC v. Falls Media, LLC,*
   602 F.3d 1108 (9th Cir. 2010) ............................................................ 10, 11

**Statutes**

15 U.S.C. § 1064(3) ...................................................................................................12

15 U.S.C. § 1125(a) ..................................................................................................14

15 U.S.C. § 1125(c) ..................................................................................................19

**Other Authorities**

J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 23:1.50
  (2015) ...........................................................................................................*passim*

1    Plaintiff Pinterest, Inc. ("Plaintiff" or "Pinterest") proposes the following findings of fact and

2    conclusions of law in this case against Defendant Pintrips, Inc. ("Defendant" or "Pintrips").

**FINDINGS OF FACT**

**I.    Pinterest Becomes a Famous Online Service**

5    1.    Pinterest provides free online services through a website at pinterest.com and through

6    mobile device applications that can be downloaded at the Google Play store and iOS App Store. *See* Trial

7    Exs. 18, 163. Pinterest allows users to collect and save content on any subject. *See* Trial Exs. 18, 163.

8    Because content saved on Pinterest links back to its source (a "bookmarking" feature) and because

9    content saved on Pinterest may be shared among any number of users (a "social" feature), Pinterest is a

10   social bookmarking service. On Pinterest, each piece of content is known as a Pin and the act of saving it

11   is known as Pinning. *See* Trial Ex. 18. (Likewise, on Twitter, each post is known as a Tweet and the act

12   of posting it is known as Tweeting.)

13   2.    Pinterest launched to external users in March 2010. *See* Trial Exs. 131 at PIN17035, 132,

14   175. Today, about a quarter of American adults who use the Internet use Pinterest. Trial Ex. 13 at 2-4, 8.

15   Pinterest experienced viral growth throughout 2011 and 2012. *See* Trial Exs.14, 15, 20-22, 101, 130 at

16   PIN17002-20, 150-51, 166-67, 180 at PIN12499-500; Ashley Raiteri Dep. Tr. ("AR Tr.") at 200:10-

17   202:5. This was largely thanks to publicity by word-of-mouth. Trial Ex. 151; AR Tr. at 189:4-15, 198:10-

18   25, 200:10-202:23. Also, from August 2011 onwards, Pinterest was favorably covered by countless

19   media outlets, notably including Time Magazine, Business Insider, CNET, CNN, Shape, Fast Company,

20   Fortune, The Wall Street Journal, The Los Angeles Times, and The New York Times. Trial Exs. 127,

21   154-60, 168-75; AR Tr. at 202:18-23. Pinterest was widely considered the fastest growing online service

22   in history. *See, e.g.*, Trial Ex. 174.

23   3.    The Pin It button for web browsers and the Pin It button for third-party websites are two

24   ways to add content to Pinterest. The Pin It button for web browsers (also known as a "bookmarklet") is

25   installed by users in their web browsers, where it serves to identify and enable Pinterest. *See* Trial Ex

26   126, 132. It was launched in March 2010, together with Pinterest. *See* Tr. Ex. 126, 132. The Pin It button

27   for third-party websites is installed by web developers on their websites, where it likewise serves to

28   identify and enable Pinterest. *See* Trial Exs. 16-17. It was launched in July 2011 and went viral shortly

1    after. *See* Trial Exs. 16, 130; AR Tr. at 200:10-202:5. In August 2011, TIME wrote that "Pinterest –

2    which lets you create and share collections of stuff you like in any category you choose … makes the

3    process painless by offering a Pin It button that lets you grab pictures of your favorite things as you

4    browse the Web." Trial Ex. 153. Today the Pin It button for third-party websites appears on millions of

5    unique domains around the Internet, where it is widely recognized as a symbol of Pinterest.

6         4.    Travel is one of the most popular categories on Pinterest. Trial Exs. 161, 162, 163 at

7    PIN24376. Pinterest has been used to plan travel – for example, to collect and save inspiration for

8    upcoming trips – since it was launched in March 2010. Trial Exs. 161 at PIN24169, 162 at PIN24292-

9    95, 128, 130 at PIN17007, 131 at PIN17035-38, 132 at PIN17095-96, 135, 142-45, 172, 181; AR Tr. at

10   172:24-173:18. During 2010, Pinterest created a travel category that today includes over a billion Pins.

11   Trial Exs. 176, 164 at PIN24291, 167 at PIN29342. During 2012, Pinterest commissioned a survey that

12   confirmed that people were using it to plan travel. Trial Ex. 133 at PIN17216-17. During 2013, Pinterest

13   launched a feature to make it even easier for people to use it to plan travel. Trial Ex. 107, 182-84, 161 at

14   PIN24168. Along the way, Pinterest has been touted as a travel planning tool by many media outlets,

15   including the Los Angeles Times, the Wall Street Journal, and Conde Nast Traveler. Trial Exs. 172, 161

16   at PIN24170-71. ████████████████████████████████

17   █████ (Pintrips agrees that confusion could occur if it does.) Trial Ex. 45.

18        5.    Many airlines promote themselves on Pinterest, including American Airlines, Virgin

19   America, Air France, Air New Zealand, and Cathay Pacific. Trial Exs. 138-39, 141, 147, 149. Many

20   accommodation and booking companies also promote themselves on Pinterest, including Four Seasons

21   Hotels and Resorts, Trump Hotels, Airbnb, Booking.com, and Expedia. Trial Exs.140, 162 at PIN24307-

22   13, 163 at PIN24426; AR Tr. at 168:17-21. Many travel media outlets likewise promote themselves on

23   Pinterest, including Travel + Leisure, Budget Travel, Conde Nast Traveler, and Travel Channel. Trial

24   Exs. 146, 148, 134 at PIN17256-57, 162 at PIN23309-10.

25        6.    Pinterest has inspired many imitators who want to create "another Pinterest for travel."

26   Trial Exs. 113 at PINTRIPS6662, 50 at PINTRIPS6611, 86 at PINTRIPS6653; Eugene Mirkin Dep. Tr.

27   ("EM Dep. Tr.") at 132:17-134:21.

28

1    7.    Pinterest uses the trademarks PINTEREST, PIN IT, and PIN to represent its social

2    bookmarking software and services. *See*, *e.g.*, Trial Exs. 16-18, 131 at PIN17035, 132, 175, 205 at 6-16,

3    207 at 1-8**.** Pinterest has used these trademarks in commerce since at least as early as March 10, 2010.

4    *See* Trial Exs. 16-18, 131 at PIN17035, 132, 175

5    8.    Pinterest holds U.S. Registration No. 4,145,087 for the mark PINTEREST in connection

6    with various goods and services in Classes 42 and 45, including "providing a web site featuring

7    technology that enables internet users to create, bookmark, annotate, and publicly share data" in class 42.

8    Trial Ex. 23. Pinterest filed the underlying U.S. Trademark Application Serial No. 85,255,217 on March

9    1, 2011. Trial Ex. 23.

10    9.    Pinterest also holds U.S. Registration No. 4,704,153 for the mark PINTEREST in

11    connection with various goods and services in Classes 9, 35, 38, 42, and 45, including "software that

12    allows users to discover, access and share information about, and media content concerning, goods,

13    services, and experiences" in Class 9, "electronic bulletin board services" in Class 38, and "providing a

14    platform featuring technology that enables internet users to create, upload, bookmark, view, annotate,

15    share and discover data, information and multimedia content" in Class 42. Trial Ex. 24. Pinterest filed

16    the underlying U.S. Trademark Application Serial No. 85,695,361 on August 3, 2012. Trial Ex. 24.

17    10.    Pinterest holds U.S. Registration No. 4,553,185 for the mark PIN in connection with

18    various goods and services in Class 9 and 42, including "software that allows users to discover, access

19    and share information about, and media content concerning, goods, services, and experiences" in Class 9

20    and "providing a platform featuring technology that enables internet users to create, upload, bookmark,

21    view, annotate, share and discover data, information and multimedia content" in Class 42. Trial Ex. 25.

22    Pinterest filed the underlying U.S. Trademark Application Serial No. 85,981,698 on August 8, 2012.

23    Trial Ex. 25.

24    11.    Pinterest also holds U.S. Registration No. 4,653,305 for the mark PIN in connection with

25    "providing online social networking services for purposes of commentary, comparison, collaboration,

26    consultation, evaluation, advice, discussion, research, notification, reporting, identification, information

27    sharing, indexing, information location, entertainment, pleasure, or general interest" in Class 45. Trial

28

1   Ex. 26. Pinterest filed the underlying U.S. Trademark Application Serial No. 85,698,998 on August 8,

2   2012. Trial Ex. 26.

3         12.    Before Pinterest, there were many well-known providers of social bookmarking software

4   and services, including StumbleUpon, Delicious, and Digg. AR Tr. at 97:13-98:24; EM Tr. at 80:4-80:16;

5   Trial Ex. 201 at JOSH172. They did not use Pin. (For example, StumbleUpon used Stumble for the same

6   purpose.) Trial Ex. 220-23. After Pinterest, there were even more providers of social bookmarking

7   software and services, including Luvocracy. EM Tr. at 52:6-17; Trial Ex. 127 at PIN12461. With the

8   exception of certain copycats, they also did not use Pin. EM Tr. at 52:14-15; Trial Ex. 127 at PIN12461.

9   (Luvocracy, for instance, used Luv for the same purpose as Pinterest uses Pin. EM Tr. at 52:14-15.)

10        13.    In the field of social bookmarking, Pinterest enjoys substantially exclusive use of PIN

11   and PIN IT as designations of source. *See* Trial Ex. 205 at 3, 6-16. Consumers associate these terms with

12   Pinterest. *See* Trial Ex. 207 at 1-8.

13   **II.**    **Pintrips Attempts to Become Pinterest for Travel**

14        14.    Defendant Pintrips, Inc. provides free online services through a website at pintrips.com

15   and through a mobile device application that can be downloaded at the Google Play store. *See* Trial Exs.

16   85, 89 at 12; Stephen Gotlieb Dep. Tr. ("SG Dep. Tr.") at 225:1-9. Pintrips allows users to collect and

17   save travel itineraries. *See* Trial Exs. 85, 89 at 12. Because each itinerary saved on Pintrips links back to

18   its source (a "bookmarking" feature) and because each itinerary saved on Pintrips may be shared among

19   any number of other users (a "social" feature), Pintrips is a social bookmarking service. *See* Trial Exs.

20   85, 89 at 12, 201 at JOSH172, 48 ¶¶ 2-8, 129-32; AR Tr. at 97:13-99:21, 216:10-217:24; Sarah Kleiman

21   Dep. Tr. ("SK Tr.") at 65:8-15. According to its Chief Executive Officer, Pintrips is █████████

22   ████████████████████████████████ Trial Ex. 50 at PINTRIPS6611; SG Tr. at 270:15-

23   272:11.

24        15.    Before it became Pintrips, Inc., Defendant was incorporated as Flightrax, Inc. on March

25   21, 2011. Trial Ex. 28 at 1-3.

26        16.    Stephen Gotlieb is Defendant's primary founder and Chief Executive Officer. *See* Trial

27   Ex. 28, SG Tr. at 59:23-60:5. His non-executive co-founders included Timothy O'Neil-Dunne, Ashley

28   Raiteri, and Paul Addy. Trial Ex. 177-79, 115, 96 at 2-3. They met in San Jose, California during June 8-

1   10, 2011. Trial Ex. 115 at PINTRIPS6728-29; Addy Tr. at 18:8-18. By the end of the meeting, Mr.

2   Gotlieb had decided to change the name of his company from Flightrax to something else. Timothy

3   O'Neil-Dunne Dep. Tr. ("TOD Tr.") at 43:12-44:22.

4         17.   ███████████████████████████████████████████████████

5   ████   Trial Ex. 32 at ADDY344, AR Tr. at 119:14-122:16.

6         18.   On June 10, 2011 at 11:45pm, Mr. Gotlieb sent an email to his co-founders about

7   potential names. Trial Ex. 69 at PINTRIPS6891. ██████████████████████████

8   ████████   Trial Ex. 69 at PINTRIPS6891. ██████████████████████████████

9   ████████████████████████████████   Trial Ex. 69 at PINTRIPS6890. ███████

10  ████████████████████████   Trial Ex. 69 at PINTRIPS6890.

11        19.   ████████████████████████████████████████████████████████

12  ████. Trial Ex. 104. ███████████████████████████████████   AR Tr. at 92:25-94:3,

13  220:9-221:9. Among other things, he testified: ███████████████████████████████

14  ████████   AR Tr. at 229:25-230:1 "████████████████." AR Tr. at 230:1-2.

15  ████████████████████████████   AR Tr. at 230:15-17.

16        20.   A few days later, on June 15, 2011, Mr. Raiteri registered the domains pintrips.com,

17  pintrips.net, and pintrips.org. Trial Ex. 30 at ADDY191. ████████████████████████

18  ████████████   Trial Ex. 30 at ADDY190.

19        21.   The next day, on June 16, 2011, ████████████████████████████████

20  ████████████████   Trial Ex. 99. The sketches included ████████████████████

21  ████████████████████████. TOD Tr. at 154:5-155:5; Addy Tr. at 119:9-121:16. That

22  button said ████████   Trial Ex. 99 at ADDY520; AR Tr. at 249:11-253:6.

23        22.   Mr. Gotlieb ██████████████████████████████████████. *See* Trial Ex. 196 ████

24  ████████████████████████████ *See* Trial Ex. 31, 125. He even adopted that name for a time. Trial

25  Ex. 120-23, 192 at ADDY27, 195, 197 at TOD 6955-56, 200 at JOSH52.

26        23.   ████████████████████████████████████████████████████. *See* Trial Ex. 198 at

27  TOD7289-91.

28

24. Mr. O'Neil-Dunne advised Mr. Gotlieb to perform a trademark search on the name PINTRIPS. TOD Tr. at 64:18-65:1. Mr. Gotlieb never did. TOD Tr. at 54:2-9; SG Tr. at 25:9-23.

25. In November 2011, ███████████████████████████████████ ████████████████████████████████ Trial Ex. 109, 110, 151; AR Tr. at 189:4-15, 198:10-25, 200:10-202:23. ██████████████████████████████████████████████████ ███████████████████████████████████ Trial Ex. 110; AR Tr. at 202:18-208:14. ██████████████████████████. Trial Ex. 110; AR Tr. at 202:18-208:14; TOD Tr. at 172:4-8; SK Tr. at 24:8-14.

26. ████████████████████████████████████████ ██████████. AR Tr. at 97:13-99:21, 216:10-217:24; Trial Ex. 110. ████████████ ██████████. Trial Ex. 40 at PINTRIPS6791, 43-44, 186. Others agreed. Trial Exs. 81 at PINTRIPS6848, 186 at PINTRIPS6824.

27. From September 2011 to November 2012, Mr. Gotlieb tested his contemplated service. In September 2011, it was accessible only to 5-10 testers. In December 2011, that number increased to about 25. Josh Schwartzman Dep. Tr. ("JS Tr.") at 16:16-17:4, 25:11-8.

28. During the testing process, Mr. Gotlieb's sister-in-law sent him an article ██████████ ███████████████████████████████████ Trial Ex. 116.

29. On March 19, 2012, █████████████████████████████████████████ ██████████ Trial Ex. 35, 54, 55; TOD Tr. at 163:9-14; SG Tr. at 345:13-346:3. ██████████ ██████████. *See* Trial Ex. 35, 54, 55; SG Tr. at 345:13-346:3.

30. Mr. Gotlieb officially renamed Flightrax, Inc. as Pintrips, Inc. on April 16, 2012. Trial Ex. 28 at 5; SG Tr. at 98:9-100:2.

31. Eugene Mirkin became Chief Technology Officer of Pintrips in August 2012. At their first meeting, Mr. Mirkin told Mr. Gotlieb that the name PINTRIPS was reminiscent of the name PINTEREST. EM Tr. at 47:1-15. Mr. Gotlieb responded that this was a "useful coincidence." EM Tr. at 47:1-46:2. And then they laughed. EM Tr. at 47:11.

32.     On November 16, 2012, Mr. Gotlieb announced: ███████████████████ ████████████████████████████████████████████████████████████ Trial Ex. 39.

33.     Pintrips launched on November 28, 2012. Tr. Ex. 6, 72; TOD Tr. at 148:3-13. Previously, it had only been accessed ███████████." SG Tr. at 164:20-164:6. Soon after the launch, Mr. Gotlieb filed a federal application to register PINTRIPS for various goods and services in Classes 35 and 39. Trial Ex. 34. (Pinterest would later oppose this application.) In connection with the application, Mr. Gotlieb declared under oath that the PINTRIPS mark had been used in commerce since June 1, 2011, although the service was not publicly accessible until late November 2012. Trial Ex. 34 at 3, 5-6.

34.     Pintrips remains obscure even today. *See* Trial Ex. 118 at PINTRIPS7223; AR Tr. at 238:1-15. Nevertheless, Pintrips and Pinterest do overlap in the marketplace. For example, they have been featured in the same media outlets, including Thrillist, Travel + Leisure, The Los Angeles Times, the BBC, and Skift. Trial Ex. 52. They have attracted some of the same travel partners, including ████████████████████████████. Trial Ex. 52. They both offer bookmarklets through the Chrome Web Store. Trial Ex. 8. They have also attracted many of the same users. Trial Ex. 8.

35.     Many people have remarked upon similarities between Pintrips and Pinterest, encouraged by Mr. Gotlieb. For example, a reporter wrote that the PINTRIPS name "deliberately evokes that of Pinterest." Trial Ex. 33. Mr. Gotlieb and Mr. O'Neil-Dunne were both sources. Neither one complained about this characterization. TOD Tr. at 126:19-127:16; SG Tr. at 163:9-164:22, 168:18-172:4.

36.     Another reporter wrote that "Pintrips … mimicks Pinterest for booking flights." Trial Ex. 94. Mr. Gotlieb thought she had "█████████████." Trial Ex. 111. He posted her article online. Trial Ex. 93.

37.     A commentator Tweeted: "@Pintrips: If Pinterest and Kayak had a Child." Trial Ex. 41. Mr. Gotlieb asked his advisors ███████████ Trial Ex. 41, TOD Tr. at 174:10-23; SK Tr. at 116:2-12. (Like PIN, TWEET is a noun, a verb, and trademark, all at the same time.)

38.     Mr. Gotlieb hired a marketing consultant named Sarah Kleiman, who testified that "████████████████████████████████████████████████████████ ████████" to Pinterest. SK Tr. at 36:21-37:9.

39.   Mr. Gotlieb also hired a Chief Product Officer named Sheila Bijoor. Summarizing an article, Ms. Bijoor wrote: the ███████████████████████████████ ███████████████." Trial Exs. 49, 84.

40.   There has been actual confusion between Pintrips and Pinterest in the courtroom and in the marketplace. For example, in the course of this litigation, many witnesses, court reporters, and interpreters have mistaken the two. *See, e.g.*, AR Tr. at 92:5, 195:3-7; EM Tr. at 47:5-11, 99:5-13; Guy Levy Dep. Tr. ("GL Tr.") at 49:8-17; TOD Tr. at 206:6-9; ADDY Tr. at 15:24-16:4, 118:13-119:4, 125:5-11. ████████████████████████████████████████ ███████████████████████. HG Tr. at 46:9-47:23 ███████████ ████████████████████████████████████████████████████████" Trial Ex. 51 at PINTRIPS6878; SG Tr. at 272:12-276:17. Likewise, a woman ███████████ ████████████████████████████████████████. Trial Ex. 87.

41.   Even Siri and Google are confused. A Siri search for "the business of Pintrips" yields results about Pinterest. Trial. Ex. 9. A Google search for "Pintrips pinboard" yields the response, "Did you mean Pinterest pinboard?" Trial. Ex. 19.

42.   Pinterest commissioned Dr. Jacob Jacoby to perform a survey assessing whether Pintrips would likely cause confusion with Pinterest. Under his direction, qualified respondents in a test group were shown the Pintrips homepage and asked questions about who was behind it. Trial Ex. 206 at 5, 8-20. Nearly 20% answered Pinterest, compared to none in a control group. Trial Ex. 206 at 6, 21-28.

43.   Pinterest also commissioned Dr. Deborah Jay to perform a survey assessing the likelihood of confusion ████████████████████████████████████, as it has planned. Under her direction, qualified respondents in a test group were shown a ███████████ ████████████████████ and asked questions about who was behind it. Trial Ex. 207 at 1-3. Nearly half answered Pinterest, compared to virtually none in the control group. Trial Ex. 207 at 3-8.

44.   Pintrips has not commissioned or disclosed any survey relevant to any issue in this case.

45.   On May 9, 2013, Mr. Gotlieb revisited his plan to ██████████████████████ ████████████ Trial Ex. 36; SG Tr. at 198:9-211:1. Now he intended ████████████████ ████████████. Trial Exs. 36, 56-68, 73-74. Before he had a chance to implement this plan,

-8-

1    he received a demand letter from Pinterest on May 23, 2013. Trial Ex. 136, 82 at PINTRIPS6998; GL Tr.

2    at 144:21-145:5, 269:25-270:18; SG Tr. at 216:8-10. This lawsuit ensued.

3          46.     At any time, Pintrips could easily change its name. According to Mr. Raiteri, ████

4    ███████████████████████████████████" AR Tr. at 142:21-22.

5                         **CONCLUSIONS OF LAW**

6    **I.**      **Pinterest Prevails on Its Infringement Claims**

7          Pinterest's first, second, and fourth claims (together, the "infringement claims") are "substantially

8    congruent." *See Cleary v. News Corp.*, 30 F.3d 1255, 1262-63 (9th Cir. 1994); J. Thomas McCarthy,

9    *McCarthy on Trademarks and Unfair Competition* § 23:1.50 (2015) ("*McCarthy*"). To prevail on these

10    claims, Pinterest must show that (1) Pinterest enjoys priority in at least one protected mark (i.e., a

11    "distinctive" mark), and (2) Pintrips' actions create a likelihood of confusion. *Brookfield Commc'ns, Inc.*

12    *v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1046-48, 1053-54 (9th Cir. 1999).

13          In this case, Pinterest prevails by showing that (1) Pinterest enjoys priority in all three of the

14    marks PINTEREST, PIN, and PIN IT, which are presumptively and actually protected for social

15    bookmarking software and services, and (2) Pintrips's overlapping software and services bearing very

16    similar marks create a likelihood of confusion.

17         **A.**      **All of Pinterest's Marks Are Senior and Valid**

18             **1.**      **Pinterest Enjoys Priority in Its Marks**

19          "The basic rule of trademark ownership in the United States is priority of use." *McCarthy* § 16:1.

20    "For inherently distinctive marks, ownership goes to the first entity to use the designation as a mark."

21    *McCarthy* § 16:1. "[For] non-inherently distinctive marks … ownership generally goes to the first entity

22    to acquire secondary meaning." *McCarthy* § 16:1. "If plaintiff's [priority] is superior to defendant, then

23    whether or not [it] is superior to the world is irrelevant." *McCarthy* §§ 31:158, 160; *accord Comm. for*

24    *Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 820 (9th Cir. 1996) ("[A] third party's prior use of a

25    trademark is not a defense in an infringement action.").

26          Pinterest enjoys priority in the trademarks PINTEREST, PIN, and PIN IT because it has used

27    them for social bookmarking software and services since at least as early as March 2010. By contrast,

28    Pintrips did not even begin to test its social bookmarking software or services until late 2011 and did not

PINTEREST'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW      CASE NO. C 13-4608 HSG

1   begin to offer them commercially until November 28, 2012. Pinterest's trademarks became widely

2   recognized long before then.

### 2.   Pinterest's Marks Are Presumptively and Actually Valid

4       "Federal registration of a trademark endows it with a strong presumption of validity." *KP*

5   *Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 604 (9th Cir. 2005); *accord B*

6   *& B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S. Ct. 1293, 1300 (Mar. 24, 2015). PINTEREST and

7   PIN are registered and presumptively valid trademarks for social bookmarking software and services,

8   such as "software that allows users to discover, access and share information about, and media

9   content concerning, goods, services, and experiences" in Class 9 and "providing a platform featuring

10  technology that enables internet users to create, upload, bookmark, view, annotate, share and discover

11  data, information and multimedia content" in Class 42. U.S. Reg. Nos. 4704153, 4145087, 4553185,

12  4653305. PIN IT is an unregistered trademark for the same software and services that encompasses

13  PIN. Pinterest does not claim any rights in "it" except as part of PIN IT.

14      "Marks are generally classified in one of five categories of increasing distinctiveness: (1)

15  generic, (2) descriptive, (3) suggestive, (4) arbitrary, or (5) fanciful." *Zobmondo Entm't, LLC v. Falls*

16  *Media, LLC*, 602 F.3d 1108, 1113 (9th Cir. 2010); *accord McCarthy* § 11:2. "Suggestive, arbitrary,

17  and fanciful marks are considered 'inherently distinctive' and are automatically entitled to federal

18  trademark protection because their intrinsic nature serves to identify a particular source of a product."

19  *Zobmondo*, 602 F.3d at 1113. "Merely descriptive marks, which describe the qualities or

20  characteristics of a product" are only entitled to federal trademark protection upon showing "that the

21  mark has acquired distinctiveness." *KP Permanent*, 408 F.3d at 602. Generic designations are not

22  eligible for federal trademark protection "because they identify the product, rather than [its] source."

23  *KP Permanent*, 408 F.3d at 602.

### i.   PINTEREST Is Fanciful, Or At Least Suggestive

25      "'Fanciful' marks consist of 'coined' words that have been invented or selected for the sole

26  purpose of functioning as a trademark." *McCarthy* § 11:5. PINTEREST is a fanciful mark for this

27  reason. Alternately, PINTEREST is a suggestive mark because it is a whimsical combination of the

28  words "pin" and "interest" that evokes a metaphor for bookmarking software and services.

1        ii.     **PIN Is Suggestive, Or At Least Descriptive with Secondary Meaning**

2        Suggestive marks "subtly connote something about the product." *AMF, Inc. v. Sleekcraft*

3    *Boats*, 599 F.2d 341, 349 (9th Cir. 1979). A mark is suggestive "[i]f a consumer must use imagination

4    or any type of multistage reasoning to understand the mark's significance." *Kendall-Jackson Winery,*

5    *Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1047 n.8 (9th Cir. 1998). "A suggestive mark indirectly

6    or metaphorically alludes to the nature of the product" by "employ[ing] terms which do not describe

7    but merely suggest features of the product, requiring imagination, thought and perception to reach a

8    conclusion as to the nature of the goods." *North Am. Graphics, Inc. v. North Am. Graphics of US,*

9    *Inc.*, 1997 U.S. Dist. LEXIS 8107, *8, 1997 WL 316599, *3 (S.D.N.Y. Jun. 10, 1997); *accord Visa*

10   *Intern. Service Ass'n v. JSL Corp.*, 610 F.3d 1088, 1089-90, 1092 (9th Cir. 2010) (VISA for credit

11   cards considered metaphorical and inherently distinctive); *Synergistic Int'l, Inc. v. Windshield Doctor,*

12   *Inc.*, 470 F.3d 162, 172 (4th Cir. 2003) (GLASS DOCTOR for glass repair services considered

13   metaphorical and suggestive).

14       PIN is a suggestive mark because it "subtly connotes something about the product." *Sleekcraft*,

15   599 F.2d at 349. A customer buying pins at a store knows exactly what she is getting. But she may not

16   know immediately what a Pin is on Pinterest. Once she familiarizes herself with the service, she will

17   learn that a Pin is a content file saved on a board. But it requires "imagination" and "multistage

18   reasoning" (*Kendall-Jackson*, 150 F.3d at 1047 n.8) to grasp the connection between the mark and the

19   service. *Cf. Visa*, 610 F.3d at 1090 ("[T]he word visa wouldn't make people think of credit cards if it

20   weren't for the Visa brand.").

21       Descriptive marks directly and immediately convey something about the product or service.

22   *Sleekcraft*, 599 F.2d at 349. A descriptive mark becomes protected upon a showing of "secondary

23   meaning." *Zobmondo*, 602 F.3d at 1113. Evidence of secondary meaning includes evidence of product

24   popularity and publicity, as well as evidence of confusion and copying. *McCarthy* § 15:36-38, 47-52.

25   Secondary meaning can be acquired very quickly under proper circumstances since "the Internet has

26   made it easier than ever to reach millions of people around the globe." *McCarthy* § 15:54.

27       Assuming that PIN and PIN IT are descriptive, rather than suggestive, they acquired secondary

28   meaning extremely quickly. As Pinterest became a nationally renowned social bookmarking service, it

PINTEREST'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW        CASE NO. C 13-4608 HSG

1   came to be identified as the source of PIN and the ubiquitous PIN IT button. Notably, Pinterest was

2   widely shared by users, covered by media outlets, and copied by others (including Pintrips).

3                    **3.       Pintrips's Counterclaims and Affirmative Defenses are Meritless**

4              As previously noted, "[f]ederal registration of a trademark endows it with a strong presumption

5   of validity." *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 604 (9th Cir.

6   2005); *accord B & B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S. Ct. 1293, 1300 (Mar. 24, 2015) This

7   general presumption of validity includes the specific presumptions that the mark is not generic (*KP*

8   *Permanent*, 408 F.3d at 604; *McCarthy* § 12:12) or functional (*Vuitton et Fils S.A. v. J. Young Enters.*,

9   644 F.2d 769, 776 (9th Cir. 1982); *McCarthy* § 7:72).

10             Pintrips cannot overcome these presumptions in this case.

11                           **i.      PIN Is Not Generic**

12             Whether a mark is generic is governed by its "primary significance" for particular goods or

13   services. 15 U.S.C. § 1064(3); *see In re America Online, Inc.*, 77 U.S.P.Q. 2d1618, *15-19 (TTAB

14   2006) (INSTANT MESSENGER for online chat services not generic). If consumers understand the

15   mark to refer to *the source* of the goods or services, it is not generic. *KP Permanent*, 408 F.3d at 604.

16   On the other hand, if consumers understand the mark to refer to "all such goods or services,

17   *regardless of [source]*, it is generic." *KP Permanent*, 408 F.3d at 604 (emphasis added). Simply put,

18   a mark is not generic if it answers the question: "Where do [these goods or services] come from?"

19   *Yellow Cab Co. v. Yellow Cab*, 419 F.3d 925, 929 (9th Cir. 2005).

20             PIN is not generic for social bookmarking software and services. In this context, a PIN comes

21   from Pinterest (just as a TWEET comes from Twitter). Pintrips cannot sustain its heavy burden to

22   show otherwise for at least three reasons. First, Pintrips has not furnished any direct evidence about

23   *what consumers understand*. In particular, Pintrips has not furnished a survey measuring whether

24   consumers understand PIN to refer to all social bookmarking software and services, regardless of

25   source (which they presumptively do not) or whether consumers understand PIN to refer to social

26   bookmarking software and services *from Pinterest* (which they presumptively and actually do). "A

27   litigant who alleges [genericness] and does not introduce a survey ... may be viewed as less than

28   serious." *McCarthy* § 12:14; *cf. Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1262 (9th

1    Cir. 2001) (Surveys are "a routine and well-established feature of trademark practice"); *Cairns v.*

2    *Franklin Mint*, 24 F. Supp. 2d 1013, 1041-42 (C.D. Cal. 1998) (criticizing failure to furnish

3    likelihood of confusion survey), *aff'd sub nom* 216 F.3d 1082 (9th Cir. 1999). Such is the case here.

4         Second, Pintrips's indirect evidence does not concern the proper context: social bookmarking

5    software and services. *See Self-Realization Fellowship Church v. Ananda Church of Self-Realization*,

6    59 F.3d 902, 909-911 (9th Cir. 1995) (Self-Realization held generic for religious organizations but

7    not their goods and services); *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9-12 (2d

8    Cir. 1976) (Safari held generic for hats but not for boots or shoes); *Polo Fashions, Inc. v. Extra*

9    *Special Prods., Inc.*, 451 F. Supp. 555, 559 (S.D.N.Y. 1978) (Polo held generic for polo shirts but not

10   other shirts and apparel). Pintrips cuts too broad a swath by arguing that pin is generic for maps,

11   operating systems, and software in general. As a threshold matter, Pinterest does not claim exclusive

12   rights for maps, operating systems, and software in general. Pinterest *does* claim exclusive rights to

13   use of the word PIN for social bookmarking software and services (i.e., services for saving,

14   bookmarking and sharing content). These are the goods and services that should be considered. *See*

15   *McCarthy* § 12:24 (alluding to goods and services "reasonably interchangeable by consumers for the

16   same purpose").

17        Third, there is no meaningful evidence that PIN is generic in the context of social

18   bookmarking software and services. On the contrary, there is significant evidence that consumers

19   identify PIN with Pinterest in this context.

20                    **ii.    PIN Is Not Functional**

21        The functionality doctrine "demarcates the boundary between utility patent law on the one

22   side and … trademark and trade dress law on the other." *McCarthy* § 7:64. According to this

23   doctrine, "a *product feature* is functional, and cannot serve as a trademark if it is essential to the use

24   or purpose of the article or if it affects the cost or quality of the article." *TrafFix Devices, Inc. v.*

25   *Marketing Displays, Inc.*, 532 U.S. 23, 32 (2001) (emphasis added); *accord McCarthy* § 7:63. "[I]t is

26   not apparent how a *word mark* could be essential to the use or purpose of an article or affect its cost

27   or quality." *Autodesk, Inc. v. Dassault Sys. SolidWorks Corp.*, 685 F. Supp. 2d 1001, 1008 (N.D. Cal.

28   2009) (emphasis added). In any event, a word mark cannot be essential to the use or purpose of an

1  article, and cannot affect the cost or quality of the article, if the word mark is easily replaceable

2  without impairing the use, purpose, cost or quality of the article. *See Playboy Enters, Inc. v. Netscape*

3  *Communic'ns. Corp.*, 354 F.3d 1020, 1030-31 (9th Cir. 2004) (word mark not functional); *cf. Clicks*

4  *Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1260-62 (9th Cir. 2001) (trade dress not

5  functional); *see also McCarthy* § 7:77 ("[T]he vast majority of designs that may be functional and

6  utilitarian involve the outline shape of three-dimensional articles.")

7        "The functionality doctrine relates only to the plaintiff's use of a designation, not to the

8  accused use." *McCarthy* § 7:77; *accord Playboy*, 354 F.3d at 1030-31 ("[T]he fact that the marks

9  make defendants' computer program more functional is irrelevant."). To be infringing, the accused

10  use need only be used "in connection with the sale ... distribution or advertising of any goods or

11  services" in a way that is likely to confuse. *McCarthy* § 23:11.50 (citing 15 U.S.C. § 1125(a)(1)(A)).

12        Pintrips has misapplied the functionality doctrine by arguing that *its own* use of a word mark is

13  functional. Even taking the argument at face value, Pin is not functional because it is easily replaced

14  without impairing the use, purpose, cost or quality of Pintrips. When featured on a button, on Pintrips as

15  on Pinterest, Pin means Save. It could be replaced by Save or by myriad alternatives, like Capture,

16  Collect, Grab, Post, Clip, Tag, Tack, Snag, Fetch, Pull, Lift, Select, Gather or Get. It could also be

17  replaced by other alternatives that evoke other names. For example, long before Pintrips used Pin,

18  StumbleUpon used Stumble, Luvocracy used Luv, and WeHeartIt used Heart, all for the same purpose.

19  There is nothing special about Pin, except its association with Pinterest.

20        **B.        Pintrips' Actions Create a "Likelihood of Confusion"**

21        "The confusion that is remedied by trademark and unfair competition law is confusion not only

22  as to source, but also as to affiliation, connection or sponsorship" between the plaintiff and defendant or

23  their respective goods or services. *McCarthy* § 23:8; *accord* 15 U.S.C. § 1125(a). It includes confusion

24  that leads to a sale and confusion that dissipates beforehand. *Playboy*, 354 F.3d at 1025, *Brookfield*, 174

25  F.3d at 1062; *Dr. Seuss Enters, LP. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1405 (9th Cir. 1997). "For

26  example, the likelihood that a potential purchaser of a specialized computer program may be drawn to

27  the junior user, thinking it was the senior user, is actionable 'confusion.'" *McCarthy* § 23:6. Such "initial

28  interest confusion" is "a variation on the . . . 'bait and switch.'" *McCarthy* § 23:6.

1    Likelihood of confusion is the "touchstone" of trademark infringement. *McCarthy* § 23:1.

2    Likelihood of confusion considers the eight non-exclusive *Sleekcraft* factors, named for a seminal case

3    in this Circuit. *McCarthy* § 24:39. The factors are: (1) strength of the senior mark; (2) relatedness of the

4    services; (3) similarity of the marks; (4) evidence of actual confusion; (5) similarity of the marketing

5    channels; (6) degree of consumer care; (7) intent of the junior user; and (8) likelihood of their future

6    convergence in the services. *Brookfield*, 174 F.3d at 1046-48; *Sleekcraft*, 599 F.2d at 348-49. "Some

7    factors are much more helpful than others, and the relative importance of each [is] case specific."

8    *Brookfield*, 174 F.3d at 1054. Doubt is resolved for the senior user. *Dr. Seuss*, 109 F.3d at 1401; *accord*

9    *McCarthy* § 23:64-66.

10    In this case, there is no doubt. All factors reveal a likelihood of confusion.

**1.      Pinterest's Marks Are Very Strong**

12    Trademark strength encompasses conceptual strength, or "the placement of the mark on the

13    spectrum of marks," and commercial strength, or "the marketplace recognition value of the mark."

14    *McCarthy* § 23:40.50; *accord GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1207 (9th Cir. 2000).

15    "'Strong' marks are given 'strong' protection – protection over a wider range of related products and

16    services and a greater spectrum of variations." *McCarthy* § 23:40.50.

17    PINTEREST is conceptually strong because it is a whimsical made-up word. PIN is conceptually

18    strong because it is a clever metaphor. Both marks are commercially strong because of the viral growth

19    of Pinterest. About a quarter of all Americans who use the Internet use Pinterest, viewing both marks as

20    they save and share billions of Pins. Defendant's own expert notes that people associate "Pinterest [with]

21    the very idea of pinning." Dkt. # 150-4 at 17.

**2.      Pinterest and Pintrips Both Offer Social Bookmarking Software and Services**

23    Offerings are "related" if a reasonable buyer will likely believe they share a connection under

24    similar marks. *McCarthy* § 24:13-14, 24; *accord Sleekcraft*, 599 F.2d at 348, n.10. "There is no per se

25    rule that computer [software] and services are related." *McCarthy* § 24:44, p. 24:115-17, n. 3.50

26    (discussing *In re Iolo Tech, LLC*, 95 U.S.P.Q.2d 1498, *3 (TTAB 2010)). "But where [they] are

27    complimentary in function and purpose, then they are related," particularly if they target overlapping

28    users through overlapping stores. *McCarthy* §§ 24:44, p. 24:115-17, n. 3.50, § 24:45, p. 24:120-23;

-15-

1 | *accord Eclipse Assoc. Ltd. v. Data General Corp.*, 894 F.2d 1114, 1116-18 (9th Cir. 1990) (ECLIPSE for

2 | software targeting niche market infringed ECLIPSE for software targeting broad overlapping market.)

3 |      Pinterest and Pintrips offer related goods and services because both offer social bookmarking

4 | software and services to overlapping users for overlapping purposes through overlapping app stores (in

5 | addition to their own websites). Pintrips helps users save, bookmark, and share travel plans specifically.

6 | Pinterest helps users save, bookmark, and share content generally, including travel plans specifically. So

7 | they are related.

8 |         **3.**      **Pinterest and Pintrips Use Very Similar Marks**

9 |      "Similarity of the marks is tested on three levels: sight, sound, and meaning." *Sleekcraft*, 599

10 | F.2d at 351. "Each must be considered as … encountered in the marketplace." *Id.*  Sound is particularly

11 | important when "reputation is conveyed [by] word of mouth." *Id.*; *McCarthy* § 23:22. Per the anti-

12 | dissection rule, "[c]omposite marks are to be compared . . . as a whole, rather than [dissected] into their

13 | component parts." *McCarthy* § 23:41; *see Sleekcraft*, 599 F.2d at 351 (finding SLICKCRAFT and

14 | SLEEKCRAFT confusingly similar for boats).

15 |      PINTEREST and PINTRIPS are extremely similar in sight, sound, and meaning. Their similar

16 | sound is particularly notable since both parties have relied heavily on "word of mouth." Their similar

17 | appearances and meanings are also notable because both marks tend to appear with little context in the

18 | marketplace, such as in app store listings and Google search results. Per the anti-dissection rule, PIN

19 | cannot be disregarded under any circumstances when comparing PINTEREST and PINTRIPS.

20 |      Setting aside PINTEREST and PINTRIPS, the parties' remaining word marks are highly similar.

21 |         **4.**      **Pintrips' Users Have Suffered Actual Confusion, Confirmed by a Survey**

22 |      "Any evidence of actual confusion is strong proof of … a likelihood of confusion." *McCarthy* §

23 | 23:13; *accord GoTo.com*, 202 F.3d at 1208. The absence of such evidence is "generally unnoteworthy."

24 | *Brookfield*, 174 F.3d at 1050; *accord Eclipse*, 894 F.2d at 1118. "[A]ctual confusion is hard to prove."

25 | *Brookfield*, 174 F.3d at 1050. "Persons who are truly confused will often never be aware of the

26 | deception." *McCarthy* § 23:12. "Others who were confused and later learned of their deception will

27 | often not bother to report [it]." *McCarthy* § 23:12. When "there has been little opportunity for actual

28 | confusion the absence of any such evidence is to be expected." *McCarthy* § 23:12, n.6 (and cited cases).

PINTEREST'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW      CASE NO. C 13-4608 HSG

1    In this case, confusion abounds. One user complained because ████████████

2    ████████████. Another professed ████████████████████████████

3    ████████████████████    Notably, many witnesses, court reporters and interpreters confused the

4    parties in the course of this litigation. Even Google and Siri are confused.

5        In addition to marketplace evidence of actual confusion, surveys can provide surrogate evidence

6    of actual confusion, particularly when the net rate of confusion meets or exceeds 15%. *McCarthy* §

7    32:184; *see, e.g.*, *James Burrough, Ltd. v. Sign of Beefeater, Inc.*, 540 F.2d 266, 272 (7th Cir. 1976) (15%

8    confusion); *RJR Foods, Inc. v. White Rock Corp.*, 603 F.2d 1058, 1061 (2d Cir. 1979) (15-20%

9    confusion); *see also Jockey Int'l, Inc. v. Burkard*, 1975 WL 21128 (S.D. Cal. Feb. 21, 1975) (11.4%

10   confusion supported likelihood of confusion). "In cases involving strong marks, the *Eveready* [survey

11   format] should be considered the gold standard for fundamental cognitive and marketing reasons."

12   *McCarthy* § 32:173.50 (quotation omitted). "The '*Eveready*' survey format does not inform respondents

13   what the senior mark is, but assumes that they are aware of the mark from their prior experience."

14   *McCarthy* § 32:173.50.

15       For this case, Dr. Jacoby performed a survey according to the *Eveready* protocol which

16   persuasively demonstrated likely confusion. Under his guidance, qualified respondents in a test group

17   were shown the Pintrips homepage and asked questions about who was behind it. Nearly 20% answered

18   Pinterest, compared to zero percent in the control group.

19       Pintrips notably did not commission (or disclose) any likelihood of confusion survey, although it

20   apparently could have afforded one.

21       **5.      Pinterest and Pintrips Use the Same Marketing Channels**

22       "Convergent marketing channels increase likelihood of confusion." *Sleekcraft*, 599 F.2d at 353.

23   In this case, Pintrips borrowed its marketing strategy from Pinterest. So it should not be surprising that

24   Pinterest and Pintrips use convergent marketing channels, with an emphasis on "word of mouth." They

25   also both rely on press coverage for exposure and app stores for distribution.

26       **6.      Users Exercise Limited Care with Free Software and Services**

27       "[W]hen dealing with inexpensive products, customers are likely to exercise less care … making

28   confusion more likely." *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1046-48

1   (9th Cir. 1999). Accordingly, confusion is more likely in this case because Pinterest and Pintrips both

2   offer free software and services.

### 7.      Pintrips's Actions Reveal an Intent to Confuse

4   "[P]roof of defendant's intent to deceive or confuse is not required for infringement." *McCarthy*

5   § 23:107. "[One] who negligently, ignorantly or innocently stumbles into confusing the public is still an

6   infringer." *McCarthy* § 23:106-07. Against this background, intent to confuse is relevant because one

7   who intends to confuse is "presume[d] … to accomplish his purpose." *Sleekcraft*, 599 F.2d at 354. Intent

8   to confuse can be inferred"[w]here an alleged infringer chooses a mark he knows to be similar to

9   another." *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1148 (9th Cir. 2002).

10      In this case, Mr. Gotlieb adopted the name PINTRIPS ███████████████████████

11  ███████████████████████████. ███████████████████████████████████████████

12  ███████████████████████████████████████████████████████████████████████████

13  ███████████████████████████████████████████, he never did. When his CTO

14  told him the name was "reminiscent" of Pinterest, he laughed and called it a "useful coincidence." ███

15  ███████████████████████████████████████████. This is hardly just a coincidence.

### 8.      Pinterest and Pintrips Will Likely Continue to Converge

17      "A 'strong possibility' that either party may expand [its] business to compete with the other will

18  weigh in favor of finding that the present use is infringing." *Sleekcraft*, 599 F.2d at 354.

19      Although Mr. Gotlieb already considers ███████████████████████, they will likely

20  continue to converge in at least two ways. ███████████████████████████████████████

21  ███████████████████████████████████████ Pintrips agrees that "confusion

22  could result" if it does. Second, ███████████████████████████████████████████

23  ███████████████████████████████. For this case, Dr. Jay performed a survey

24  according to the *Eveready* protocol which persuasively demonstrates the resulting likelihood of

25  confusion. Under her guidance, qualified respondents in a test group were shown a ███████████

26  on the United Airlines homepage and asked questions about who was behind it. Nearly half answered

27  Pinterest, compared to virtually none in the control group. Notably, Pintrips did not commission (or

28  disclose) a rebuttal survey, although it apparently could have afforded one.

1    In summary, all factors support a likelihood of confusion. Accordingly, Pinterest prevails on its

2  infringement claims.

3  **II.     Pinterest Prevails on Its Dilution Claims**

4    Pinterest's third and fifth claims are also substantially congruent (together, the "dilution claims").

5  *See Perfumebay.com Inc. v. eBay, Inc.*, 506 F.3d 1165, 1180 (9th Cir. 2007). To prevail on these claims,

6  Pinterest must show that (1) PINTEREST is distinctive and famous; (2) PINTEREST became distinctive

7  and famous before PINTRIPS had been used in commerce, and (3) PINTRIPS will likely dilute

8  PINTEREST by creating an association with it. 15 U.S.C. § 1125(c)(1), (2)(B); *Visa Intern. Service*

9  *Ass'n v. JSL Corp.*, 610 F.3d 1088, 1089-90 (9th Cir. 2010).

10    PINTEREST is distinctive and famous for the purpose of dilution in the same ways it is

11  distinctive and famous for the purpose of infringement. *See* 15 U.S.C. § 1125(c)(1), (2)(A). PINTEREST

12  achieved rapid fame for the purpose of dilution in the same ways it achieved rapid fame for the purpose

13  of infringement. *See* 15 U.S.C. § 1125(c)(2)(A). Finally PINTRIPS will likely create an association with

14  PINTEREST for many of the reasons it will likely create confusion among consumers. *See* 15 U.S.C. §

15  1125(c)(2)(B).

16    For the foregoing reasons, Pinterest prevails on its dilution claims.

17  Dated: April 28, 2015                    Respectfully submitted,

18                                    HARVEY SISKIND LLP
                                        LAWRENCE J. SISKIND
19                                    DONALD A. THOMPSON
                                        JANE A. LEVICH
20
                                        By: _____/s/_____
21                                           Donald A. Thompson

22                                    Attorneys for Plaintiff
23                                    PINTEREST, INC.

24

25

26

27

28

PINTEREST'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW        CASE NO. C 13-4608 HSG