UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PINTEREST, INC.,<br>          Plaintiff,<br>     v.<br>PINTRIPS, INC.,<br>          Defendant. | Case No. 13-cv-04608-HSG<br><br>**ORDER REGARDING MOTIONS IN LIMINE**<br><br>Re: Dkt. Nos. 147, 149, 150, 151, 153, 154, 166, 178 |

Plaintiff Pinterest, Inc. ("Pinterest") and Defendant Pintrips, Inc. ("Pintrips") have submitted a total of six motions *in limine* seeking exclusion of witnesses identified in this action. Pinterest seeks to exclude the following Pintrips witnesses: Brian Robertson, Peter Kent, and Jeremy Keen. Pintrips seeks to exclude the following Pinterest witnesses: Jacob Jacoby, Deborah Jay, and Geoffrey Nunberg. Pintrips has further objected to Pinterest's intention to call Barry Schnitt and Adam Barton, which the Court will treat as a motion *in limine* under the circumstances. Pinterest also seeks sanctions related to its motion to exclude the testimony of Brian Robertson.

The Court has considered the arguments and evidence provided by the parties, both in their filings and during the May 12, 2015 Pretrial Conference. For the reasons discussed below, the Court **DENIES** the parties' motions to exclude Brian Robertson, Peter Kent, Jacob Jacoby, Deborah Jay, and Geoffrey Nunberg, and **GRANTS** the motions seeking exclusion of Jeremy Keen, Barry Schnitt, and Adam Barton. The Court further **DENIES** the motion for sanctions related to Brian Robertson.

**I.   BRIAN ROBERTSON**

Pinterest seeks to exclude Robertson's testimony arguing that: (1) his rebuttal expert report is really a belated opening report; (2) he lacks basic knowledge about trademarks and trademark

surveys; (3) he wrote only a third of his report and edited the rest; and (4) he examined Pintrips' "Pin" button (instead of the similar Pinterest "Pin" button), which Pinterest argues is not at issue in this case. Pinterest further moves for sanctions against Pintrips based on its allegedly improper designation of Robertson as a rebuttal expert. As an initial matter, three of the four concerns raised by Pinterest go to the weight to be afforded to Robertson's testimony, not its admissibility. Accordingly, the only potential basis to exclude Robertson's testimony is the alleged untimeliness of his expert report.

The Court is not persuaded that it was impermissible to offer Robertson as a rebuttal expert. As counsel for Pintrips explained during the May 12, 2015 Pretrial Conference, Robertson was retained to test an underlying assumption of Jacob Jacoby's survey—specifically, the assumption that a button labeled with the word "pin" acts as a source-signifying and/or brand term. He did so by conducting a survey that tested whether consumers were more likely to perceive a "pin" button as a "print" or "submit" button, which identifies what the button does, or a "Tumblr" or "Tweet" button, which identifies the brand of the company responsible for the button. Of course, challenging the assumptions of an expert witness' report is a permissible topic of rebuttal testimony.

None of Pinterest's arguments to the contrary have merit. First, the fact that Robertson did not characterize himself as a rebuttal expert at his deposition (instead, stating that he was simply hired to conduct a survey) is immaterial. There is no requirement that an expert witness—especially one who has never served as an expert witness in litigation prior to this engagement—know where his testimony fits in the procedural scheme detailed in Rule 26 of the Federal Rules of Civil Procedure. There is no argument that Pintrips failed to serve Mr. Robertson's rebuttal report as required by Rule 26. In fact, Robertson's report specifically states that his survey was conducted in "respons[e] to a study submitted by Jacob Jacoby, Ph.D." That Robertson may not have firmly grasped the details of federal practice at his deposition is not significant.

Second, Pinterest argues that Robertson cannot possibly be a proper rebuttal witness because he: (1) only read a few pages of Jacoby's report; and (2) offered only one direct criticism of Jacoby's survey (the exclusion of respondents on mobile devices). Pinterest's arguments have

no basis in the law. Instead, they appear to be premised on the common litigation practice whereby a rebuttal expert reads the opening expert report cover to cover, and then writes a rebuttal report outlining each and every criticism of the opening expert's opinions. That is *a way* to provide an expert rebuttal, but there is no authority suggesting it is the *only way*. In this case, Pintrips' counsel identified what they believed to be a fundamental flaw in Jacoby's survey and commissioned a counter-survey to test that alleged flaw. That Robertson's work was targeted at a specific topic identified by counsel—as opposed to addressing all purported defects in the Jacoby survey—makes Robertson's testimony no less proper as rebuttal evidence.

Third, Pinterest asserts that Robertson must not be a true rebuttal expert because he stated in his deposition that the initial conversations regarding his engagement took place two months before Pintrips received Jacoby's report. There is a great deal of contention surrounding this allegation. Pintrips has submitted two declarations attesting that Robertson was contacted after Jacoby's report was served (which is consistent with the first sentence of Robertson's report stating that he was contacted in November of 2014), and argues that Robertson's deposition testimony was simply an error of memory. Pinterest challenges that fact (and, implicitly, accuses Pintrips' counsel of perjury) by asserting that Robertson would have provided errata to that effect if his deposition testimony misstated the timing of his communications with counsel. The Court finds the vitriol over this issue unwarranted. Even were Pinterest correct, there is nothing improper about identifying potential rebuttal experts and conducting "initial conversations" concerning their potential engagement well before opening expert reports are due. This is especially true in cases, like this one, where the parties can reasonably anticipate that disagreements over the protectability of certain marks could impact expert testimony. In short, Pinterest's argument does not support the inference that Pintrips improperly sandbagged Pinterest by using Robertson as a rebuttal witness, and thus does not support exclusion of his testimony.

Finally, Pinterest's assertion that Robertson's status as a purported rebuttal expert precluded it from submitting a survey on the term "pin" is not well taken. As discussed below, the expert report of Peter Kent—who was disclosed as an opening expert—also provided evidence in support of Pintrips' argument that "pin" is a generic term. Pinterest did, in fact, submit a rebuttal

expert report to Kent's opinions: Geoffrey Nunberg. Nunberg opines on the topic of whether "pin" is a generic or proprietary term from a linguistic standpoint. Pinterest could have just as easily conducted a survey to rebut the opinions expressed in Kent's report. It chose not to do so, deciding to hire Nunberg instead.

For these reasons, Pinterest's motion *in limine* to exclude the testimony of Brian Robertson and Pinterest's accompanying motion for sanctions are **DENIED**.

## II.   PETER KENT

Pinterest seeks to exclude Kent's testimony because: (1) searching on the internet for uses of the word "pin" cannot constitute expert testimony; (2) Kent opines on "pin-terms" in the context of computers generally, not only in "online social bookmarking software or services," which Pinterest argues is the only relevant field in this case; (3) Kent impermissibly summarizes evidence in Pintrips' Answer and Counterclaims; (4) Kent comments on an arbitration between Pinterest and Amazon before the World Intellectual Property Organization; and (5) Kent impermissibly draws legal conclusions.

None of Pinterest's arguments support wholesale exclusion. First, an expert witness is permitted to compile documents, even materials that a lay person would understand, and then explain how those materials inform and support his or her expert opinions. *See, e.g., Louis Vuitton Malletier S.A. v. Sunny Merch. Corp.*, No. 13 CIV. 5242 LAP, 2015 WL 1499449, at *1 (S.D.N.Y. Mar. 31, 2015) ("While a juror may be able to understand each individual source that Matlins cites, Matlins 'synthesizes this material and pulls together common themes in reaching his conclusions.'") (citation omitted). Pinterest cites no contrary authority. Here, Kent has compiled numerous materials demonstrating how the term "pin" is used to support his expert opinion. The Court finds such testimony proper.

Second, Pinterest cites no authority that the Court may consider only evidence of how the term "pin" is used in the narrow field of "online social bookmarking software and services" (however that would be defined) when determining whether the term is protectable. The proximity of Kent's examples (*e.g.,* the use of "pin" in operating systems and on other websites) to the websites at issue in this case goes to their weight, not their admissibility.

4

Finally, the Court agrees with Pinterest that, based on the content of Kent's report, there is some risk that Kent's testimony may stray into the discussion of legal topics outside of his internet-related expertise. *See, e.g.,* Dkt. No. 153-d at 59 (discussing World Intellectual Property Organization ruling in dispute between Amazon and Pinterest). As the Court explained during the Pretrial Conference, all expert testimony should be limited to the areas in which the witness is an expert. The Court will not permit experts to discuss or opine on legal issues, such as whether a term is legally "generic" or "protectable," or comment on legal proceedings, such as the World Intellectual Property Organization arbitration identified in Kent's expert report.

For these reasons—and with the caveat concerning the discussion of legal topics addressed above—Pinterest's motion *in limine* to exclude the testimony of Peter Kent is **DENIED**.

### III. JACOB JACOBY

Pintrips seeks to exclude Jacoby's testimony because his survey tested whether respondents were likely to associate the combination of the Pintrips name and its "pin" button with Pinterest, as opposed to the Pintrips name alone. Pintrips argues that including the "pin" button is a fundamental flaw in Jacoby's survey design because—as Pintrips hopes to prove at trial—the term "pin" is generic and cannot be the foundation of a trademark claim. In other words, Pintrips puts the cart before the horse. The Court will not exclude Jacoby's testimony simply because it assumes a fact that Pintrips expects to undermine at trial. That is what the trial is for, and Pintrips' arguments go only to weight. Pintrips' motion *in limine* to exclude the testimony of Jacob Jacoby is **DENIED**.

### IV. DEBORAH JAY

Pintrips seeks to exclude Jay's testimony because her survey measures whether adding Pintrips' "pin" button as an application programing interface ("API") would lead to consumer confusion, despite the fact that Pintrips' "pin" button is not currently used in that manner. Pintrips argues that considering Jay's opinion would require to the Court to impermissibly provide an advisory opinion on a hypothetical set of facts. Pinterest responds that internal emails sent shortly before the initiation of this action demonstrate that Pintrips discussed adding this feature, and that courts outside of this circuit have considered planned activities when deciding whether to order

injunctive relief. *See* Dkt. No. 163-3 (quoting *MetLife, Inc. v. Metropolitan National Bank*, 388 F. Supp. 2d 223 (S.D.N.Y. 2005) and *U.S. Polo Association, Inc. v. PLR USA Holdings, Inc*., 800 F. Supp. 2d 515 (S.D.N.Y. 2011)).

       The holdings in *MetLife* and *U.S. Polo* provide only marginal support for Pinterest's position given the facts presented in this case. In both New York actions, the planned infringement was far more imminent than the API buttons alleged to be in the works here—neither the plaintiff nor the court in either case was required to guess in what form the alleged infringement would appear. In *MetLife*, for example, the Court enjoined the defendant's plan to open a bank with an allegedly infringing logo in close proximity to MetLife's downtown New York offices, where the bank was scheduled to open less than two weeks from the date of the order. *MetLife*, 388 F. Supp. 2d at 225. Similarly, in *U.S. Polo*, thousands of bottles of the allegedly infringing fragrance products had already been sold, with thousands more held in limbo pending the litigation. *U.S. Polo*, 800 F.Supp. 2d at 522-23.

       No comparable facts exist in this case. The emails presented to the Court in support of Pintrip's future API button demonstrate that Pintrips was still considering how to implement its API button, where that button would appear, and how it would look. Pintrips' plans were clearly in the formative stage. This presents a significant problem for Jay's survey, in that she had to guess, at the very least: (1) what the Pintrip's "pin" API button would look like; and (2) where it would appear on a travel website. For example, Pintrips makes a facially persuasive argument that Jay's decision to place the hypothetical API "pin" button next to the Facebook and Twitter API buttons at the bottom of a mock of United's home page (which Pintrips argues is not the button's positioning in any of the mockups circulated by Pintrips in its internal emails) severely compromises her survey's evidentiary value. No similar problem was possible in *MetLife* and *U.S. Polo*, because the immediacy of the alleged infringement at issue in those cases made it unmistakably clear what that infringement would look like.

       Despite these misgivings, the Court finds that Jay's testimony could possibly provide some minimal probative value given that the development of Pintrips' API button had passed the purely hypothetical stage. Even so, Jay's survey and her proposed testimony satisfy Rules 401 and 403

of the Federal Rules of Civil Procedure by only the slimmest of margins. The Court will consider the numerous issues identified by Pintrips in considering the weight to be accorded that testimony at trial, and in determining the amount of time the parties will be permitted to spend on this issue. For these reasons, Pintrips' motion *in limine* to exclude the testimony of Deborah Jay is **DENIED**.

## V. GEOFFREY NUNBERG

Pintrips seeks to exclude Nunberg's testimony because he opines on legal issues. Like the Kent Report, Nunberg's report gives the Court reason to believe that Nunberg may attempt to delve into legal areas outside of his area of expertise. *See, e.g.,* Dkt. No. 149-4 at 13 (discussing law review article where the author observed "that the use of marks as verbs is a natural linguistic process that has no direct impact on the proprietary status of the terms from which the verbs are derived . . . ."). However, also like Kent, the crux of Nunberg's testimony appears to be the non-legal subject of how "pin" is used by internet users and/or users of social bookmarking software. *See id.* at 18 (concluding that "[t]he evidence of usage of the word the word "Pin" by Pinterest, users, consultants and journalists, taken together with dictionary treatments of other uses of the word, demonstrates that Pinterest's use of the word has distinctive meanings in both its noun and verb uses, and that these meanings relate to Pinterest almost without exception."). Accordingly, while the Court will not permit Nunberg to discuss or opine on legal issues, such as whether a term is legally "proprietary," or comment on legal articles, he will be allowed to testify on the factual issues contained in his report.

For these reasons—and with the caveat concerning the discussion of legal topics addressed above—Pinterest's motion *in limine* to exclude the testimony of Geoffrey Nunberg is **DENIED**.

## VI. BARRY SCHNITT, ADAM BARTON, AND JEREMY KEEN

The Court considers the parties' challenges to Schnitt, Barton, and Keen together, as each turns on the same issue: timely disclosure. Rule 26 of the Federal Rules of Civil Procedure requires parties to provide, without awaiting a discovery request, "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment . . . ." Fed. R. Civ. P. 26(a)(1)(A)(i).

7

The Rule further requires that each party must supplement or correct this initial disclosure "in a timely manner if the party learns that in some material respect the disclosure . . . is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing . . . ." *Id*. at 26(e)(1)(A).

Both Pinterest and Pintrips concede that the witnesses they seek to offer at trial (Messrs. Schnitt and Barton for Pinterest and Mr. Keen for Pintrips) were not listed in their initial disclosures. Both parties also concede that they did not supplement their initial disclosures to identify these witnesses at any time prior to serving their pretrial witness lists. Absent a sufficient further showing, the parties' failure would warrant exclusion of these three witnesses. "A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." Fed. R. Civ. P. 37(c)(1). Both Pinterest and Pintrips argue that exclusion is not warranted in this case because they disclosed the existence of these witnesses through other means during the discovery process.

As to Schnitt and Barton, Pinterest argues that it effectively supplemented its initial disclosures in accordance with Rule 26(e)(1)(A) when it included Schnitt and Barton's names (along with 75 other individuals) in its response to Pintrips' interrogatory concerning the development of Pinterest's "place pins." The argument is not well-taken. Rule 26(a)(1)(A)(i) requires a party to identify "the name and, if known, the address and telephone number" of individuals with information that the party "may use to support its claims or defenses." The Rule is not satisfied simply by disclosing the name of an individual in some other context during discovery. Pinterest's interrogatory response did not identify Schnitt and Barton—as distinguished from the other 75 individuals who developed Pinterest's "place pins" or, for that matter, from every other individual named on any other document produced during discovery—as individuals with information that Pinterest would or could use to support its claims or defenses. Accordingly, Schnitt and Barton's inclusion in that interrogatory response does not constitute "additional or corrective information" sufficient to supplement Pinterest's initial disclosures.

8

The same reasoning applies to Keen. Pintrips argues that Pinterest cannot be "surprised" by the appearance of Keen on its witness list because each version of its counterclaims (starting with the original counterclaims filed on February 28, 2014) attached a June 2008 press release entitled "The Internet Pinboard Company: Internet Pinboard Pins Up Virtual Corkboard," which listed Keen's contact information. Of course, attaching a press release as one of over 50 exhibits to a counterclaim does not identify the contact person for that press release as someone with information that the party "may use to support its claims or defenses" under Rule 26(a)(1)(A). Pintrips' argument to the contrary is neither persuasive nor consistent with its claim that the Court should exclude the testimony of Schnitt and Barton.

The Declaration of William Merone offered in opposition to Pinterest's motion *in limine* provides useful background information, even if it ultimately undermines Pintrips' opposition. In his declaration, Merone states that he first had the idea to contact Keen concerning his Internet Pinboard website in February of 2015, shortly after Merone was "brought on to assist in the representation of Pintrips." *See* Dkt. No. 183-1 (the "Merone Dec.") at ¶ 2. Merone further states that he reached out to Keen by email, received a response in early March, and, on March 13, 2015, asked Keen if he would be willing to submit a declaration in this action. *See id*. at ¶¶ 9-11. Keen agreed to do so on March 22nd, reconsidered his involvement shortly thereafter, and then, after discussing the matter with his UK counsel, again agreed on April 14, 2015 to sign his declaration, which was "finalized" on April 16, 2015. *See id.* at ¶¶ 12-18. Keen was first disclosed to Pinterest the next day in Pintrips' Rule 26(a)(3) pretrial disclosures. *See id.* at ¶ 20.

Pintrips' disclosure of Keen on April 17, 2015 was untimely and unjustified for at least two reasons. First, Merone does not address the fact that discovery in this case closed in late 2014, months before the idea to contact Keen occurred to him. Opening expert reports were due in mid-November 2014, rebuttal expert reports were due mid-December 2014, and expert discovery closed in mid-January 2014 (save for two depositions on limited topics). Pintrips offers no explanation as to why the many other Kenyon and Kenyon lawyers on this case during the discovery period failed to contact Keen then, when Pinterest could have deposed him in the regular course. Their failure to do so is particularly unjustified here, where the very same press

release that sparked Merone's curiosity was attached to Pintrips' own counterclaims. In short, Pintrips was aware of the Internet Pinboard website (and, by extension, Keen) for at least a year and decided not to contact him or disclose him in its initial disclosures. Under Rule 26, "[a] party is not excused from making its disclosures because it has not fully investigated the case . . . ." Fed. R. Civ. P. 26(a)(1)(E). That appears to be exactly what happened here. That Pintrips' counsel did not investigate the possibility of using Keen as a witness before the end of discovery does not excuse its late disclosure.

Second, even setting this issue aside, Pintrips' disclosure would still be unjustifiably late. Merone stated that he first emailed Keen in February of 2015, at least two months before the Court's pretrial standing order required the parties to submit their pretrial filings. Keen responded on March 2, 2015, providing information Pintrips considered significant enough to investigate and confirm. *See* Merone Dec. at ¶11. Pintrips asked Keen to submit a declaration in support of an anticipated motion on March 13, 2015, well over a month before pretrial submissions were due. *Id*. Rule 26 requires the disclosure of individuals with information that a party *may use* to support its claims or defenses. It is not limited to individuals that *will be offered* by a party at trial, as Pintrips' opposition at least implicitly argues. Although the Court need not determine exactly how early Keen should have been disclosed, Pintrips was likely required to disclose Keen as an individual with information that it *might use* to support its claims or defenses in February of 2015, when Merone took steps to contact him about his Internet Pinboard. In any event, Pintrips was clearly obligated to do so by March 13, 2015 at the very latest, when Merone asked if Keen would provide a declaration in support of its case. Instead, by disclosing Keen only after securing that declaration, Pintrips first alerted Pintrerest to the possibility that Keen might be used to support Pintrips' case only four days before motions *in limine* were due and a week and a half before the filing of the parties' pretrial materials. This delay provides an independently sufficient ground to find Pintrips' untimely disclosure of Keen unjustified.

In determining whether to preclude the introduction of evidence pursuant to Rule 37, courts consider: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would

1 disrupt the trial; (4) the importance of the evidence, and (5) the nondisclosing party's explanation for [the] failure to disclose the evidence." *San Francisco Baykeeper v. W. Bay Sanitary Dist.*, 791 F. Supp. 2d 719, 733 (N.D. Cal. 2011) (citations omitted). In this case, all five factors weigh in favor of excluding Schnitt, Barton, and Keen. As discussed above, all three witnesses were disclosed on the eve of trial through the parties' pretrial witness lists and neither party has provided a compelling explanation for their delay. Moreover, neither party could "cure" the surprise of these new witnesses (which would entail deposing the belatedly identified witnesses and amending pretrial submissions in light of the new information) without significantly disrupting the trial proceedings, which begin in less than two business days. Next, the Court finds, based on the totality of the record, that the importance of the evidence to be offered by these witnesses is minor. At the Pretrial Conference, counsel for Pinterest stated that Schnitt and Barton's testimony would touch on the same topics as two witnesses on its "may call" list. Keen's website is an expected topic of the testimony of Pintrips' expert witness Kent. Accordingly, whatever slight independent evidentiary value that could be provided by Schnitt, Barton, and Keen does not outweigh the other factors.

Finally, the Court finds that the parties' failure to disclose was not harmless. Trial is only a few days away. Trial strategies have already been identified, pretrial submissions filed, and expert and lay witnesses chosen. The Court will not delay these proceedings to permit the parties to depose the surprise witnesses or to amend their submissions to account for their testimony.

For these reasons, Pintrips' motion *in limine* to exclude the testimony of Barry Schnitt and Adam Barton, as well as Pinterest's motion *in limine* to exclude the testimony of Jeremy Keen, are **GRANTED**.

**IT IS SO ORDERED.**

Dated: May 14, 2015

HAYWOOD S. GILLIAM, JR.
United States District Judge