UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PINTEREST, INC., <br>     Plaintiff, <br> v. <br> PINTRIPS, INC., <br>     Defendant. | Case No. 13-cv-04608-HSG <br><br> **ORDER REGARDING TRIAL BRIEFS** |

The parties have filed trial briefs concerning the admissibility of several exhibits offered during trial. This order resolves the following disputed evidentiary issues:

## I.   EVIDENCE OF CONSUMER CONFUSION

Pinterest offers emails designated as Exhibits 87 and 116 for two purposes. First, Pinterest argues that the statements made in those emails put Pintrips on notice that third parties could confuse its name with Pinterest, and is thus relevant to the company's state of mind in relation to the allegation of willfulness and the "intent" factor under *Sleekcraft*. Dkt. No. 205 at 1. Second, Pinterest argues that these emails are admissible to show the actual confusion of the third-party authors, either because their statements are not hearsay or fall under either the "present sense impression" or "state of mind" hearsay exceptions. *Id*. at 2-3. Pintrips responds that neither Exhibit is relevant or subject to a hearsay exception.

As an initial matter, the Court agrees with Pinterest that both exhibits may be admitted for the non-hearsay purpose of demonstrating Pintrips' knowledge and intent. Both emails may provide some evidence that Pintrips was "on notice" that its name was at least potentially confusing with Pinterest. Pintrips' objections on the ground of relevance go to weight, not admissibility.

The Court also agrees with Pinterest that Exhibit 87—where a consumer appears to have

emailed Pintrips' customer support concerning her Pinterest login and password—is relevant and admissible to show consumer confusion. While courts are not always consistent in describing the basis for admitting such evidence, the majority rule appears to be that evidence of customer confusion may be considered even where the purportedly confused third parties do not testify at trial. *See, e.g.,Lahoti v. Vericheck, Inc.*, 636 F.3d 501, 509 (9th Cir. 2011) (holding that "evidence of substantial number of telephone calls from confused customers . . . are permissible under the 'state of mind' exception to the hearsay rule" when offered as evidence of confusion); *Conversive, Inc. v. Conversagent, Inc.*, 433 F. Supp. 2d 1079, 1091 (C.D. Cal. 2006) ("[T]he majority of circuit courts that have considered this issue have . . . found that such evidence is admissible."). Pintrips' arguments concerning the import of Exhibit 87 go to its weight, not its admissibility.

However, the Court does not agree with Pinterest that Exhibit 116 falls into the same category. Exhibit 116 is an email in which Rinat Belkin (a third party) forwards Pintrips' CEO Stephen Gottlieb an article about Pinterest, commenting that "[w]hen you say it out loud it sounds like [P]intrips . . ." The email does not suggest that Ms. Belkin was herself confused by the alleged similarity of the names. In short, Pinterest seeks to introduce evidence of Ms. Belkin's opinion that that the words "Pinterest" and "Pintrips" sound similar, which is prohibited by the hearsay rule. Ms. Belkin's opinion on the subject does not constitute a "present sense impression" or "state of mind," and is thus hearsay not admissible for its truth.

For the foregoing reasons, both Exhibits 87 and 116 are admitted for the non-hearsay purpose concerning Pintrips' alleged knowledge and intent, while only Exhibit 87 is admitted as evidence of consumer confusion.

## II. EXHIBITS DEMONSTRATING USE OF THE TERMS "PIN" AND "PINNING"

Pintrips has offered news articles, books, and press releases that it asserts demonstrate the common, generic use of the words "pin" and "pinning" in the computing and internet context. Pinterest has objected to these documents as hearsay, arguing that, under the hearsay rule, newspaper articles and press releases may not be admitted for the truth of the matter asserted.

There can be no dispute that evidence of the use of the terms "pin" and "pinning"—both by media publications and other companies—is relevant to the Court's inquiry. *See* 2 McCarthy on

1  Trademarks and Unfair Competition § 12:13 (4th ed. 2006) (noting that evidence to prove
2  genericness may include "[g]eneric use by competitors which has not been contested by plaintiff"
3  and "[g]eneric usage in the media such as in trade journals and newspapers"). The Ninth Circuit
4  has repeatedly relied on such evidence when determining whether contested terms are generic.
5  *See Filipino Yellow Pages, Inc. v. Asian Journal Publications, Inc.*, 198 F.3d 1143, 1150 (9th Cir.
6  1999) (considering *Los Angeles Times* article's generic use of the term "Filipino yellow pages");
7  *California Cooler, Inc. v. Loretto Winery, Ltd.*, 774 F.2d 1451, 1455 (9th Cir. 1985) (considering
8  defendant's promotional literature and articles in newspapers and magazines to determine whether
9  the term "California Cooler" was generic); *Surgicenters of Am., Inc. v. Med. Dental Surgeries,
10 Co.*, 601 F.2d 1011, 1017 (9th Cir. 1979) (considering the fact that the word "Surgicenter" had
11 been used in Newsweek magazine and six medical publications when deciding that "the
12 consuming public connected the term 'Surgicenter' with the service rather than the server"); *see
13 also Classic Foods Int'l Corp. v. Kettle Foods, Inc.,* 468 F.Supp.2d 1181, 1189-94 (C.D. Cal.
14 2007) (finding the term "kettle" when used for potato chips to be generic based in part on evidence
15 of 37 articles using the term "kettle" to refer to a cooking method rather than a brand). The same
16 type of evidence is routinely considered by courts in other circuits. [1]

17  Pinterest has not directed the Court to any authority excluding this type of evidence as
18 hearsay. Instead, courts appear to consider these sources for the non-hearsay purpose of
19 determining whether a word or phrase is used to refer to the specific goods or services of the
20 plaintiff, as opposed to an entire class of goods or services in general. In this case, Pintrips has
21 offered numerous press releases, books, and news articles in which that the words "pin" and
22 "pinning" are used to describe a particular function in computer programs and websites. *See
23 Premier Nutrition, Inc. v. Organic Food Bar, Inc.*, No. SACV06-0827 AGRNBX, 2008 WL
24 1913163, at *7 (C.D. Cal. Mar. 27, 2008) ("None of the statements in the articles are used to prove

---

[1] *See, e.g., Schwan's IP, LLC v. Kraft Pizza Co*., 460 F.3d 971, 975 (8th Cir. 2006) (finding that the term "brick oven" to refer to pizza was generic based on evidence that the phrase was used by newspapers, restaurants, and retailers to refer to a type of pizza); *Murphy Door Bed Co., Inc. v. Interior Sleep Sys., Inc.*, 874 F.2d 95, 101 (2d Cir. 1989) (concluding that the term "Murphy bed," once a trademarked term, had become generic in part because numerous newspaper and magazine articles used it to describe the type of bed generally).

3

the truth of the matter asserted . . . . Plaintiff refers to the articles merely to show the use of the term "organic food bar" by the public.") *aff'd*, 327 F. App'x 723 (9th Cir. 2009). The Court will admit these documents for that non-hearsay purpose. In other words, the Court will consider these documents as evidence that "pin" and "pinning" are words that companies and the media use to describe a particular action in the computing and internet context (which is apparent from the face of the documents), but not for the truth of the matters asserted in those sources (*i.e.*, that the products discussed actually possess the "pinning" functionality described).[2,3]

## III. ADMISSION BY PARTY OPPONENT

Pinterest offers five exhibits (51, 75, 187, 235, and 253) containing emails written by Pintrips officers, consultants, or advisors. Pintrips objects to these exhibits as hearsay without exception and as irrelevant under Federal Rule of Evidence 401. The Court finds that at least portions of all five exhibits are admissible for their truth.

### A. Exhibits 51, 187, 235

Exhibits 51, 187, and 235 contain several emails between Pintrips' officers, which are exempted from the hearsay rule by the Federal Rules of Evidence. *See* FRE 801(d)(2)(A) (an out of court statement introduced by a party is not hearsay where it "was made by the [opposing] party in an individual or representative capacity."). The Court admits those portions of Exhibits 51, 187, and 235 containing emails authored by Pintrips' officers for their truth. However, the emails authored by Srinivasu Kota (a third party) in Exhibit 51 are not exempted from the definition of hearsay by Rule 801(d)(2). Accordingly, the Court admits Mr. Kota's emails solely for the non-hearsay purpose of providing context to the subsequent discussion between Chief Product Officer Sheila Bijoor and other Pintrips' officers. Similarly, the out of court statements discussed in those email chains (*i.e.*, the Pinterest advertisement in Exhibit 51 and the article titled "Pinterest Pokes a Hole in Pintrips" in Exhibit 235, respectively) are admitted for the non-hearsay purpose of providing context for the statements of Pintrips' officers.

---

[2] Evidence that many of these products actually do contain such functionality was the subject of the testimony of Pintrips' expert witness Peter Kent. That testimony was accepted into evidence.
[3] This ruling moots Pintrips' attempt to offer these same exhibits pursuant to Federal Rule of Evidence 703.

1   Pintrips' arguments concerning whether these emails may fairly be read to support the
2   positions for which they are offered by Pinterest go to their weight, not admissibility.

### B. Exhibits 75 and 253

Pintrips objects to the admission of Exhibits 75 and 253 on the ground that they do not qualify for the hearsay exclusion contained in Rule 801(d)(2) because Rosanna Casper, Timothy O'Neil-Dunne, and Ashley Raiteri were not Pintrips officers to which the exemption applies. The Court disagrees. Contrary to Pintrips' assertion, the party opponent exemption to the hearsay rule is not limited to a party's officers. Under Federal Rule of Evidence 801(d)(2)(D), an out of court statement is not hearsay where it was "made by the party's agent or employee on a matter within the scope of that relationship and while it existed." In this case, Ms. Casper, Mr. O'Neil-Dunne, and Mr. Raiteri were all acting as Pintrips consultants or advisors when the emails were written, and the substance of those communications concern the subject of their relationship with Pintrips. *See* Ex. 75, 235, and 253. Accordingly, Exhibits 75 and 253 are admitted for their truth pursuant to Federal Rule of Evidence 801(d)(2)(D).

Again, Pintrips' assertion that the contents of these emails cannot fairly be read to support the positions for which they are offered by Pinterest goes to their weight, not admissibility.

## IV. MICROSOFT'S PATENT APPLICATION

At the close of trial, Pintrips sought to introduce Trial Exhibit 1331, a U.S. published patent application filed by Microsoft Corporation in 1994 entitled "Method and System for Pinning Contacts and Items." Dkt. No. 235 at 1. Pinterest opposes the admission of that application, arguing that it was not disclosed during discovery and, in any event, is not relevant to the claims and defenses at issue in this action. Dkt. No. 238 at 1-2.

Although, as discussed above, the Court has found that other companies' use of the terms "pin" and "pinning" is relevant to this action, the Court will not accept Trial Exhibit 1331 into evidence for two reasons. First, the Court will accept Pinterest's representation that this document was disclosed months after the close of discovery. The Court finds that this late disclosure warrants exclusion under Rule 37. *See* Fed. R. Civ. P. 37(c)(1) ("A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior

5

1  response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless,
2  permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not
3  so disclosed."). In determining whether to preclude the introduction of evidence pursuant to Rule
4  37, courts consider: "(1) the surprise to the party against whom the evidence would be offered; (2)
5  the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would
6  disrupt the trial; (4) the importance of the evidence, and (5) the nondisclosing party's explanation
7  for [the] failure to disclose the evidence." *San Francisco Baykeeper v. W. Bay Sanitary Dist.*, 791
8  F. Supp. 2d 719, 733 (N.D. Cal. 2011) (citations omitted). As the Court ruled with respect to the
9  parties' motions *in limine*, untimely disclosure on the eve of trial constitutes unfair surprise which
10 cannot reasonably be cured absent the disruption of trial proceedings. *See* Dkt. No. 191 at 11.
11 Moreover, Pintrips has offered no explanation for its late disclosure nor has it made the argument
12 that the patent application is particularly important to its case. Accordingly, all five factors weigh
13 against admission of Trial Exhibit 1331; it will not be accepted into evidence.

14     Second, and relatedly, the Court finds that Trial Exhibit 1331 should be excluded under
15 Rule 403 as needlessly cumulative. *See* Fed. R. Civ. p. 403 ("The court may exclude relevant
16 evidence if its probative value is substantially outweighed by a danger of . . . needlessly presenting
17 cumulative evidence."). There is already substantial evidence in the record concerning
18 Microsoft's use of the terms "pin" and "pinning." That Microsoft used those terms in a patent
19 application in addition to the other places in the exhibits already accepted into evidence has no
20 more than marginal evidentiary value.

## V. DEPOSITION DESIGNATIONS

22     Pinterest offers several pages of deposition designations taken from the depositions of
23 Hadar Gotlieb and Sarah Kleiman. The Court will admit the deposition testimony of Mrs. Gotlieb,
24 as it concerns the same type of evidence of consumer confusion that the Ninth Circuit admitted in
25 *Lahoti*. Given the confusion surrounding the submission of Mrs. Hadar's deposition testimony,
26 the Court afforded Pintrips limited additional direct examination to allow Stephen Gottlieb to
27 respond to Pinterest's designations. The Court will admit Kleiman's testimony, as Pintrips
28 represents that it has "no problem with the submission of Ms. Kleiman's deposition testimony."

1 Dkt. No. 227 at 3. The Court has considered Pintrips' specific objections to the four particular

2 designations identified in Pintrips' trial briefs; those objections are overruled.

3 **IT IS SO ORDERED.**

4 Dated: June 12, 2015

HAYWOOD S. GILLIAM, JR.
United States District Judge